## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| GABRIEL SOLACHE, | |
| Plaintiff, | Case No. 18-CV-02312 |
| v. | Honorable Andrea R. Wood |
| REYNALDO GUEVARA, et al. | |
| Defendants. | |

### DEFENDANTS RUTHERFORD, TREVINO, BIEBEL, HARVEY, DICKINSON, HALVERSON AND MINGEY'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT[1]

Defendants Robert Rutherford, Daniel Trevino, Robert Biebel, Mark Harvey, Edwin Dickinson, Ernest Halvorsen, and Edward Mingey ("Answering Defendants"), by their attorneys, The Sotos Law Firm, P.C., answer Plaintiff's Complaint as follows:

### INTRODUCTION

1.      Plaintiff Gabriel Solache, an innocent man wrongly convicted for crimes he did not commit, spent close to 20 years in jail and prison – including over two years on death row – because of the coercion and fabrication of false inculpatory evidence, and the hiding of exculpatory evidence, by the Defendants sued in this action.

**ANSWER:**     Answering Defendants admit that Plaintiff was convicted of crimes and, on information and belief, admit he spent close to 20 years in jail and prison, but lack knowledge or information sufficient to admit or deny the allegations regarding time on death row.   Answering Defendants deny the allegations of misconduct in this paragraph that are directed against them.   Answering Defendants, on information and belief, deny the remaining allegations of this paragraph.

---

[1] Answering Defendants make no response on behalf of deceased former Chicago Police Forensic Investigator John Karalow.

2.      On December 21, 2017, Cook County Circuit Judge James Obbish vacated Plaintiff's conviction and ordered his release from custody, and the Cook County State's Attorney voluntarily dismissed all charges against Plaintiff. This ruling followed a December 13, 2017 ruling by Judge Obbish suppressing Plaintiff's false confession, after a hearing at which Judge Obbish found that Defendant Guevara was not credible, had testified falsely multiple times, including telling "bald-faced lies" under oath, and stating that Guevara had "eliminated any possibility of [] being considered a credible witness in any proceeding."

**ANSWER:**      Answering Defendants, on information and belief, admit the allegations in this paragraph.

3.      The unconstitutional conduct complained of herein was part of longstanding, widespread and interrelated Chicago Police Department patterns and practices, *inter alia*, of unlawfully coercing confessions, often from young and vulnerable people such as Plaintiff and his co-defendant, in order to close unsolved cases, through abusive and otherwise improper methods of interrogation, by the fabrication of false inculpatory evidence, and by the withholding of exculpatory evidence from the courts, prosecutors, criminal defendants and their attorneys.

**ANSWER:**      Answering Defendants, on information and belief, deny the allegations of this paragraph.

## JURISDICTION AND VENUE

4.      This action is brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution, and under Illinois law.

**ANSWER:**      Answering Defendants admit that plaintiff and his attorneys have brought this action pursuant to the Civil Rights Act based on allegations of violations of plaintiff's rights secured by the U.S. Constitution and under Illinois Law, but deny the remaining allegations in this paragraph.

2

5.      This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper under 28 U.S.C. § 1391(b). The parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred here.

**ANSWER:**      Answering Defendants admit that this Court has jurisdiction and venue is proper. Answering Defendants deny that Dickinson resides in this jurisdictional district, and lack knowledge or information sufficient to admit or deny the allegation regarding where plaintiff resides.

## PARTIES

6.      Plaintiff Gabriel Solache is citizen of Mexico and a resident of Cook County, Illinois.

**ANSWER:**      Answering Defendants, on information and belief, admit the allegation in this paragraph regarding citizenship of plaintiff, but lack knowledge or information sufficient to admit or deny the remaining allegations.

7.      At all times relevant hereto, Defendants Reynaldo Guevara #20861, Robert Rutherford #20720, Edwin Dickinson #20682, Daniel Trevino #40052, Ernest Halvorsen #20692, Mark Harvey #10582, and John Karalow #13247, were police officers and/or detectives in the Chicago Police Department. Each is sued in his individual capacity, and each acted under color of law and within the scope of his employment.

**ANSWER:**      Answering Defendants admit the allegations in this paragraph.

8.      Edward Mingey #1731 and Robert Biebel #1545 were supervisory personnel in the Chicago Police Department. Each is sued in his individual capacity, and each acted under color of law and within the scope of his employment.

**ANSWER:**      Answering Defendants admit the allegations in this paragraph.

9.      Defendant City of Chicago is an Illinois municipal corporation and was the employer of each of the Defendant Officers at all relevant times.

**ANSWER:**      Answering Defendants admit the allegations in this paragraph.

3

**FACTS**

10.     In late March of 1998, Mariano and Jacinta Soto were stabbed to death in their home, and their two children, Maria, their two-month old daughter, and Santiago, their three-year old son, were taken.

**ANSWER:**     Answering Defendants, on information and belief, admit the allegations in this paragraph.

11.     At the time of these crimes, Plaintiff was working as a machine operator at Ready Metal Manufacturing. He had no criminal history, had only lived in the United States for two years, and did not speak, read or write English. Plaintiff rented a room in a residence where several other people lived, including Adriana and Rosauro Mejia, Guadalupe Mejia and Arturo DeLeon Reyes.

**ANSWER:**     Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, admit that plaintiff worked at ready metal manufacturing at the time of the underlying incident and that he rented a room in a residence where several people lived, including Adriana and Rosauro Mejia, Guadalupe Mejia and Arturo DeLeon Reyes.   Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph.   Defendant Harvey lacks knowledge or information sufficient to admit or deny the allegations in this paragraph.

