**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | |
| | ) | Case No. 1:18-cv-01028 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Sunil R. Harjani |
| REYNALDO GUEVARA, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| GABRIEL SOLACHE, | ) | |
| | ) | Case No. 1:18-cv-02312 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Sunil R. Harjani |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Defendants City of Chicago, Cook County and the individual defendant officers and prosecutors in this case have brought a joint motion to compel the testimony of Adriana Mejia. [*DeLeon-Reyes* 354; *Solache* 246].[1]  In ruling on this motion, the Court is presented with the question of whether a witness who pled guilty to, and was convicted for, a murder nearly twenty years ago can invoke the Fifth Amendment privilege against self-incrimination to avoid testifying

---

[1] The remainder of this Memorandum Opinion and Order cites to documents from the *DeLeon-Reyes* docket, Case No. 1:18-cv-01028, unless otherwise noted.

about those crimes.  For the reasons stated below, the Court finds that Adriana Mejia cannot invoke the Fifth Amendment under these circumstances, and grants Defendants' motion to compel.

## Background

In these separate lawsuits, consolidated for purposes of discovery, *see* Doc. [49], Plaintiffs Arturo DeLeon-Reyes and Gabriel Solache claim that they were wrongfully convicted and that they served almost 20 years in prison for the 1998 double murder of Mariano and Jacinta Soto. *Solache* Doc. [171] at 4.  Plaintiffs assert that their convictions were the result of constitutional violations committed by Chicago police officers during the investigation of the Soto homicides. *Id.*  Specifically, Plaintiffs bring claims under 42 U.S.C. § 1983 for coerced confession, fabrication of false witness statements, deprivation of liberty without probable cause, violations of due process, failure to intervene, and conspiracy. *Id.*  Plaintiff DeLeon-Reyes additionally asserts 42 U.S.C. § 1983 claims against certain state prosecutors for coerced confession and fabrication of false witness statements. *Id.*  Both Plaintiffs allege *Monell* policy and practice claims, as well as state law claims for malicious prosecution, intentional infliction of emotional distress, civil conspiracy, *respondeat superior*, and indemnification. *Id.*

Defendants deny Plaintiffs were wrongfully convicted, deny the claims against them, and assert various defenses, such as qualified immunity, absolute immunity, a bar under *Heck v. Humphrey*, estoppel, statute of limitations, Illinois Tort Immunity Act, and failure to mitigate damages. *Solache* Doc. [171] at 4.

On October 22, 2019, counsel for Plaintiffs and Defendants traveled to Logan Correctional Center to depose Adriana Mejia. Doc. [354] at 3-4.  Mejia is currently serving time for her involvement in the Soto homicides.  In 2001, she pled guilty to two counts of first-degree murder, two counts of aggravated kidnapping, and one count of home invasion in exchange for life-

imprisonment without possibility of parole. Doc. [354-1] at 22-23, 30-38. According to her confession at the time of arrest, Mejia wanted to have a baby so desperately, that she faked a pregnancy and scouted the pediatric wards of hospitals in the Chicago area in search of a baby to kidnap and disguise as her own child. *Id.* at 42-43. When she spotted Jacinta Soto holding the hand of her three-year old son while cradling her two month-old daughter at the University of Illinois Hospital, Mejia decided to target Jacinta Soto. *Id.* at 43. Mejia confessed that she followed Jacinta Soto home to find out where she lived. *Id.* at 44. The next morning, according to Mejia's confession, she was picked up by Plaintiffs, and they drove to Jacinta Soto's home, stabbed Jacinta Soto and her husband to death, and kidnapped the couple's two children. *Id.* at 44-45.

At her October 22, 2019 deposition, Mejia invoked the Fifth Amendment in response to numerous questions. *See, e.g.*, Doc. [354-1] at 88, 89. However, Mejia did testify about some of the circumstances surrounding her confession. *See id.* at 80-83. Specifically, Mejia testified that Defendant Guevara brought her some blank pieces of paper to sign, so that she could get a lawyer, food, and access to the telephone. *Id.* at 82-83. Mejia also stated that Guevara mistreated her by hitting her and by not letting her use the restroom. *Id.* at 87-88.

On August 4, 2020, Defendants brought the Motion to Compel Witness Adriana Mejia to Testify that is currently before the Court. Doc. [354]. Defendants ask the Court to "order Mejia to answer all questions concerning the details and circumstances surrounding her and Solache and Reyes' involvement in the Soto murders and kidnappings and her admissions to those horrific offenses." *Id.* at 15. On August 16, 2020, Mejia filed a response in opposition. Doc. [359]. On August 18, 2020, Plaintiffs filed a response as well, stating they take no position on whether Mejia should be compelled to testify. Doc. [360] at 2.

## Discussion

The parties are currently engaged in discovery. Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that a party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Privilege, thus, is one of the limitations to obtaining information about relevant matters. The Fifth Amendment privilege against self-incrimination can be invoked in both civil and criminal proceedings, and deponents in civil actions are generally entitled to invoke the privilege during pretrial discovery. Witness Adriana Mejia has invoked that privilege during a deposition in response to numerous questions about the Soto homicides, and now Defendants move to compel her to answer those questions. Defendants assert that there is no risk of further prosecution for Mejia's crimes because all proceedings related to those convictions have been completed or are time-barred. In the alternative, Defendants assert that Mejia waived her Fifth Amendment right by pleading guilty, discussing the crimes with government investigators, and by testifying at the October 22, 2019 deposition. As discussed below, the Court finds that Mejia does not bear a reasonable risk of further prosecution and cannot invoke the Fifth Amendment. Although not outcome determinative, the Court does not find for the Defendants on their second contention.

