IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARTURO REYES/GABRIEL SOLACHE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-1028/18-cv-2312 |
| | ) | |
| v. | ) | Hon. Judge Steven C. Seeger |
| | ) | |
| REYNALDO GUEVARA, et al. | ) | Maj. Judge Sunil R. Harjani |
| | ) | |
| Defendants. | ) | |

**RESPONDENT'S MOTION TO QUASH SUBPOENA
FOR THE DEPOSITION OF ERIC SUSSMAN**

Third Party Respondent Cook County State's Attorney's Office ("CCSAO"), by its attorney, Kimberly M. Foxx, State's Attorney of Cook County, through her Assistant State's Attorney, Patrick D. Morris, pursuant to Fed. R. Civ. P. 26 and Fed. R. Civ. P. 45, bring this motion to quash the subpoena for Eric Sussman's deposition in the above-referenced case. In support, the Respondent states as follows:

**I.  Relevant Procedural History**

The CCSAO is not a party to this litigation, but seeks to move to quash a subpoena to testify issued to former First Assistant State's Attorney Eric Sussman. The CCSAO's motion in this case is one of several the Office has had to file in the past year due to repeated efforts by defense counsel to pierce the veil of the Office's deliberative process privilege, in some cases in direct defiance of clear, express rulings by the court. The undersigned has reached out to defense counsel regarding the testimony they seek to elicit from Sussman, which revealed their intentions to once again question Sussman on matters that are protected by privileges held by the CCSAO. Accordingly, this motion to quash is necessary for the CCSAO to protect its interests, pursuant to well-established law.

1

Plaintiffs' claims in this case are based on their alleged wrongful prosecutions and claims of police and prosecutor misconduct. Specifically, in 1998, Plaintiff Arturo DeLeon Reyes and Gabriel Solache were convicted of the 1998 double murder of Mariano and Jacinta Soto, and the abduction of their infant daughter and 3-year old son. [See 18-1028, ECF No.396, 18-2312, ECF No. 224]. On December 21, 2017, Cook County Circuit Court Judge James Obbish overturned their convictions and ordered them to be released from prison, and the Cook County State's Attorney ("CCSAO") subsequently decided not to retry the case and dismissed all charges against both Plaintiff Solache and Plaintiff Reyes. [18-2312, ECF No.224, ¶2; 18-1028, ECF No.396, ¶95]. The Plaintiffs' convictions were overturned following post-conviction proceedings in which the Court determined that Defendant Officer Guevara, who invoked his Fifth Amendment right not to incriminate himself, was not a credible witness. [*Id.*] The Plaintiffs also produced DNA and other physical evidence that was allegedly exculpatory of their involvement in the crimes. [*Id.* at ECF No. 96, ¶86; ECF No. 224, ¶31, 50].

Plaintiffs have now filed eleven and nine-count complaints, respectively, against the City of Chicago and numerous former Chicago Police Department ("CPD") officers and their estates (collectively, "CPD Defendants"), and against former CCSAO Assistant State's Attorneys ("ASA") Karin Wehrle, David Navarro, Heather Brualdi, Andrew Varga, and Thomas O'Malley,[1] alleging various state and federal claims related to Plaintiffs' underlying criminal cases. [*Id.*] Counsel for the CPD Defendants have issued, and the CCSAO has accepted service of, a subpoena for the deposition of former Assistant State's Attorney Eric Sussman. [See Sussman Subpoena, attached hereto as **Exhibit A**]. Based on conversations and e-mails between the CCSAO and counsel for the CPD Defendants, the CCSAO anticipates that the CPD Defendants intend to depose

---

[1] Only Plaintiff Reyes, and not Plaintiff Solache, has named the ASA Defendants in his Complaint.

Mr. Sussman regarding the factors taken into account, deliberations, and reasoning behind the CCSAO's decision to voluntarily dismiss charges against Plaintiffs, and any information Sussman may possess regarding the CCSAO's decision-making with respect to the Plaintiffs' petitions for certificates of innocence ("COI"). The nature of this testimony that CPD Defendants intend to elicit from Sussman is protected by the deliberative process privilege, and the mental impressions-work product privilege doctrines.