12.     In 1998, Adriana and Rosauro Mejia represented that Adriana was at long last pregnant after several years of trying to conceive.

**ANSWER:**     Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, admit the allegations in this paragraph.   Defendant Harvey lacks knowledge of information sufficient to admit or deny the allegations in this paragraph.

13.     Immediately after the Soto murders, Adriana Mejia brought home a baby whom she represented to be her newborn daughter and a three-year old boy she claimed she was watching for a woman she had met at the hospital.

**ANSWER:**     Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, admit the allegations in this paragraph.   Defendant Harvey lacks knowledge or information sufficient to admit or deny the allegations in this paragraph.

4

14.     In fact, Adriana Mejia had murdered Mariano and Jacinta Soto and stolen their children.

**ANSWER:**     Answering Defendants, on information and belief, admit that Adriana Mejia was involved in the murders of Mariano and Jacinta Soto and the kidnapping of their children.

15.     Within a week, Guadalupe Mejia saw the news about the Soto murders and missing children, recognized the three-year old, and confronted Adriana and Rosauro Mejia. Against Adriana's wishes, and at the request of Rosauro Mejia, on April 3, 1998, Plaintiff and Arturo Reyes accompanied Rosauro Mejia to take the three-year old to the police station.

**ANSWER:**     Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, admit that within a week, Guadalupe Mejia recognized the three-year old boy on the news and confronted Adriana Mejia, and that on April 3, 1998 Plaintiff, Arturo Reyes, and Rosauro Mejia took the three-year old to a police station.   Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey lack knowledge or information sufficient to admit or deny the remaining allegations. Defendant Harvey lacks knowledge or information sufficient to admit or deny the allegations in this paragraph.

16.     Although there was no credible evidence linking Plaintiff or Arturo Reyes to the abduction and murders, Defendants began to aggressively and coercively interrogate them, as well as Adriana Mejia.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

17.     Defendant Guevara interrogated Adriana Mejia first. In her initial statement, she denied involvement, did not implicate Plaintiff or Reyes, and instead implicated a woman named Norma Salazar, whom she claimed to have paid for the baby. Salazar was picked up but released after Adriana Mejia failed to identify her in a lineup.

**ANSWER:**     Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, admit that the first person Detective Guevara interviewed after the three-year old was recovered was Adriana Mejia and further admit the allegation

5

in this paragraph as to Adriana Mejia's initial statement. Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, admit that Norma Salazar was located and brought to the police station and left the station after she was not identified by Adriana Mejia in a lineup and interviewed by police personnel. Defendant Harvey lacks knowledge or information to form a belief as to the truth or falsity of the allegations in this paragraph.

18. In Guevara's subsequent interrogations of Adriana Mejia on April 3, 1998, after he grabbed her hair and struck her, she gave a second statement, implicating herself and Reyes, but not implicating Plaintiff.

**ANSWER:** Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, admit that Adriana Mejia gave a second statement to Det. Guevara, on April 3, 1998, implicating herself and Reyes in the crimes, but did not initially implicate Plaintiff. Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey lack knowledge or information sufficient to admit or deny the remaining allegations. Defendant Harvey lacks knowledge or information to admit or deny the allegations in this paragraph.

19. Defendants Guevara, Rutherford, Dickinson and Trevino then coercively interrogated Reyes more than once, striking him several times, threatening him with the death penalty, leaving him handcuffed to the wall in an interrogation room with no windows, depriving him of sleep, and screaming at him repeatedly to intimidate and frighten him into implicating himself and Plaintiff – though Reyes insists the statements were coerced, fabricated and false.

**ANSWER:** Answering Defendants admit that Reyes alleges that his statements implicating himself, Adriana Mejia, and plaintiff were coerced, fabricated and false. Answering Defendants deny the remaining allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

20. After Guevara struck Reyes and threatened him with the death penalty, on April 5, 1998, Spanish speaking Officer Trevino and Reyes met with non-Spanish speaking Assistant Cook County State's Attorney Thomas O'Malley, and they had Reyes sign a statement fabricated by the Defendants, in English – purportedly to help Reyes – falsely implicating himself and Plaintiff in the crimes.

6

**ANSWER:**   Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

21.   Defendant Guevara then increased his focus on Plaintiff, who by now had been held for more than 24 hours in a small holding room furnished with only a metal bench and no toilet, handcuffed to a ring on the wall for most of the time, and deprived of sleep and food.

**ANSWER:**   Defendants Halvorsen ,Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, deny the allegation regarding the amount of time plaintiff was being detained until he was interviewed by defendant Guevara and that Plaintiff was denied access to a bathroom and food.   Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey admit that the interview room that plaintiff was in at times during the underlying criminal investigation was not a large room and that it contained a metal bench and a ring or bar to handcuff prisoners to.   Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey lack knowledge or information sufficient to admit or deny the remaining allegations.   Defendant Harvey lacks knowledge or information to admit or deny the allegations in this paragraph.

22.   Police officers took Plaintiff's shoes, leaving him barefoot and feeling even more vulnerable. He then interrogated Plaintiff without adequately informing him of his Miranda rights, and when Plaintiff insisted on his innocence, Guevara called him a liar and struck him while he was handcuffed to the wall.

**ANSWER:**   Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, admit that plaintiff did have his shoes taken away to be inventoried and examined.   Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey lack knowledge or information sufficient to admit or deny the remaining allegations.   Defendant Harvey lacks knowledge or information to admit or deny the allegations in this paragraph.

23.   Defendant Guevara, along with Defendant Halvorsen, coercively pressed Adriana Mejia for more information about Plaintiff. Guevara told her that Reyes had implicated Plaintiff in the crime, and eventually they fabricated a statement from her in which she implicated both Reyes and Plaintiff.