## I. The Fifth Amendment Does Not Apply

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The right "reflects a complex of our fundamental values and aspirations, and marks an important advance in the development of our liberty." *Kastigar v. United States*, 406 U.S. 441, 444 (1972). It can be asserted in any proceeding, *id.*, and must be construed broadly "to assure that an individual is not compelled to produce

evidence which later may be used against him as an accused in a criminal action." *Maness v. Meyers*, 419 U.S. 449, 461 (1975) (citations omitted).

Nevertheless, the Fifth Amendment cannot be invoked as "an obstructionist tactic, and thus a party that relies on the privilege as a discovery shield must establish that a truthful answer to an inquiry would have some tendency to subject the person being asked the question to criminal liability." *In re Pansier*, 417 F. App'x 565, 568 (7th Cir. 2011) (internal quotation marks and citations omitted). By that same token, a witness does not have "carte blanche by virtue of the Fifth Amendment's self-incrimination clause to refuse to answer questions." *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 663 (7th Cir. 2002). Rather, "the protection afforded by the Fifth Amendment is limited to instances in which the witness has reasonable cause to apprehend danger from a direct answer." *Shakman v. Democratic Org. of Cook Cty.*, 920 F. Supp. 2d 881, 887 (N.D. Ill. 2013) (citation omitted). It is the court, not the witness, who decides whether the Fifth Amendment applies, and the court "may order the witness to answer if it clearly appears that no danger of prosecution exists." *Ryan v. Comm'r*, 568 F.2d 531, 539 (7th Cir. 1977) (citing *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951)).

Nearly twenty years ago, Mejia pled guilty to, and was convicted for, numerous crimes in connection with the Soto homicides. Since that time, Mejia has not made any attempts to attack her convictions or sentence. Mejia's sentence has thus been fixed and the judgment of her convictions has been final (and unchallenged) for nearly two decades. Time has run out for any realistic pursual of post-conviction relief and for the prosecution of other crimes Mejia might have committed at the time of the Soto homicides. Because the Court cannot discern a real risk of prosecution or jeopardy facing Mejia, as discussed below, the Fifth Amendment does not apply to her statements regarding the crimes she was convicted of in 2001.

A. **No Risk of Prosecution for Crimes Related to the Soto Homicides**

To assess Mejia's risk in testifying about the Soto homicides, the Court first examines the potential crimes for which Mejia could face prosecution. The Fifth Amendment applies so long as there is a possibility of prosecution, even if this Court thinks that the government would be unlikely to prosecute. *In re Corrugated Container Antitrust Litig.*, 661 F.2d 1145, 1150 (7th Cir. 1981), *aff'd sub nom. Pillsbury Co. v. Conboy*, 459 U.S. 248, 103 S. Ct. 608, 74 L. Ed. 2d 430 (1983) (citation omitted). To evaluate the possibility of prosecution, courts in this circuit look for indicia of an "absolute bar to subsequent prosecution," such as "statues of limitations, immunity, and double jeopardy." *Id.* at 1151 (internal quotation marks and citation omitted).

*In re High Fructose Corn Syrup* presents an example of the absolute bar analysis. In that antitrust class action, former executives at Archer Daniels Midland Co. (ADM) indicated that they would invoke the Fifth Amendment rather than testify about the price-fixing crimes they were convicted of five years ago. *In re High Fructose Corn Syrup Antitrust Litig.*, 293 F. Supp. 2d 854 (C.D. Ill. 2003). The former executives argued that even though they had finished serving their sentences, they nevertheless faced jeopardy due to the possibility that conspiratorial activity continued after the government investigation into ADM's price-fixing had ended. *Id.* at 859. The court disagreed, finding that the former executives faced no further jeopardy. *Id.* at 860. The court analyzed possible related crimes and their statutes of limitations, and found that any criminal prosecution would necessarily be time-barred due to the timing of when the former executives left ADM. *Id.* Finally, the court ruled out the possibility that the former executives could be charged for acts of conspiracy committed within the limitations period by application of the withdrawal doctrine. *Id.* The court concluded that because prosecution was "clearly barred by the statute of limitations," it was unable to find "that the possibility of future prosecution [was] more than

fanciful." *Id.* at 861. As a result, the court found that the Fifth Amendment did not protect the former executives. *Id.*

Here, in order for Mejia to face a possibility of prosecution for any crimes related to her convictions, the applicable statutes of limitations would have to be greater than twenty years. This is because although Mejia pled guilty in 2001, the events giving rise to her prosecution actually happened in 1998. Doc. [354-1] at 25-30. Under Illinois law, the prosecution of a felony, unless designated as having no statute of limitations, must generally be commenced within three years after the offense is committed. *See* 720 ILCS 5/3–5(b).[2] As Defendants point out, only a small subset of crimes in Illinois are subject to no statute of limitations. *See* 720 ILCS 5/3-5(a). Those crimes are: (1) First degree murder; (2) Attempt to commit first degree murder; (3) Second degree murder; (4) Involuntary manslaughter; (5) Reckless homicide; (6) Leaving the scene of a motor vehicle accident involving death or personal injuries; (7) Failure to give information and render aid under the Illinois Vehicle Code; (8) Concealment of homicidal death; (9) Treason; (10) Arson, residential arson, or aggravated arson; (11) Forgery; (12) Statutorily specified child pornography offenses; and (13) Certain offenses involving sexual conduct or sexual penetration. *Id.* Mejia already pled guilty to, and was convicted of, two counts of first-degree murder in connection with the Soto homicides, so double jeopardy would prevent Mejia from being charged with that crime again. *Currier v. Virginia*, 138 S. Ct. 2144, 2149, 201 L. Ed. 2d 650 (2018). As for related crimes, nothing in the materials provided by the parties indicates that any of the thirteen crimes without limitations periods listed above could apply to the Soto homicides, such as concealment or forgery.

---

[2] Illinois Law provides extended statutes of limitations for certain crimes as well, though none seems applicable to Mejia's case. *See* 720 ILCS 5/3-6 (extending limitations for theft involving breach of fiduciary obligations, offenses based on misconduct by a public officer or employee, offenses involving involuntary servitude, sexual offenses involving children, etc.).