In discussions with the CPD Defendants, they have claimed that Sussman has waived his privilege by making statements to the press. However, they have failed to identify any statements or comments that constitute a waiver of the deliberative process privilege with respect to the above-referenced topics. Moreover, attorneys for the CPD Defendants have now sought to elicit privileged testimony from Sussman and other former high-ranking ASAs in numerous cases involving similar claims, including former First Assistant Joe Magats and Mark Rotert, in his capacity as supervisor for the Conviction Integrity Unit, despite findings by the Court that they are not entitled to[2] this information. The CPD Defendants have solicited testimony involving privileged matters in some of these cases, even after the Court clearly and expressly ordered them not to do so.[3]

Thus, this motion is brought in order to quash Plaintiffs' subpoena for Sussman to testify in this case, and in furtherance of the CCSAO's interest in protecting valuable privileges that are

---

[2] *See Fulton v. City of Chicago*, et al., 17-cv-8696; *Coleman v. City of Chicago*, et al., 18 C 998; *Almodovar v. City of Chicago*, et al., 18 C 2341; *Negron.v. City of Chicago*, et al., 18 C 2701; *Brown v. City of Chicago*, 18-cv-07064.

[3] For instance, in the *Fulton v. City of Chicago* matter, this Court significantly limited the types of questions the CPD Defendants could ask Mr. Sussman during his deposition. Despite the clear instruction, the parties in *Fulton* disregarded the Court's instructions consistently throughout the deposition, and Mr. Sussman had to be instructed not to answer a number of questions (in whole or in part). *See* March 25, 2021 Deposition of Eric Sussman, pp. 25, 60-61, 72, 76, 85, 88, 93, 110, 113-114, 121-122, 136, 211, 229-231, 249-250, 263, 272-273, 283-286, 289, 291-293, 297, 299,and 302. This deposition was marked CONFIDENTIAL. The CCSAO will provide a copy to the Court upon request.

3

necessary for the CCSAO to make quality, measured decisions without the threat of harassing litigation.

## II. Argument

The Respondents move to quash the subpoena because: 1) Sussman was a former high-ranking public official who will be unable to provide any relevant non-privileged evidence; 2) the communications sought are protected by the deliberative process privilege; and 3) any mental impressions related to the privileged communications are likewise protected by the mental process privilege and work-product doctrine.

1. <u>Sussman Cannot Provide any Relevant Non-Privileged Testimony.</u>

High-ranking governmental officials should not be subject to giving depositions unless the testimony sought will lead to admissible evidence relevant to the disposition of the case. *See, e.g., Stagman v. Ryan*, 176 F.3d 986, 994-95 (7th Cir. 1999), cert. denied, 528 U.S. 986 (1999) (holding that plaintiff was not entitled to depose the Illinois Attorney General regarding his employment discrimination claim) (*Gauthier v. Union Pac. R.R. Co*., 2008 U.S. Dist. LEXIS 47199, at *15 (E.D. Tex. June 18, 2008) (applying to both current and former high-level officials)). *See also Lee v. City of Chicago*, 20 C 1508, Docket No. 57 (Tharp, J.)("[t]he apex doctrine is no less applicable to former officials than it is to current officials.")

At the time Plaintiffs' convictions were overturned by the Circuit Court in December of 2017, Mr. Sussman was the First Assistant State's Attorney, overseeing the seven bureaus of the CCSAO. Whatever non-privileged information Mr. Sussman could provide is available from other sources, namely, the Assistant State's Attorney assigned to the case at the time, or a 30(b)(6) deposition. The CPD Defendants are well aware of this. In fact, identical attempts in similar cases by other CPD defendants and the City of Chicago to depose First Assistant's about similar subject

4

matter have been denied in the past. *See, e.g.*, 10/17/19 Order, *Gray v. City of Chicago*, 18-cv-2624, N.D. Ill. Apr. 11, 2018, ECF No. 184 (quashing subpoena for Mr. Magats seeking his testimony regarding the CCSAO's decisions related to plaintiff's post-conviction litigation), and specifically by this Court. *See* 12/4/20 Order, *Fulton, Coleman v. Foley, City of Chicago*, et al., 17-cv-8696/18-cv-998 (N.D. Ill.) (denying motion to quash but prohibiting defendants from eliciting any testimony from Sussman protected by deliberate process privilege and work product doctrine that had not been waived) (citing Judge Pallmeyer's 7/28/20 Order, *Brown v. City of Chicago*, et al., 18-cv-7064 (N.D.Ill.)).