**ANSWER:**   Defendant Halvorsen denies the allegations in this paragraph.   Defendants Harvey, Rutherford, Trevino, Biebel, Dickinson and Mingey lack knowledge or information sufficient to admit or deny the allegations in this paragraph.

24.     Defendant Guevara then forcefully took Adriana Mejia to the room where Plaintiff was detained and had her identify Plaintiff as the man who killed the Sotos. Guevara then asked Plaintiff if he still denied that he killed the Sotos. When Plaintiff continued to refuse to admit participation, Guevara struck him again.

**ANSWER:**     Answering Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph.

25.     Defendant Guevara did not disclose to Plaintiff that he and the other Defendants had fabricated the false statements from Adriana Mejia and Arturo Reyes that implicated Plaintiff.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

26.     After removing Adriana Mejia, Defendant Guevara returned to Plaintiff's room to continue the beating, including punching him in the stomach, and continued the interrogation. When Plaintiff could no longer stand the beating, he acquiesced and implicated himself, based on information he did not know, but that was fabricated and fed to him by Guevara.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

27.     On April 4-5, 1998, Defendant Guevara then brought non-Spanish speaking Assistant Cook County State's Attorney Heather Brualdi into the interrogation room, and on April 5, 1998 at approximately 3:35 a.m., after Plaintiff had been at the police station for more than 40 hours, deprived of sleep and food and access to the bathroom, exhausted, afraid, disoriented and beaten, Guevara pretended to translate what Plaintiff said to him, and fabricated a false statement, telling Brualdi in English what he had told Plaintiff to say, implicating Plaintiff in the Soto crimes.

**ANSWER:**     Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, admit that ASA Heather Brualdi did interview plaintiff on or about April 4th or 5th and was accompanied by defendant Guevara, that ASA Brualdi

8

was not a Spanish speaker, and that at 3:35 a.m. on April 5, 1998, ASA Brualdi took plaintiff's statement using defendant Guevara as a translator. Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph. Defendant Harvey lacks knowledge or information to admit or deny the allegations in this pargraph.

28. Plaintiff, who was innocent, did not know about the Soto crimes. The statement contained several facts that were false, including the incorrect placement of the bodies at the scene, that Plaintiff's shoes were bloody, and that the police treated him well.

**ANSWER:** Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, deny the allegations in this paragraph. Defendant Harvey lacks knowledge or information sufficient to admit or deny the allegations in this paragraph.

29. In fact, although there was substantial physical evidence discovered at the scene, including two bloody knives, a butcher block, blood-stained clothing and bed coverings, fingerprints throughout the house, broken glass, shoeprints in dried blood on the kitchen floor, and blood spatter on the bedroom wall, none of the physical evidence discovered at the scene connected Plaintiff or Reyes to the crime; indeed DNA testing of physical evidence excluded them.

**ANSWER:** Answering Defendants, on information and belief, admit that there was physical evidence at the scene of the crime which included two bloody knives, a butcher block, blood-stained clothing and bed coverings, fingerprints throughout the house, broken glass, shoeprints in dried blood on the kitchen floor, and blood spatter on the bedroom. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph.

30. When Guevara instructed Plaintiff to sign the statement and exhibits, even though Guevara never translated the statement into Spanish, Plaintiff, because he had been beaten into submission, felt he had no alternative but to follow Guevara's instructions.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

9

31.     In addition to the misconduct discussed above, the Defendants took additional steps to frame Plaintiff.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

32.     The Defendants deliberately withheld evidence that further demonstrated Plaintiff's innocence, including withholding evidence that witness statements implicating Plaintiff were false, including but not limited to Defendants' notes indicating that the witnesses implicating Plaintiff had given earlier statements that contradicted their statements implicating Plaintiff.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

33.     Additionally, the Defendants, including Defendants Harvey and Karalow, who were forensic investigators sent to process the crime scene on April 1, destroyed exculpatory evidence that could have been used to demonstrate Plaintiff's innocence, including suppressing or destroying photographs of the crime scene because the photographs contradicted the facts as set forth in Plaintiff's false confession. To hide the fact that these crime scene photos existed and depicted a scene other than that described in the false confession, the Defendants prepared police reports falsely claiming that the camera used at the crime scene had malfunctioned and that the original crime scene photos were unusable. New crime scene photographs consistent with Plaintiff's false confession were then taken weeks after the crime by Defendant Guevara and other officers.

**ANSWER:**     Answering Defendants admit forensic investigators Harvey and Karalow were assigned to process the crime scene, that the photographs taken on April 1, 1998 were not useable due to a malfunction, and that new crime scene photographs were taken at a later time.   Answering Defendants deny the remaining allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

10

34.     After Plaintiff was forced to implicate himself in the Soto murders and abduction, the Defendants produced a series of false and fraudulent police reports and related memoranda, which they inserted into their case file. These documents, which were used as evidence to show Plaintiff's purported connection to the crime, contained statements and described events that were fabricated and that the Defendants knew to be false. The Defendants signed these reports despite their knowledge that the information contained in those reports was entirely false.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

35.     The Defendants concealed this misconduct from Plaintiff, his criminal defense attorneys, and the prosecutors and judge involved in his criminal case. Indeed, the Defendants continue to this day to conceal evidence in their possession demonstrating Plaintiff's innocence; and they continue to hide their own fabrication of evidence.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

36.     Defendants failed to inform responsible authorities, including the prosecutors who handled the criminal prosecutions of Plaintiff and Reyes, of their misconduct, including their fabrication of evidence, their coercion of witnesses, and their failure to reveal exculpatory evidence.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

37.     Defendants Mingey and Biebel were aware of the Defendants' misconduct as set forth above, and of Defendant Guevara's misconduct in numerous prior investigations, and facilitated, approved, condoned, turned a blind eye to, ratified and/or purposely ignored it, thus authorizing said misconduct and participating in the arrest and prosecution of Plaintiff.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

11

38.     The false and fabricated evidence set forth above was used to obtain an indictment of Plaintiff charging him with murder, aggravated kidnaping and home invasion, and to deprive him of his liberty.