The Illinois statutes of limitations thus provide an absolute bar to Mejia being prosecuted for state crimes related to the Soto homicides.

The Court likewise does not see a risk of federal prosecution for Mejia for crimes related to the Soto homicides. Murder, kidnapping, and home invasion, the crimes that Mejia was convicted of, are generally state crimes. To the extent there are parallel federal crimes, federal jurisdiction over such crimes is limited to particular instances inapplicable to the Soto homicides. Take kidnapping for example. In order for a federal charge of kidnapping to be applicable, the victim has to be transported across state lines, the kidnapping has to take place within a special maritime or territorial jurisdiction of the United States, or the victim has to be a specially protected federal officer or employee, foreign official, internationally protected person, official guest as defined in 18 U.S.C. § 1114, or a child under the age of 16 in an international parental kidnapping case. *See* 18 U.S.C. §§ 1201, 1202. Similarly, the federal murder statute only applies to killings "within the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 1111(b). *See United States v. Martinez*, 16 F.3d 202, 206 (7th Cir. 1994). The Soto homicides took place in Chicago, and there is nothing in the record demonstrating that any of the above special circumstances would apply. The Court consequently does not see a risk of federal prosecution.

Mejia asserts that the Fifth Amendment privilege would cover the charge of perjury. Doc. [359] at 5. It is true that the fear of perjury can sometimes provide a valid reason for invoking the Fifth Amendment. *See In re Corrugated Container*, 661 F.2d at 1158-59; *Hillmann v. City of Chicago*, 918 F. Supp. 2d 775, 779 (N.D. Ill. 2013). However, the courts that have analyzed the risk of perjury in the Fifth Amendment context have held that the Fifth Amendment only covers perjury arising from past testimony, not future testimony. *United States v. Thompson*, 561 F. Supp. 2d 938, 958 (N.D. Ill. 2008); *United States v. Allmon*, 594 F.3d 981, 986-87 (8th Cir. 2010), *cert.*

*denied*, 562 U.S. 981, 131 S. Ct. 413, 178 L. Ed. 2d 322 (2010); *Earp v. Cullen*, 623 F.3d 1065, 1070 (9th Cir. 2010); *United States v. Whittington*, 783 F.2d 1210, 1218 (5th Cir. 1986). Put another way, "no one has the constitutional right not to testify on the ground that she will lie and thus be subjected to a perjury prosecution." *Thompson*, 561 F. Supp. 2d 938 (citation omitted). "The shield against self-incrimination in such a situation is to testify truthfully, not to refuse to testify on the basis that the witness may be prosecuted for a lie not yet told." *Whittington*, 783 F.2d at 1218.

The Supreme Court explored the underlying rationale for the principle that the Fifth Amendment privilege does not cover anticipatory perjury in *United States v. Apfelbaum*. In *Apfelbaum*, the defendant initially pled the Fifth Amendment while being questioned before the grand jury but ultimately testified after the government granted him immunity pursuant to 18 U.S.C. § 6002. *United States v. Apfelbaum*, 445 U.S. 115, 116 (1980). The immunity statute provided that when a witness is compelled to testify over her claim of Fifth Amendment privilege, no testimony or information compelled may be used against the witness in a criminal case, "except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order." 18 U.S.C. § 6002. The defendant in *Apfelbaum* was later convicted for making false statements to the grand jury. *Apfelbaum*, 445 U.S. at 116-17. On appeal to the Supreme Court, the defendant argued that the truthful immunized testimony he gave at the grand jury should not have been admitted against him in his later trial for false statements. *Id.* at 121-23. The Supreme Court disagreed and held that neither the immunity statute, nor the Fifth Amendment, precluded the use of immunized testimony at a subsequent false statements prosecution because the proper invocation of the Fifth Amendment allows a witness to remain silent, not to swear falsely. *Id.* at 117. In explanation, the Supreme Court suggested two justifications for the rule that the Fifth

Amendment does not protect false testimony. First, the Supreme Court emphasized that the Fifth Amendment protects real hazards of incrimination, stating that "prospective acts will doubtless ordinarily involve only speculative and insubstantial risks of incrimination." *Id.* at 129 (internal quotation marks and citations omitted). Second, the *Apfelbaum* Court declined to interpret the Fifth Amendment so expansively as to "suppl[y] insulation for a career of crime about to be launched." *Id.* at 129-30 (internal quotation marks and citations omitted). *Apfelbaum* accordingly shows that anticipatory perjury is not covered by the Fifth Amendment because the commission of future crimes does not constitute a real and substantial hazard at the time of invoking the Fifth Amendment, and because courts do not interpret the Fifth Amendment as providing a constitutional shield for committing future crimes.

Mejia could then, in theory, invoke the Fifth Amendment out of fear that her truthful answers at a deposition in this case could show that she lied in the past, but she cannot invoke the Fifth Amendment out of the fear that her untruthful testimony in this case will lead to a future perjury charge. Moreover, in order for a charge of perjury to apply under federal or Illinois law, Mejia would have had to lie while under oath or affirmation, or in a statement made under penalty of perjury. 18 U.S.C. § 1621; 720 ILCS 5/32-2(a). Mejia's past sworn statements are old enough that any potential perjury charges would be time-barred. The federal statute of limitations for perjury is 5 years, while the Illinois statute of limitations for perjury is 3 years. 18 U.S.C. § 3282(a) (5-year statute of limitations for non-capital offenses); 720 ILCS 5/3-5(b) (three-year limitations period for all felonies not enumerated in 720 ILCS 5/3-5(a)); 720 ILCS 5/32-2(e) (perjury a Class 3 felony). Furthermore, while Mejia spoke to Sidley Austin in October 2014 and ASA Nikolaevskaya less than two years ago regarding the Soto homicides, neither of those statements were sworn statements by Mejia or statements by Mejia made under penalty of perjury. *See* Doc.