Further, to the extent the CPD Defendants intend to depose Mr. Sussman regarding his personal opinions vis-à-vis the underlying facts, or use him to challenge the decisions made by the CCSAO, this line of questioning would be wholly inappropriate and irrelevant to any claim or defense in this case. Mr. Sussman is not an "expert witness," and elicited opinions regarding the merits of the instant litigation, including whether or not the Plaintiffs or Defendants engaged in wrongdoing, would invade the province of the jury.

In a good faith attempt to resolve this matter, CCSAO inquired whether the CPD Defendants would accept a Federal Rule of Civil Procedure 30(b)(6) witness to testify regarding non-privileged issues pertaining to Plaintiffs' underlying criminal proceedings. The CPD Defendants rejected this offer and made no counterproposal.

As such, Mr. Sussman has no recourse other than to move to quash the subpoena. As discussed further below, the majority of information Mr. Sussman could provide would be the logic and reasoning behind the CCSAO's decisions not to retry Plaintiffs after their convictions were vacated and/or the CCSAO's position with respect to the Plaintiffs' Certificates of Innocence.

There is no valid basis to depose Mr. Sussman at this time. As such, the subpoena for his deposition should be quashed.

2. <u>The Information Sought is protected by the Deliberative Process Privilege.</u>

"The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency." *U.S. v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) (citing *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-51 (1975)). The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9, 121 S. Ct. 1060, 149 L. Ed. 2d 87 (2001) (internal quotations omitted). To this end, the privilege shields "communications that are part of the decision-making process of a governmental agency." *Farley*, 11 F.3d at 1389. Privileged communications include not only conversations, but "documents reflecting advisory opinions, recommendations, and deliberations comprising part of the process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Assoc.*, 532 U.S. 1, 9 (2001) (citing *Sears, Roebuck & Co.*, 421 U.S. at 150). Although the deliberative process privilege does not justify the withholding of purely factual material, it does prohibit the disclosure of "factual matters inextricably intertwined with such discussions." *Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 374-75 (7th Cir. 2004).

A two-step process exists for determining whether the deliberative process privilege applies. First, the government must show that the privilege applies to the information sought. *Ferrell v. United States HUD*, 177 F.R.D. 425, 428 (N.D. Ill. 1998). For the government to satisfy

its prima facie threshold, three things must occur: (1) the department head with control over the matter at issue must, after personal consideration of the issue, make a formal claim of privilege; (2) the designated official must articulate, typically by affidavit, their reasons for preserving the confidentiality of the information sought; and (3) the official must specifically identify and describe the documents or information sought. *Id.*; *see also Evans v. City of Chicago*, 231 F.R.D. 302, 316 (N.D. Ill. 2005). If the government makes out a prima facie case that the privilege applies, the burden then shifts to the party seeking disclosure to establish: (1) "a particularized need" for the information sought; and (2) that the party's need for the document outweighs the government's interest in confidentiality. *Farley*, 11 F.3d at 1389; Ferrell 177 F.R.D. at 428. In undertaking such an analysis, a court must balance the requestor's need for disclosure against the government's need for secrecy, considering such factors as: (1) the relevance of the documents to the litigation; (2) the availability of other evidence that would serve the same purpose as the documents sought; (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues involved in it; and (5) the degree to which disclosure of the documents sought would tend to chill future deliberations within government agencies, that it would hinder frank and independent discussion about governmental policies and decisions. *Ferrell*, 177 F.R.D. at 429; *see also Saunders v. City of Chicago*, 12 C 958, 2015 U.S. Dist. LEXIS 105571, at * 31-32 (N.D. Ill. Aug. 12, 2015).

   The information sought from Mr. Sussman is unquestionably protected by the deliberative process privilege and has been previously held so by Courts in the Northern District. (*See* Affidavit of Jessica Scheller, attached hereto as **Exhibit B**). For instance, in *Saunders*, the plaintiff brought a motion to compel a high-ranking ASA to answer deposition questions about the content of the CCSAO's deliberations regarding the dismissals of charges and its decisions regarding plaintiff's petition for a COI. *Saunders*, U.S. Dist. LEXIS 105571, at * 58- 63. The plaintiff also sought to