**ANSWER:**     Answering Defendants, on information and belief, admit that plaintiff was charged with murder, aggravated kidnapping and home invasion.   Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

39.     As a result of the misconduct of the Defendants as set forth above Plaintiff was detained in custody pending trial.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

40.     Prior to trial, Plaintiff's criminal defense attorney brought a motion to suppress Plaintiff's inculpatory statement that had been fabricated by Defendants.

**ANSWER:**     Answering Defendants, on information and belief, admit that Plaintiff's criminal defense attorney brought, prior to trial, a motion to suppress plaintiff's statement. Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

41.     At a hearing on the motion Defendants, including Defendant Guevara, falsely denied that Plaintiff or Reyes had been abused in any manner and asserted that their confessions were voluntary and not coerced.

**ANSWER:**     Answering Defendants admit that some of the named Defendants testified at the hearing on the motion to suppress that the criminal defendants' statements were voluntary and not coerced.   Answering Defendants deny that all the named individual defendants testified at the hearing on the motion to suppress regarding the criminal defendants' statements.   Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

12

42.     At the hearing on his motion to suppress Plaintiff testified truthfully to the abuse and coercion he had suffered at the hands of the Defendants, as set forth above.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

43.     The judge presiding over the motion hearing ruled that he found the testimony of the police more credible and denied the motion to suppress, allowing the false and fabricated coerced confession to be used at trial.

**ANSWER:**     Answering Defendants, on information and belief, admit that the judge presiding over the motion to suppress hearing denied the motion to suppress.   Answering Defendants deny the allegations of misconduct in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

44.     Defendants failed to advise the judge that the testimony that Plaintiff was not abused or coerced was false and fabricated.

**ANSWER:**     Answering Defendants admit they did not advise the judge that the testimony that plaintiff was not abused or coerced was false and fabricated.   Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

45.     Plaintiff then went to trial on the charges against him, where the only inculpatory evidence against him was the confession that Defendants had fabricated.

**ANSWER:**     Answering Defendants admit that the trial went forward as to Plaintiff.   Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

46.     Defendants, including Defendant Guevara, testified at the trial and denied that Plaintiff had been abused or coerced in any manner and asserted that the confession was freely and voluntarily given.

**ANSWER:**     Answering Defendants admit that some of the named Defendants testified at the criminal trial that Plaintiff had not been abused or coerced and that his statement to ASA Brualdi was freely and voluntarily given.   Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

13

47. As a result of the misconduct of Defendants, on June 20, 2000, a jury found Plaintiff guilty of two first degree murders, two counts of aggravated kidnaping, and home invasion.

ANSWER: Answering Defendants, on information and belief, admit that on June 20, 2000, a jury found plaintiff guilty of two counts of first degree murder, two counts of aggravated kidnapping and home invasion. Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

48. Without the Defendants' misconduct, Plaintiff would not have been prosecuted, jailed, convicted or imprisoned. There was no physical evidence connecting Plaintiff to the scene: his fingerprints were not found at the scene or on any evidence taken from the scene; his DNA was not present on any of evidence tested; there was no blood on Plaintiff's shoes. Conversely, the DNA of an unknown male was found on an item recovered and on shoes belonging to Adriana Mejia.

ANSWER: Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

49. On December 18, 2000, the court sentenced Plaintiff to death for the murders and to concurrent terms of 30 years in prison for the remaining counts.

ANSWER: Answering Defendants, on information and belief, admit the allegations in this paragraph.

50. On January 10, 2003, then Governor George Ryan commuted Plaintiff's death sentence to natural life in prison.

ANSWER: Answering Defendants, on information and belief, admit the allegation in this paragraph.

51. Adriana Mejia pled guilty to the Soto crimes and was sentenced to life in prison, where she remains today.

ANSWER: Answering Defendants, on information and belief, admit the allegations in this paragraph.

14

52.     Arturo Reyes was convicted of two first degree murders, aggravated kidnaping and home invasion and sentenced to life in prison without the possibility of parole.

**ANSWER:**     Answering Defendants, on information and belief, admit the allegations in this paragraph.

53.     On December 21, 2017, the same Cook County Circuit Judge who vacated Plaintiff's conviction and ordered his release from custody, also vacated Reyes' conviction and ordered his release from custody.