[354-1] at 61-66, 68-69. Thus, the only potentially perjurious statements are the sworn ones Mejia made around the time of her guilty plea and sentencing. *See, e.g.*, Doc. [354-1] at 20-58, 183-222. The federal and state statutes of limitations provide an absolute bar to Mejia being prosecuted for perjury. *See Earp*, 623 F.3d 1065 (risk of perjury prosecution was insufficient to invoke Fifth Amendment where pertinent declaration was made sixteen years earlier and relevant statutes of limitations had long since expired). Accordingly, Mejia faces no real risk of federal or state prosecution for other crimes related to the Soto murder.

### B.     No Risk of Jeopardy from Post-Conviction Proceedings

While double jeopardy steps in to prevent the state from charging Mejia for the crimes with which she has already been convicted, *Currier*, 138 S. Ct. at 2149, there could be hazards associated with any post-conviction attacks to those convictions.

In *Mitchell v. United States*, the Supreme Court was faced with the question of whether a guilty plea waives the Fifth Amendment privilege in the sentencing phase of the case. 526 U.S. 314, 316-17 (1999). The Third Circuit below had held that the entry of a guilty plea completed the incrimination of the defendant and extinguished the Fifth Amendment privilege. *Id.* at 325-26. The Supreme Court rejected the proposition that incrimination is complete once guilt had been adjudicated. *Id.* at 325. While the Supreme Court acknowledged the general rule that "where there can be no further incrimination, there is no basis for the assertion of the [Fifth Amendment] privilege," the court held that that general rule "applie[s] to cases in which the sentence has been fixed and the judgment of conviction has become final." *Id.* at 326 (citation omitted). The Supreme Court held that a guilty plea does not waive the defendant's right to invoke the Fifth Amendment at the sentencing hearing because "[w]here the sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony." *Id.* The *Mitchell* case

11

thus highlights the importance that finality of judgment plays in determining whether the Fifth Amendment applies. The more final a judgment is, the less likely there is a basis for the Fifth Amendment privilege against self-incrimination.

In the wake of *Mitchell*, a handful of courts have grappled with the question of when a "judgment of conviction has become final," such that there is no basis for the Fifth Amendment privilege. 526 U.S. at 326. At least one court has applied the Supreme Court's definition of finality from *Clay v. United States*, 537 U.S. 522, 527 (2003), in which the Supreme Court held that finality attaches when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *See Toepfer v. United States*, 518 F. App'x 834, 840 (11th Cir. 2013). Another court opted for a more context-based standard, holding that a conviction should be considered final when an individual no longer faces "substantial and real hazards of incrimination." *Milke v. City of Phoenix*, 325 F. Supp. 3d 1008, 1015-16, (D. Ariz. 2018) (looking at entirety of witness's unsuccessful state and federal post-conviction proceedings and finding that because there was no meaningful chance witness would obtain relief in further post-conviction proceedings, there was no "substantial and real" likelihood that witness would suffer adverse consequences if deposed).

In the specific context of witnesses who are in the process of appealing their convictions, courts seem to agree that such judgments are not final. *See, e.g.*, *Hollinger Int'l, Inc. v. Hollinger Inc.*, No. 04 C 698, 2008 WL 161683, at *2-*3 (N.D. Ill. Jan. 16, 2008) (Fifth Amendment privilege was preserved by witnesses having appealed their convictions to the Seventh Circuit); *Universal Trading & Inv. Co. v. Kiritchenko*, No. C-99-3073 MMC EDL, 2006 WL 3798157, at *1 (N.D. Cal. Dec. 22, 2006) (citation omitted) ("Defendant's convictions on appeal are not final judgments in the context of his Fifth Amendment privilege against self-incrimination."); *People v.*

*Fonseca*, 36 Cal. App. 4th 631, 637, 42 Cal. Rptr. 2d 525, 528 (1995) ("[A]t at the earliest, the privilege expires when the time to file an appeal has passed with no notice of appeal filed."). This is because, even after a sentence has been imposed, an individual who has appealed her conviction "remains in jeopardy insofar as any testimony [she] offers in these proceedings could potentially prejudice [her] either in connection with [her] appeal or at a possible retrial." *Sterling Nat'l. Bank v. A-1 Hotels Int'l, Inc.*, No. 00 CIV. 7352(GEL), 2004 WL 1418201, at *1 (S.D.N.Y. June 23, 2004) (citations omitted).

The law is less clear with respect to habeas petitions. For example, in *Securities and Exchange Commission v. Pence*, the court held that the pendency of a timely-filed undecided motion under 28 U.S.C. § 2255 was sufficient to preserve the Fifth Amendment right because the motion created a chance that the witness's conviction could be overturned. *Sec. & Exch. Comm'n v. Pence*, 323 F.R.D. 179, 189 (S.D.N.Y. 2017). Thus, the witness had "reasonable cause to apprehend that deposition questions relating to the facts underlying his conviction and related matters might incriminate him if answered." *Id.* Whereas in *Wilson v. Doss*, the court held that the conviction of a witness who had exhausted all of his direct appeals in state court was final, such that the Fifth Amendment did not apply, even though the witness had filed a petition for writ of habeas corpus which was pending. *Wilson v. Doss*, 856 F. Supp. 2d 1231, 1233 (M.D. Ala. 2012). To the *Wilson* Court, "[t]hat a successful habeas claim would have the same effect as a successful direct appeal in state court [did] not mean that [the] pending habeas action amount[ed] to a pending appeal." *Id.*

Taken together, the above cases instruct the Court to look for pending appeals or collateral attacks that could be impacted by Mejia's deposition testimony in this case. Defendants aver that in the nearly twenty years since her conviction, Mejia has never appealed or collaterally attacked