7

compel the ASA to answer questions regarding his personal beliefs about the plaintiff's guilt or innocence, the weight and significance of various evidence, and the relevance of newly discovered evidence. *Id*. at 63-67. The court, in holding that the deliberative process privilege was applicable to these inquiries, further held that, upon balancing the interests, the plaintiff had not overcome his burden to establish a particularized need that outweighed the government's interests. *Id*. at 76. Although the court conducted a full analysis, of particular significance to the court's holding was the policy underlying the privilege itself – the need to protect the quality of agency decisions by protecting open and frank discussions among its members. *Id*. at 76 ("Allowing Plaintiffs to have access to such evidence would set a precedent for others similarly situated to seek discovery of the [CCSAO's] confidential information and allow them to have full access to closed session discussions as fodder for potential [civil rights] claims. This, in turn, would have a negative impact on the quality of prosecutorial decisions made by the State's Attorney and his or her staff.") (internal citations or quotation omitted). Ultimately upholding the CCSAO's objections, the court denied the portion of the plaintiff's motion seeking to compel the ASA to answer the questions posed. *Id*.

As *Saunders* establishes, the CCSAO's deliberations regarding its decisions to seek to vacate a conviction or to dismiss charges. *See also Hill v. City of Chicago*, 13 C 4847, 2015 U.S. Dist. LEXIS 190661, at * 10-11 (N. D. Ill. May 28, 2015) (holding that the deliberations underlying a decision to bring criminal charges are privileged). Yet, the CPD Defendants will be seeking the exact same information—despite analogous precedent forbidding such disclosures. Because the information sought is protected by the deliberative process privilege, and because the CPD

8

Defendants will not be able to overcome their burden to establish a particularized need, this Court should quash the subpoenas directed to Mr. Sussman.[4]

   3. The Mental Impressions related to the Privileged Communications are Privileged.

It is clear from the *Saunders* opinion that, not only are the actual communications privileged, but so too are the internal thoughts and mental processes attendant to the deliberations. As the Saunders court noted, inquiries into personal beliefs cannot be separated from the actual deliberations, as the beliefs and opinions formed are necessarily shaped by the protected deliberations. *Saunders*, U.S. Dist. LEXIS 105571, at * 63-67 ("This Court finds that the privilege was properly invoked by Valentini in response to these irregular deposition questions. It is likely that during the SAO's deliberations about the prosecutorial decisions, they discussed the weight of the evidence and whether it was sufficient for a jury to convict, as well as the other questions posed to Valentini. Since Valentini was present for the deliberations, it is understandable that providing answers to the questions would reveal analysis, arguments, and discussion from the deliberations."). While the *Saunders* court did not invoke the actual term, the mental process and internal deliberation are likewise protected by the "mental processes privilege." *See Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*, 40 F.R.D. 318, 326-26 (D.D.C. 1996) (holding that the mental processes privilege is "inextricably intertwined" with the deliberative process privilege and precludes "prob[ing] the mental process" of government officials); *see also Mendez v. City of Chicago*, 18 CV 5560, 2020 U.S. Dist. LEXIS 47530, at * 4 (N.D. Ill. Mar. 19, 2020) (quashing subpoena pursuant to the mental processes privilege seeking deposition of sitting judge regarding the reasoning for his decision). Because the mental processes privilege analysis is the same as the

---

[4] Should the CPD Defendants articulate a reason for Sussman's deposition that would not intrude upon a privilege, the Respondents would respectfully request that this Court enter a protective appropriately limiting the topics/questions.

9

deliberative process privilege, *see United States v. Lake Cty. Bd. of Comm'rs*, 233 F.R.D. 523, 527 (N.D. Ind. 2005), the CPD Defendants are likewise prohibited from inquiring into the mental impressions of Mr. Sussman.

While the mental processes privilege is confined to pre-decisional deliberation, the common law work-product doctrine, a more expansive doctrine than the mental processes privilege, likewise prohibits inquiries into the deponents' mental processes. As the Supreme Court has long held, the mental impressions and "intangible" work product of attorneys are "inviolate." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). As such, the intangible work product that Mr. Sussman developed during his deliberations regarding Plaintiffs' post-conviction litigation and/or the COI process is privileged and protected.

### III. Conclusion

For the reasons set forth herein, and in the underlying brief, the Motion to Quash should be granted.

Date: June 16, 2021

Respectfully submitted,

KIMBERLY M. FOXX

*Patrick D. Morris*
Assistant State's Attorney
Conflicts Counsel Unit
50 West Washington, Suite 2760
Chicago, IL 60602
O: 312-603-1426
C: 708-642-0616

*On behalf of the Respondent Cook County State's Attorney's Office*