**ANSWER:**     Answering Defendants, on information and belief, admit the allegations in this paragraph.

54.     Defendant Guevara prepared fraudulent police reports memorializing the fabricated, false inculpatory statements he coerced from Plaintiff and Reyes, and never disclosed to prosecutors, the court, Plaintiff or his attorney the fact that he beat, threatened and otherwise coerced Plaintiff and witnesses to give the fabricated, false statements implicating Plaintiff in the Soto crimes, resulting in Plaintiff's wrongful imprisonment for two decades.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

55.     Additionally, before and after Plaintiff's convictions, the Defendants further conspired to fabricate inculpatory evidence and also deprive Plaintiff of exculpatory information to which he was lawfully entitled and which would have led either to his not being charged, his acquittal, or his more timely exoneration.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

56.     In this manner, the Defendants, acting in concert with other unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

15

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

57. In furtherance of the conspiracy, each of the co-conspirators engaged in and facilitated numerous overt acts, including but not limited to those set forth above – such as fabricating evidence, withholding exculpatory evidence, coercing and fabricating false confessions, writing false reports and committing perjury during hearings and trials – and was an otherwise willful participant in joint activities.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

58. As a direct and proximate result of the illicit prior agreement and actions in furtherance of the conspiracy referenced above, Plaintiff's rights were violated, and Plaintiff suffered injuries, including but not limited to loss of liberty, physical injuries and emotional distress.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

59. The misconduct described herein was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and deliberate indifference to Plaintiff's rights.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

60. Before and since his abusive and coercive interrogations of Plaintiff, Defendant Guevara used the same physically and psychologically abusive and coercive tactics to fabricate false confessions and otherwise violate the due process rights of many others, resulting in false and wrongful convictions, costing innocent men – many of whom were later to be exonerated – decades lost in prison. These victims of Guevara include Plaintiff's co-defendant Arturo Reyes, Angel "Javy" Rodriguez, Juan Johnson, Jacques Rivera, Jose Montanez, Armando Serrano, Roberto Almodovar,

16

Jose Maysonet, and Thomas Sierra.

**ANSWER:**   Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

61.    Before and since his abusive and coercive interrogations of Plaintiff, Defendant Guevara used the same physically and psychologically abusive and coercive tactics, including on Plaintiff's co-defendant Arturo Reyes, and on Adriana Mejia and her husband Rosauro Mejia, members of Guevara's own family, as well as on many other residents of the City of Chicago, to frame and otherwise harm innocent people, including but not limited to: Annie Turner (1982), Almarie Lloyd (1982), Leshurn Hunt (1983), Graciela Flores (1984), Reynaldo Munoz (1985), Daniel Pena (1986), Melvin Warren (1986, OPS CR 150473 sustained allegations of physical and verbal abuse), Rafael Garcia (1986, OPS CR 152902 sustained allegations of physical abuse), Victor Vera (1989), Virgilio Calderon Muniz (1989), Samuel Perez (1989), Virgilio Muniz (1989), Wilfredo Rosario (1991), David Rivera (1991), David Velazquez (1991), Daniel Rodriguez (1991), Jacqueline Montanez (1992), Carl Richmond (1993), Armando Serrano (1993), Francisco Vicente (1993), Adolfo Frias-Muñoz (1993), Elizer Cruzado (1993), Adrian Duta (1994), Kennelly Saez (1994), Jackie Grande (1994), Luis Figueroa (1995), Jose Melendez (1995), Edwin Davila (1995), Santos Flores (1995), Gloria Ortiz Bordoy (1995), Rodolfo Zaragoza (1995), Evelyn Diaz (1995), Maria Rivera (1996), Voytek Dembski (1997), Robert Ruiz (1997), and Martin Rivera (1999). In 2001, the FBI documented additional instances of Defendant Guevara's misconduct in a report related to CPD officer Joseph Miedzianowski and associates.

**ANSWER:**   Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

17

62.     The constitutional violations that caused Plaintiff's wrongful conviction were not isolated events. Rather, they were the result of the City of Chicago's policies and practices of, *inter alia*, pursuing wrongful convictions through reliance on profoundly flawed investigations and coerced and fabricated confessions, the failure to produce exculpatory material to criminal defendants, the failure to adequately train, supervise, monitor and discipline Chicago police officers, and the police code of silence.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph.     Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

63.     The Defendants' coercion of false statements from Plaintiff and his criminal co-defendants was also undertaken pursuant to, and proximately caused by, a policy and practice on the part of the Department of using physically and psychologically coercive interrogation tactics in order to elicit statements from suspects in criminal cases, which has caused false confessions and led to numerous wrongful convictions.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph.     Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

64.     The wrongful convictions of innocent persons who gave coerced and false confessions include numerous cases in which Department detectives used similar tactics to those employed by the Defendants against Plaintiff and his co-defendants in this case. These tactics include: (a) physical abuse; (b) psychological intimidation and manipulation; (c) fabrication of confessions; (d) concealment of exculpatory information; (e) false promises of leniency in exchange for "cooperation" in the form of a confession; and (f) use of other unlawful tactics to secure the arrest, prosecution, conviction and imprisonment of innocent persons.

18

**ANSWER:**   Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

65.   At the time of the events leading to Plaintiff's coerced confession and wrongful conviction, members of the Department systematically promoted the improper prosecutions of teenagers, young adults and other vulnerable individuals by using abusive and coercive interrogation tactics to force them to confess to crimes they did not commit.

**ANSWER:**   Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph.   Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

66.   Consistent with the municipal policy and practices described above, members of the Department, including but not limited to the Defendants, systematically suppressed evidence pertaining to these fabricated and coerced confessions, both from the Cook County State's Attorney's Office, judges, and from criminal defendants and their attorneys.

**ANSWER:**   Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph.   Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

67.   Consistent with the municipal policy and practices described in the preceding paragraphs, Defendants in this case concealed exculpatory evidence in files that were never disclosed to Plaintiff's criminal defense attorneys.