13

her convictions in any way. Doc. [354] at 7. Mejia does not dispute that contention. Instead, she argues generally that she has not exhausted all of her post-conviction or appellate remedies. Doc. [359] at 4. According to Mejia, even if her post-conviction challenges would be tardy under Illinois' post-conviction statute, that tardiness would not bar her from seeking relief. *Id.* at 4-5. It appears that Mejia's position is because the government can waive or forfeit time limitations under Illinois' post-conviction statute, Mejia could still file a post-conviction motion, and that chance is sufficient to preserve her Fifth Amendment right.[3]

In each of the post-sentencing cases discussed above in which the court found the Fifth Amendment to still apply, there was an appeal or habeas proceeding pending. Here, while Mejia testified at her deposition that she was trying to file something with the courts to get out of prison, Doc. [354-1] at 180, the record does not show that there are any pending appeals or post-conviction proceedings. It cannot be that vague and unsupported assertions about the mere hope for a future post-conviction filing, without anything more, is sufficient to prevent a conclusion of finality. That would essentially result in no conviction ever becoming final, and case law does not support such a result. Mejia has had twenty years in which to challenge her conviction, and she has not done so. Nor has she provided any information about the basis in which to challenge her guilty plea and sentencing, or why a court would excuse the tardiness of such a filing.

"Cognizant of the need for a liberal construction of the fundamental Fifth Amendment privilege against self-incrimination," *In re Corrugated Container*, 661 F.2d at 1150, the Court nevertheless cannot find that the Fifth Amendment applies here. The time for Mejia to file a direct

---

[3] Mejia insists that the State's interest in convenience should be overridden when there has been a miscarriage of justice involving due process, fundamental fairness, or a claim of actual innocence, Doc. [359] at 5 (citing *People v. Boclair*, 789 N.E.2d 734, 742 (Ill. 2002)). The problem for Mejia is that she has never claimed that she is innocent, nor has she argued that there was a miscarriage of justice in her case.

appeal has long since expired. *See* IL R S CT Rule 606(b) (convicted individual has 30 days after sentence to file notice of appeal). In order for Mejia to file a federal habeas post-conviction motion for relief, she would first have to show that she exhausted her state remedies. *See* 28 U.S.C. § 2254(b)(1)(A). Moreover, her procedural default is a defense to federal habeas corpus review. *See Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Oaks v. Pfister*, 863 F.3d 723, 726 (7th Cir. 2017). The time for Mejia to file a post-conviction remedy per Illinois' post-conviction statute has passed as well. 725 ILCS 5/122–1(c) ("If a defendant does not file a direct appeal, the post-conviction petition shall be filed no later than 3 years from the date of conviction, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence."). Accordingly, the Court does not see a viable path to post-conviction relief at this point.

In conclusion, Mejia's judgment, which has gone unchallenged for nearly twenty years, is final. Without an appeal or plausible route for post-conviction relief, there can be no adverse consequences for Mejia in answering deposition questions relating to the facts underlying her convictions and related matters. As discussed above, perjury and any other new crimes that Mejia could be charged with in connection with the Soto homicides as a result of her deposition testimony would be time-barred by the applicable statutes of limitation. Accordingly, there is no basis for the Fifth Amendment to be invoked here.

The Court does not take the present action lightly. The Fifth Amendment privilege against self-incrimination is a vitally important right in the Bill of Rights, and as the Supreme Court noted, the "constitutional foundation underlying the privilege is the respect a government—state or federal—must accord to the dignity and integrity of its citizens." *Miranda v. Arizona*, 384 U.S. 436, 460 (1966). Courts do not often compel witnesses to speak when they desire to remain silent upon invoking this constitutional privilege. It is the citizen who suffers the most when forced to

speak because the peril of prosecution in our criminal justice system for that citizen becomes more feasible. At the same time, the privilege cannot be abused by citizens, and courts cannot stand by and watch a misuse of the privilege. The quest for the truth continues to remain a fundamental principle in our civil litigation system, and the invocation of a privilege limits, rightly so when justified, that inquiry. But that claim of privilege must be more than fanciful, as the Seventh Circuit has noted, *see In re Folding Carton*, 609 F.2d at 871, in order for that right to thwart further probing in discovery. In those situations, it is our civil litigation system — and ultimately society — that then suffers because the quest for the truth has been hindered. Here, the danger of incrimination and future prosecution is remote, speculative and, in summary, fanciful. It is for this reason that the Court finds in favor of the Defendants and compels Mejia to answer questions about the Soto homicide.

## II.     Mejia Did Not Waive the Fifth Amendment Right

For the sake of completeness, the Court addresses Defendants' remaining bases for its motion. Defendants argue that even if the Fifth Amendment applied to Mejia, she waived it for purposes of her deposition in this case in three ways. First, they assert that she waived her Fifth Amendment privilege when she pled guilty in 2001. Doc. [354] at 6-7. Second, they argue that she waived the Fifth Amendment when she spoke with Sidley Austin in 2014 and the Cook County State's Attorney's Office in 2018. *Id.* at 7. Third, Defendants argue that Mejia waived her Fifth Amendment privilege through the answers she provided at her October 2019 deposition in this case. *Id.* at 7-14.

### A.     Mejia's Waiver via Guilty Plea is Limited

Defendants cite various pre-*Mitchell* cases for the proposition that, "[o]nce an individual pleads guilty, she waives her Fifth Amendment privilege and can be compelled to testify about the

criminal conduct supporting the conviction." Doc. [354] at 6.  Under Defendants' view, the mere fact that Mejia pled guilty in 2001 means that she forever waived her privilege to take the Fifth, no matter the context.  The law does not support Defendants' expansive view of Fifth Amendment waiver, though, for at least three reasons.