**ANSWER:**   Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph.   Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

68.   As a matter of both policy and practice, municipal policy makers and department supervisors condoned and facilitated a code of silence within the Chicago Police Department. In accordance with this code, Department Detectives refused to report and otherwise lied and

19

committed perjury about misconduct committed by their colleagues, including the misconduct at issue in this case.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

69. As a result of the City of Chicago's established practice of not tracking and identifying police officers who are repeatedly accused of the same kinds of serious misconduct; failing to investigate cases in which the police are implicated in obtaining coerced and false confessions, as well as wrongful charges and convictions; failing to discipline officers accused of this unlawful conduct; and facilitating a code of silence within the Department, Chicago police officers—including the Defendants named herein—have come to believe that they may violate the constitutional rights of members of the public and cause innocent persons to be charged with serious crimes without fear of adverse consequences.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

70. The City's failure to train, supervise, monitor and discipline its officers effectively condones, ratifies, and sanctions the kind of misconduct that the Defendant Officers committed against Plaintiff in this case. Constitutional violations such as occurred in this case are encouraged and facilitated as a result of the City's practices and *de facto* policies, as alleged above and these policies and practices were a moving force behind these violations.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

20

71. The City of Chicago and officials within the Chicago Police Department failed to act to remedy the abuses described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken to remedy Plaintiff's ongoing injuries.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

72. The policies and practices described in the foregoing paragraphs were consciously approved by City of Chicago policymakers who were deliberately indifferent to the violations of constitutional rights described herein.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

73. Defendants' misconduct and the policies and practices described in the preceding paragraphs proximately caused physical and emotional injuries to the Plaintiff including causing him to be wrongly imprisoned for 20 years, loss of his physical freedom, physical injuries including loss of hearing in one ear, missed opportunities to share significant moments in his own life and the life of his family, lost educational and employment opportunities, loss of the opportunity to socialize as a free person, and loss of the fundamental freedom to live his life as an autonomous human being, all causing him intense and permanent emotional distress.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

## COUNT I - 42 U.S.C. § 1983
### Fifth and Fourteenth Amendments

74. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Answering Defendants hereby reincorporate and reassert their answers to all other paragraphs of this complaint as though fully set forth herein.

75. In the manner described more fully above, the Defendants, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, coerced and forced Plaintiff to incriminate himself falsely and against his will, in violation of his rights secured by the Fifth and Fourteenth Amendments.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

76. As described more fully above, the Defendants conducted an unconstitutional interrogation of Plaintiff, which caused Plaintiff to make involuntary statements implicating himself in the Soto crimes.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

77. The false statements scripted and coerced by the Defendants and attributed to Plaintiff were used against Plaintiff to his detriment in a criminal case. These statements were the only reason that Plaintiff was charged, jailed, prosecuted and convicted of the Soto crimes.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

78. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and with reckless indifference to Plaintiff's clearly established constitutional rights.

22

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

79. As a result of the Defendants' unconstitutional conduct as described in this Count, Plaintiff suffered injuries as set forth above, including but not limited to physical injury, loss of liberty, and emotional distress.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

WHEREFORE, Answering Defendants request judgment in their favor and against plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

## COUNT II - 42 U.S.C. § 1983
### Violation of Due Process

81. As described more fully above, all of the Defendants, while acting individually, jointly, and/or in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

82. In the manner described more fully above, the Defendants, individually, jointly, and/or in concert and in conspiracy, fabricated false reports, statements and other evidence, and/or deliberately withheld exculpatory evidence. In doing so, the Defendants violated their clearly established duty to report all exculpatory and impeachment information to prosecutors.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

83. Absent Defendants' misconduct, the prosecution of Plaintiff could not and would not have been pursued, and Plaintiff would not have been jailed, convicted or imprisoned.

23

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

84. The Defendants' misconduct directly and proximately caused the unjust and wrongful pre-trial detention, criminal conviction and the continuing wrongful imprisonment of Plaintiff, thereby denying him his constitutional right to a fair trial, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

85. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and willful indifference to Plaintiff's clearly established constitutional rights.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

86. As a direct and proximate result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries as set forth above, including but not limited to loss of liberty, physical injury and emotional distress.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

WHEREFORE, Answering Defendants request judgment in their favor and against plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

## COUNT III - 42 U.S.C. § 1983
### Failure to Intervene

87. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Answering Defendants hereby reincorporate and reassert their answers to all other paragraphs of this complaint as though fully set forth herein.

24

88.     Defendants were aware of the constitutional violations as set forth above and had the opportunity and duty to intervene and prevent the violation of Plaintiff's constitutional rights, but they failed to do so.

**ANSWER:**   Answering Defendants deny the allegations in this paragraph as they pertain to    them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

89.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and willful indifference to Plaintiff's clearly established constitutional rights.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

90.     As a direct and proximate result of the Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered injuries as set forth above, including but not limited to loss of liberty, physical harm, and emotional distress.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

WHEREFORE, Answering Defendants request judgment in their favor and against plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

## COUNT IV - 42 U.S.C. § 1983
### Monell Policy Claims

Count IV of Plaintiff's Complaint is not directed Answering Defendants, and therefore they answer Count IV only to the extent the allegations herein are adopted and re-alleged in other counts of Plaintiff's Complaint.

91.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Answering Defendants hereby reincorporate and reassert their answers to all other paragraphs of this complaint as though fully set forth herein.

92. The actions of all individual Defendants were undertaken pursuant to policies practices and customs of the Department, described above, which were approved, encouraged, and/or ratified by policymakers for the City of Chicago with final policymaking authority.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

93. These policies and practices included the failure to adequately train, supervise, and discipline officers who engaged in the constitutional violations, as set forth in greater detail above, pursuing wrongful convictions through reliance on profoundly flawed investigations and coerced and fabricated confessions, the failure to produce exculpatory material to criminal defendants, and the police code of silence.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

94. One or more of the policies, practices and customs described in this Count were maintained and implemented by the City of Chicago with deliberate indifference to Plaintiff's constitutional rights and were the moving force behind the violations of those rights.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

95. As a direct and proximate result of the City's actions and inactions, Plaintiff's constitutional rights were violated and he suffered injuries and damages, as set forth in this Complaint.