First, the Supreme Court has rejected the idea that a guilty plea results in an extensive waiver.  In *Mitchell*, the defendant had pled guilty to drug conspiracy charges but reserved the right to contest the quantity of drugs attributable to the conspiracy at sentencing. 526 U.S. at 317. During her plea colloquy, the district judge made inquiries pursuant to Federal Rule of Criminal Procedure 11 and explained that by pleading guilty she was waiving her right to remain silent at trial. *Id.* at 317-18.  After hearing the government explain the factual basis for the charges against her, the defendant stated that she did "some of it," but reaffirmed her intention to plead guilty to all of the charges against her. *Id.* at 318.  At her sentencing, the defendant in *Mitchell* did not testify to rebut the government's evidence about the quantity of drugs. *Id.* at 319. The district judge held her silence against her and relied on the testimony of codefendants in determining the quantity of drugs. *Id.*  According to the district judge, the defendant's guilty plea meant that she had no right to remain silent with respect to the details of her crimes. *Id.*  The defendant appealed her sentence to the Third Circuit, who affirmed. *Id.* at 320.  On appeal to the Supreme Court, the government maintained that the defendant's guilty plea was a waiver of the privilege against compelled self-incrimination with respect to all of the crimes comprehended in the plea. *Id.* at 321.

The Supreme Court disagreed, holding that "[t]here is no convincing reason why the narrow inquiry at the plea colloquy should entail such an extensive waiver of the privilege." *Mitchell*, 526 U.S. at 322.  According to the *Mitchell* Court, the purpose of a plea colloquy is to "protect the defendant from an unintelligent or involuntary plea," and the colloquy should not

serve as a "prosecutorial sword" that causes the defendant to "relinquish all rights against compelled self-incrimination upon entry of a guilty plea, including the right to remain silent at sentencing." *Id.* The Supreme Court reasoned that a "defendant who pleads guilty puts nothing in dispute regarding the essentials of the offense," but "[r]ather . . . takes those matters out of dispute, often by making a joint statement with the prosecution or confirming the prosecution's version of the facts." *Id.* at 323. Under those circumstances, "there is little danger that the court will be misled by selective disclosure." *Id.* So, the justification for the rule of waiver in the testimonial context, that a witness "may not pick and choose what aspects of a particular subject to discuss without casting doubt on the trustworthiness of the statements and diminishing the integrity of the factual inquiry," did not apply. *Id.* at 322. *See United States v. Rivas-Macias*, 537 F.3d 1271, 1280 (10th Cir. 2008). In that way, a guilty plea is more akin to an offer to stipulate than a decision to take the stand. *Id.* The *Mitchell* Court further reasoned that neither Rule 11 of the Federal Rule of Criminal procedure, the rule governing pleas, nor the district court's plea colloquy contemplated broad waiver. Instead, the purpose of Rule 11 is "to inform the defendant of what she loses by foregoing the trial, not to elicit a waiver of the privilege for proceedings still to follow." 526 U.S. at 324. Thus, the Supreme Court held "[a] waiver of a right to trial with its attendant privileges is not a waiver of the privileges which exist beyond the confines of the trial." *Id.*

Although *Mitchell* was concerned with whether a guilty plea created a waiver with respect to a defendant's sentencing, and not a subsequent civil proceeding, the reasoning nevertheless applies here. Mejia pled guilty, and she provided responses in her plea colloquy in order to demonstrate that she understood that she was giving up the right to a fair trial and other accompanying constitutional guarantees. But neither her guilty plea, nor her responses put anything in dispute regarding her offenses. Nor did those actions contemplate that she would be

18

waiving her right to invoke the Fifth Amendment with respect to this subsequent civil proceeding, to which Mejia is not even a party. *See Coushatta Tribe of Louisiana v. Abramoff*, No. CIV.A. 07-1886, 2009 WL 2406303, at *6 (W.D. La. July 31, 2009), *aff'd,* No. CIV. A. 07-1886, 2009 WL 3068189 (W.D. La. Sept. 21, 2009) (guilty plea in witness's criminal proceeding was not sufficient to constitute waiver of Fifth Amendment in subsequent civil lawsuit); *Fonseca*, 36 Cal. App. 4th at 637 (defendant who pleads guilty waives the privilege as to that proceeding but does not waive the privilege as to subsequent proceedings against other defendants). *But see Alridge Elec., Inc. v. Fid. & Deposit Co. of Maryland*, No. 04 C 4021, 2006 WL 2536687, at *4–5 (N.D. Ill. Aug. 31, 2006) (compelling witness to testify in civil proceeding, finding that witness waived Fifth Amendment privilege through prior sworn statement provided in connection with witness's plea agreement). If a guilty plea cannot result in a waiver in the same criminal case at sentencing, it should not operate as a waiver in a civil rights litigation brought by her former co-defendants nearly twenty years later.

Second, in the context of a guilty plea, the better question to ask is not whether there is a waiver, but whether the conviction is final. In the above-discussed cases regarding the effect of an appeal or postconviction motion on a defendant's right to invoke the Fifth Amendment, the courts do not distinguish between guilty plea and jury trial cases. In other words, the courts focus on the finality of conviction and hold that a defendant appealing her conviction retains her Fifth Amendment privilege, regardless of whether the conviction came about through a jury trial or by guilty plea. *See, e.g.*, *Hollinger*, 2008 WL 161683, at *2-*3. While *Hollinger* and most of the above-discussed cases dealt with jury trial convictions, in *People v. Fonseca*, the court held that a defense witness who previously had pled guilty to a cocaine offense in another proceeding retained his Fifth Amendment because the time remained for the witness to file timely notice of appeal. 36

Cal. App. 4th at 637.  This is the correct approach because if a guilty plea automatically resulted in a waiver for all future proceedings, it would essentially nullify the rule that a defendant retains the Fifth Amendment right until a conviction is final.  Once again, a guilty plea is different from testimony – a conviction resulting from a guilty plea can be appealed, albeit on limited grounds, and thus that guilty plea can be vacated, unlike testimony.  Accordingly, the correct lens to view the Fifth Amendment issue in the context of a guilty plea is to ask whether the conviction is final.