26

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

## COUNT V - State Law Claim
## Malicious Prosecution

96. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Answering Defendants hereby reincorporate and reassert their answers to all other paragraphs of this complaint as though fully set forth herein.

97. The Defendants accused Plaintiff of criminal activity knowing that those accusations were without genuine probable cause, and they made statements to prosecutors with the intent of exerting influence and to institute and continue the judicial proceedings.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

98. The Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no genuine probable cause. These judicial proceedings were instituted and continued maliciously, resulting in Plaintiff's wrongful prosecution, conviction and imprisonment, and the consequent injuries set forth above.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

99. Statements of the Defendants regarding Plaintiff's alleged culpability were made with knowledge that said statements were false. The Defendants also fabricated evidence by coercing false inculpatory statements from Plaintiff and his co-defendants and withholding exculpatory evidence that would have demonstrated Plaintiff's innocence. The Defendants were aware that, as described more fully above, no true or reliable evidence implicated Plaintiff in the Soto crimes.

27

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

100. The Defendants intentionally withheld from and misrepresented to prosecutors facts that further vitiated probable cause against Plaintiff, as set forth above, and failed to investigate evidence which would have led to the actual perpetrators. The Defendants withheld the facts of their manipulation and the resulting fabrications from Plaintiff and his attorneys.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

101. The misconduct described in this Complaint was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

102. On December 21, 2017 the prosecution terminated in Plaintiff's favor when his conviction was vacated and the charges dismissed.

**ANSWER:** Answering Defendants, on information and belief, admit that on December 21, 2017, plaintiff's conviction was vacated and the charges dismissed, but lack knowledge or information sufficient to admit or deny the remaining allegations.

103. As a direct and proximate result of this misconduct, Plaintiff sustained, and continues to sustain, injuries as set forth above, including physical injury and emotional distress.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

WHEREFORE, Answering Defendants request judgment in their favor and against plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

28

## COUNT VI - State Law Claim
## Intentional Infliction of Emotional Distress

104. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Answering Defendants hereby reincorporate and reassert their answers to all other paragraphs of this complaint as though fully set forth herein.

105. The acts and conduct of the Defendants as set forth above were extreme and outrageous. The Defendants' actions were rooted in an abuse of power or authority, and they were undertaken with intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as more fully alleged above.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

106. Defendants continued to engage in their misconduct as set forth above during the pendency of the Plaintiff's conviction and continued to conceal their misconduct.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

107. This continued misconduct included Defendant Guevara falsely testifying at a hearing in October, 2017 that he had not physically abused Plaintiff, Reyes or other witnesses in this case.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

108. Plaintiff was unable to bring this cause of action until his conviction was vacated in December, 2017.

**ANSWER:** Answering Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph.

109. As a direct and proximate result of the Defendants' actions, Plaintiff suffered and continues to suffer physical injury and severe emotional distress.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

WHEREFORE, Answering Defendants request judgment in their favor and against plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

## COUNT VII - State Law Claim
## Civil Conspiracy

110.  Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**     Answering Defendants hereby reincorporate and reassert their answers to all other paragraphs of this complaint as though fully set forth herein.

111.    As described more fully in the preceding paragraphs, the Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

112.    In furtherance of this conspiracy, the Defendants committed overt acts and were otherwise willful participants in joint activity including but not limited to the malicious prosecution of Plaintiff and the intentional infliction of emotional distress upon him.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

113.    The misconduct described in this Count was undertaken intentionally, with malice, willfulness, and reckless indifference.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

114.    As a direct and proximate result of the Defendants' conspiracy, Plaintiff suffered damages as set forth above, including physical injury and severe emotional distress, as more fully

alleged above.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

WHEREFORE, Answering Defendants request judgment in their favor and against plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

<strong>COUNT VIII - State Law Claim<br>Respondeat Superior</strong>

Count VIII of Plaintiff's Complaint is not directed Defendants Rutherford, Trevino, Biebel, Harvey, Dickinson, and Mingey, and therefore they answer Count VIII only to the extent the allegations herein are adopted and re-alleged in other counts of Plaintiff's Complaint.

115.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**     Answering Defendants hereby reincorporate and reassert their answers to all other paragraphs of this complaint as though fully set forth herein.

116.     In committing the acts alleged in the preceding paragraphs, each of the Defendants was an employee and agent of the Chicago Police Department and the City of Chicago, acting at all relevant times within the scope of his employment and under color of law.

**ANSWER:**     Answering Defendants admit that they were employees of the Chicago Police Department acting at all relevant times within the scope of their employment and under color of law.   Answering Defendants deny the allegations of misconduct in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

117.     Defendant City of Chicago is liable as principal for all state law torts committed by the Defendants as alleged herein, including malicious prosecution, infliction of emotional distress, and conspiracy.

**ANSWER:**     Answering Defendants deny they committed any torts and deny this is an accurate or complete statement of the law.

## COUNT IX - State Law Claim
### Indemnification

Count IX of Plaintiff's Complaint is not directed at Answering Defendants, and therefore they answer Count IX only to the extent the allegations herein are adopted and re-alleged in other counts of Plaintiff's Complaint.

118.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:**    Answering Defendants hereby reincorporate and reassert their answers to all other paragraphs of this complaint as though fully set forth herein.

119.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable for acts within the scope of their employment.