Third, as will be discussed in further detail below in connection with Mejia's statements to Sidley Austin and the CCSAO, waiver is limited to the proceeding in which the testimony is made. So, to the extent that Defendants are arguing that her statements made at the plea colloquy or in connection with a plea agreement constituted testimonial waiver, that waiver would not extend to this subsequent civil proceeding.  For example, in *Flynn v. City of Las Cruces, New Mexico*, a civil rights litigation, plaintiffs argued that a defendant officer waived his Fifth Amendment right by previously testifying at his criminal trial. *Flynn v. City of Las Cruces, New Mexico*, No. CV 15-00195 KG/WPL, 2016 WL 9776576, at *1 (D.N.M. Oct. 6, 2016).  The *Flynn* Court rejected that position, and citing *Mitchell* and numerous federal court of appeals' decisions, held that the defendant officer's testimony at his criminal trial did not waive his right to claim the Fifth Amendment privilege in the subsequent civil lawsuit. *Id.*  Like the once-defendant later turned-witness in *Flynn*, any testimony provided in connection or as part of Mejia's guilty plea would not constitute a waiver for this later civil proceeding.

Because there is no risk of prosecution to Mejia, as discussed in the first section of this opinion, the Fifth Amendment does not apply.  However, if it did, this Court would not find that Mejia's guilty plea resulted in a waiver that extended to this proceeding.

**B.      Testimonial Waiver Limited to Single Proceeding**

If the Fifth Amendment did apply to Mejia, Mejia's testimony in separate proceedings would not impact her ability to invoke the Fifth Amendment in this case.  True, a witness can waive her Fifth Amendment right through voluntary testimony. *Shakman*, 920 F. Supp. 2d at 893. However, waiver of the Fifth Amendment is limited to the "single proceeding" in which the testimony is given. *See Mitchell*, 526 U.S. at 321-22 (citation omitted) ("It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details.").  That is, "[a] person who waives the privilege in one proceeding [] does not thereby waive it in another proceeding." *Shakman*, 920 F. Supp. 2d at 893 (citations omitted).  This is true, "even if the second case is related to the first." *Chagolla v. City of Chicago*, 529 F. Supp. 2d 941, 947 (N.D. Ill. 2008).  There are at least two reasons underpinning the "single proceeding" rule.  First, "during the period between successive proceedings conditions may change, thereby creating new grounds for apprehension." *In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d 58, 66 (D.D.C. 2000) (citations omitted).  Second, "the witness may be subject to different interrogation for different purposes at subsequent proceedings." *Id. See also State v. Whiting*, 136 Wis. 2d 400, 414-15, 402 N.W.2d 723, 729 (Ct. App. 1987) (citations omitted).

Defendants argue that Mejia waived the Fifth Amendment privilege by speaking voluntarily about her crimes with Sidley Austin and the CCSAO.  On October 9, 2014, attorneys from Sidley Austin interviewed Mejia as part of the law firm's investigation into allegations of police abuse against Defendant Guevara. Doc. [354-1] at 61.  On September 26, 2018, CCSAO prosecutor Yulia Nikolaevskaya met with Mejia to facilitate the state's opposition to Plaintiffs' petitions for certificates of innocence. *Id.* at 68-69.  To the extent that Mejia's statements in either

of those interviews constituted testimony, that testimony was not part of this civil rights case but separate proceedings. Mejia therefore did not waive the Fifth Amendment privilege for purposes of this case through her interviews with Sidley Austin in 2014 or the CCSAO in 2018.

### C. Mejia's October 2019 Deposition Testimony Did Not Open Door to Details of the Soto Homicides

Finally, Defendants claim that Mejia waived her Fifth Amendment privilege through the answers she provided at her deposition in October 2019 for this case. Generally, "[t]he privilege is waived for the matters to which the witness testifies, and the scope of the waiver is determined by the scope of relevant cross-examination." *Mitchell*, 526 U.S. at 321 (internal quotation marks and citations omitted). In the Seventh Circuit, cross-examination is limited to topics "reasonably related to the subject matter of direct examination." *United States v. Bfozovich*, 782 F.3d 814, 816 (7th Cir. 2015) (citation omitted). The Seventh Circuit has accordingly allowed defendants who take the stand to be cross-examined on matters "reasonably related" to the subject matters of their direct examinations. *See, e.g.*, *United States v. Ely*, 910 F.2d 455, 458 (7th Cir. 1990) (citations omitted).

For instance in *United States v. Harbour*, the defendant argued that the district court had abused its discretion when it allowed the government to cross-examine him about events that took place on January 26, 1985, a date that the defendant had not testified about. *United States v. Harbour*, 809 F.2d 384, 388 (7th Cir. 1987). The Seventh Circuit rejected defendant's argument and found that the permitted cross-examination was proper because it was "reasonably related" to the defendant's direct examination. *Id.* at 389. The *Harbour* Court reasoned that because the defendant testified on direct that he had never sold commodities, he opened the door to questions regarding the sale of commodities: "Since Harbour himself, through his own attorney, chose to place the issue in dispute on direct with an outright denial of having ever sold commodities, the

trial court properly allowed the government to cross-examine him regarding the events of the day in question as well as any conduct related to the sale of commodities." *Id.* The scope of Mejia's waiver from her deposition in this case should be limited to topics which are "reasonably related" to her voluntary testimony.