**ANSWER:**    Answering Defendants, on information and belief, admit the allegations in this paragraph.

120.    The Defendants are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

**ANSWER:**    Answering Defendants admit the individual defendants were employees of the Chicago Police Department and, on information and belief, acted within the scope of their employment at all relevant times to Plaintiff's complaint.   Answering Defendants deny the allegations of misconduct in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Answering Defendants were government officials, namely police officers, who perform discretionary functions. At all times material to the events alleged in plaintiff's complaint, a reasonable police officer objectively viewing the facts and circumstances that confronted Answering Defendants, could have believed their actions to be lawful, in light of clearly established law and the

information that Answering Defendants possessed. Answering Defendants are therefore entitled to qualified immunity on plaintiff's federal claims.

## Second Affirmative Defense

The Answering Defendants are absolutely immune from civil liability for their testimony given in judicial proceedings in plaintiff's underlying criminal case. *Briscoe v. LaHue*, 460 U.S. 325, 330-31, 103 S.Ct. 1108, 1113 (1983); *Jurgensen v. Haslinger*, 295 Ill.App.3d 139, 141-42; 692 N.E.2d 347, 349-50 (3rd Dist. 1998).

## Third Affirmative Defense

To the extent Plaintiff is attempting to allege a Section 1983 claim for false confession, those claims are barred by the two-year statute of limitations for Section 1983 claims because they were not filed within two years after they accrued.

## Fourth Affirmative Defense

Plaintiff's claim under Illinois law for intentional infliction of emotional distress (Count VI) is barred by the one-year statute of limitations under the Illinois Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/8-101 because it was not filed within one year after it accrued.

## Fifth Affirmative Defense

Under the Illinois Tort Immunity Act, Answering Defendants are not liable for any of the state law claims alleged because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law, unless such acts or omissions constitute willful and wanton conduct. 745 ILCS 10/2-202.

33

### Sixth Affirmative Defense

As to plaintiff's state law claims, Answering Defendants are not liable for any claims alleged because their decisions regarding the investigation and/or the arrest of plaintiff were decisions that involved the determination of policy or exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when action in the exercise of such discretion even though abused. 745 ILCS 10/2-201.

### Seventh Affirmative Defense

As to plaintiff's state law claims, Answering Defendants are not liable for any claims alleged because a public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, unless he acts maliciously and without probable cause. 745 ILCS 10/2-208.

### Eighth Affirmative Defense

As to plaintiff's state law claims, Answering Defendants are not liable for any claims alleged claims because a public employee, as such and acting within the scope of his/her employment, is not liable for an injury caused by the act or omission of another person. 745 ILCS 10/2-204.

### Ninth Affirmative Defense

Plaintiff's claims as alleged in his Complaint are barred in whole or in part by the applicable statute of limitations.

### Tenth Affirmative Defense

Plaintiff has a duty to mitigate his damages, and any damages awarded to plaintiff would be required to be reduced by any amount by which the damages could have been lessened by

34

plaintiff's failure to take reasonable action to minimize those damages.

## JURY DEMAND

Defendants   Rutherford, Trevino, Biebel, Harvey, Dickinson, Halvorsen, and Mingey

request a trial by jury.

Dated: September 14, 2018          Respectfully submitted,

         /s/ *Josh M. Engquist*
         JOSH M. ENGQUIST, Attorney No. 06242849
         *One of the Attorneys for Individual Defendants*

James G. Sotos
Jeffrey N. Given
Joseph M. Polick
Caroline P. Golden
Josh M. Engquist
David A. Brueggen
Jeffrey R. Kivetz
The Sotos Law Firm, P.C.
550 E. Devon Avenue, Suite 150
Itasca, Illinois 60143
(630) 735-3300
jengquist@jsotoslaw.com

35

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that on September 14, 2018, I electronically filed the foregoing **Defendants Halvorsen, Rutherford, Trevino, Biebel, Harvey, Dickinson, and Mingey's Answer and Affirmative Defenses to Plaintiff's Complaint** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed below.

*Attorneys for Arturo Reyes:*
Jon Loevy
Steven Art
Anand Swaminathan
Rachel Brady
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900
jon@loevy.com
steve@loevy.com
anand@loevy.com
brady@loevy.com

*Attorneys for Gabriel Solache:*
Jan Susler
Ben H. Elson
John L. Stainthorp
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642
(773) 235-0070
jsusler@gmail.com
ben.elson79@gmail.com
stainthorp@gmail.com

*Attorney for Cook County Defendants:*
Christina C. Chojnacki
Yulia Nikolaevskaya
Cook County State's Attorney's Office
50 W. Washington St., Room 500
Chicago, IL 60602
(312) 603-3369
christina.chojnacki@cookcountyil.gov
yulia.nikolaevskaya@cookcountyil.gov

*Attorneys for City of Chicago:*
Eileen E. Rosen
Stacy A. Benjamin
Catherine M. Barber
Theresa B. Carney
Rock Rusco & Connelly, LLC
312 N. Clark, Suite 2200
Chicago, IL 60654
(312) 494-1000
erosen@rfclaw.com
sbenjamin@rfclaw.com
cbarber@rfclaw.com
tcarney@rfclaw.com

*Attorneys for Defendant Guevara:*
James V. Daffada
Thomas M. Leinenweber
Kevin E. Zibolski
Justin L. Leinenweber
Leinenweber Baroni & Daffada, LLC
120 N. LaSalle St., Suite 2000
Chicago, IL 60602
(312) 663-3003
jim@ilesq.com
thomas@ilesq.com
kevin@ilesq.com
justin@ilesq.com

/s/ *Josh M. Engquist*
JOSH M. ENGQUIST, Attorney No. 6242849
*One of the Attorneys for Individual Defendants*

36