From the Court's review of Mejia's excerpted deposition transcript, Mejia refused to answer nearly all of the lawyers' questions on October 22, 2019. The testimony that she did voluntarily provide was largely limited to two subject matters: (1) Mejia's handwriting (or lack thereof) on exhibits; and (2) the circumstances surrounding the confession she gave to Defendant Guevara at the time of her arrest. At various times throughout her deposition, the lawyers showed Mejia exhibits. *See, e.g.*, Doc. [354-1] at 78, 90-94, 165. Generally, Mejia responded to questions about whether she was familiar with a document or whether a signature on a document was hers. *Id.* Mejia also answered questions about Defendant Guevara's conduct in obtaining her confession. *See, e.g., id.* at 87-88. Specifically, Mejia testified that Guevara had her sign blank sheets of paper and mistreated her in many ways, including hitting her and calling her a "stupid Mexican." *Id.* at 88, 167. Mejia further testified that she did not know Norma Salazar, that she spoke to a fellow inmate about Detective Guevara, and that she is trying to file something with the courts to get out of prison. *Id.* at 79, 87, 180. Mejia otherwise refused to answer questions concerning any other topics. Most importantly, Mejia took care to only answer questions regarding the nature and circumstances of her confession and refused to answer the numerous questions she was asked regarding the underlying crimes. *See, e.g., id.* at 99, 128, 138.

Defendants insist that because Mejia offered "self-serving testimony" regarding her confession, she "waived any right to avoid answering any and all questions about her confession and the underlying crimes[.]" Doc. [354] at 11. But waiver is not to be lightly inferred and this

Court must indulge "every reasonable presumption" against wavier of fundamental constitutional rights. *Fed. Deposit Ins. Corp. v. Mahajan*, No. 11 CV 7590, 2014 WL 3359333, at *3 (N.D. Ill. July 9, 2014) (internal quotation marks and citations omitted). Here, Mejia's testimony was carefully limited to the facts and circumstances surrounding the obtaining of her confession, and her identification of handwriting on certain exhibits. Mejia, unlike the defendant in *Harbour*, did not deny committing acts in connection with the crimes she was charged with, nor did she answer any questions about the commission of the Soto homicides at all. The closest Mejia came to addressing her guilt or innocence at all occurred when Mejia was asked whether she blamed Defendant Guevara for the fact that she is in prison for the rest of her life, to which she initially responded yes. Doc. [354-1] at 88. However, when pressed, she invoked the Fifth Amendment and refused to elaborate on her comment. *Id.* Thus, Mejia did not voluntarily put her involvement in the Soto homicides at issue, and her testimony regarding the taking of her confession is not "reasonably related" to the underlying crimes such that she waived any Fifth Amendment right with respect to testifying about the underlying crimes.

The Defendants also assert, without much elaboration, that Mejia's voluntary testimony regarding the taking of her confession meant that she waived the Fifth Amendment with respect to her credibility and motives generally. The Court is aware of at least a couple of cases from other circuits that espouse such a broad view of Fifth Amendment waiver. *See United States v. Musk*, 719 F.3d 962, 966 (8th Cir. 2013); *United States v. Tebrugge*, 134 F. App'x 291, 297-98 (11th Cir. 2005). However, the Court is not aware of any such supporting case law in this Circuit. Defendants cite *Neely v. Israel*, 715 F.2d 1261 (7th Cir. 1983), but that case simply reiterates the general rule that a defendant who testifies cannot plead the Fifth to avoid cross-examination on topics that the defendant has chosen to put into dispute through direct testimony. *Id.* at 1263-64.

In *Neely*, the defendant was charged with first-degree murder for the gang-related killing of an individual who had robbed a fellow gang member. *Id.* at 1262-63. On direct examination, the defendant described himself as working independently from the gang. *Id.* at 1264. The Seventh Circuit therefore held that the defendant's testimony placed in issue his relationship with the gang, which opened the door to the reasonably-related questions about the defendant's involvement in gang activity that took place days before the murder. *Id.* at 1265 The Seventh Circuit in *Neely* did not hold that because the defendant testified on direct examination, his Fifth Amendment right was waived with respect to any questions relating to credibility. *Neely* is further distinguishable from this case, as Mejia did not deny knowing Plaintiffs,[4] deny her commission of the underlying crimes, or deny that Plaintiffs committed the homicides with her. Mejia simply refused to testify about that.[5] Defendants also do not explain how their plan to attack her credibility would require testimony about the underlying crimes. If a simple assertion about "credibility" were enough, then any testimony on a particular subject could effectively constitute a waiver of the entire privilege simply because the questioning attorney claimed something in the other subject matters can be used to attack credibility. Mejia testified about the circumstances of her confession, and her credibility can still be attacked as to that portion of the testimony, but that does not mean she

---

[4] Although Mejia did not offer testimony about Plaintiffs at all, she did testify that she did not know a woman by the name of Norma Salazar. Doc. [354-1] at 79. While that admission would not constitute a total waiver of the Fifth Amendment privilege (if it applied in this case), questions "reasonably related" to her knowledge of Norma Salazar would be permissible.

[5] Defendants contend that Mejia's authentication of letters "demonstrating remorse for her crimes . . . opened the door to their content." Doc. [354] at 14. However, Defendants do not develop that argument, append the letters, explain what the letters are, or articulate how the letters show Mejia's remorse. Was authentication of the letters in dispute? If it was, was her authentication in this deposition somehow reasonably related to who committed the crimes? The Court does not know the answer to these questions. As a result, the Court is unable to assess Defendants' argument. Furthermore, the care with which Mejia exercised to testify only about the circumstances of her confession and not the underlying crimes further cuts against the concept of waiver here.

waived her Fifth Amendment rights as to all subject matters. Accordingly, Defendants' alternative basis to compel Mejia's testimony must be rejected.

## Conclusion

For the reasons discussed above, the Court grants Defendants' Motion to Compel Witness Adriana Mejia to Testify [*DeLeon-Reyes* 354; *Solache* 246] because the Court finds that the Fifth Amendment no longer applies to her testimony about the underlying crimes. Adriana Mejia is hereby ordered to answer questions and testify about the crimes she was convicted of nearly twenty years ago.

**SO ORDERED.**

Dated: September 29, 2020

Sunil R. Harjani
United States Magistrate Judge