**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | |
| Plaintiff, | ) | 1:18 Civ. 1028 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | District Judge |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | Magistrate Sunil R. Harjani |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| GABRIEL SOLACHE, | ) | |
| | ) | |
| Plaintiff, | ) | 1:18 Civ. 2312 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | District Judge |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | Magistrate Sunil R. Harjani |
| Defendants. | ) | |
| | ) | |

**DEFENDANT CITY'S RESPONSE TO PLAINTIFFS'
LOCAL RULE 56.1 STATEMENT OF FACTS IN SUPPORT OF THEIR MOTION FOR
PARTIAL SUMMARY JUDGMENT AGAINST THE CITY OF CHICAGO**

Plaintiffs filed a Motion for Partial Summary Judgment against the City of Chicago (Dkt. 687) and a Local Rule 56.1 Statement of Facts in Support. (Dkt. 685). Defendant City of Chicago, by its undersigned attorneys, hereby responds to Plaintiffs' Local Rule 56.1 Statement of Facts in Support of Their Partial Motion for Summary Judgment, and states as follows.

## *MONELL* THEORIES

1.      One of Plaintiffs' Monell theories in this case is that before, during, and after the events in this case, Defendant City of Chicago had an express policy of withholding or failing to disclose exculpatory or impeachment evidence. They contend that, during the investigation of the Soto homicides and kidnappings, Defendants (among other things) suppressed evidence, including by refusing to document investigative steps and by withholding information that would have shown that Plaintiffs were innocent and that could have been used to undermine the testimony of the State's witnesses. That suppression included the non-disclosure to prosecutors or criminal defendants of mugshots of four individuals taken by the detectives at Area 5, the suppression of other exculpatory witness information known to detectives but not disclosed to prosecutors or the criminal defendants, the suppression of notes of interviews and identification procedures conducted by Defendants, including notes of interviews with Plaintiffs, the suppression and destruction of original crime scene photos, the non-documentation of physical evidence recovered from the crime scene, the non-documentation of the CPD's coordination with the FBI on investigative leads, the non-disclosure of alternative suspects and alternative theories of how the crimes occurred, and the non-documentation of tampering that occurred at the crime scene, including notes of interviews with Plaintiffs and Adriana and Rosauro Mejia. Plaintiffs contend that the suppression and concealment of exculpatory evidence in his criminal case was done pursuant to the City's official policy of suppressing investigative information in homicide investigations. In support of this claim, Plaintiffs rely on substantial evidence, including the City's past litigation concerning this issue, written policies, testimony of the City's Rule 30(b)(6) designees, the homicide file in his case, the hundreds of additional Area 5 homicide files produced in this case and in earlier litigation; the corresponding

Cook County Public Defender and Cook County State's Attorney's Office files in this case and in previous litigation; the City's documentation, notetaking and file keeping policies, and lack thereof; and the qualitative and quantitative findings in Plaintiffs' experts. Ex. 1 (Plaintiffs' Resp. to Def. City of Chicago's First Set of Interrog. to Plaintiff, Nos. 1, 2, 4, 10, 12) at 2, 6-10, 14-15, 18-24; Dkt. 396 (Second Amend. Compl.) at ¶¶ 8, 74-80, 136, 151-158.

**RESPONSE**: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) by including multiple allegations and to the extent it is argumentative. *See Malec v. Sanford*, 191 F.R.D. 581, 583. ("[T]he numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response"). Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because Plaintiffs' contentions regarding the specific evidence they allege Defendants suppressed is not supported by the record in that it fails to cite to *any* "specific evidentiary material." *See Malec,* 191 F.R.D. at 583.

Subject to and without waiving these objections, Defendant City denies that:

> "Defendants (among other things) suppressed evidence, including by refusing to document investigative steps and by withholding information that would have shown that Plaintiffs were innocent and that could have been used to undermine the testimony of the State's witnesses. That suppression included the non-disclosure to prosecutors or criminal defendants of mugshots of four individuals taken by the detectives at Area 5, the suppression of other exculpatory witness information known to detectives but not disclosed to prosecutors or the criminal defendants, the suppression of notes of interviews and identification procedures conducted by Defendants, including notes of interviews with Plaintiffs, the suppression and destruction of original crime scene photos, the non-documentation of physical evidence recovered from the crime scene, the non-documentation of the CPD's coordination with the FBI on investigative leads, the non-disclosure of alternative suspects and alternative theories of how the crimes occurred, and the non-documentation of tampering that occurred at the crime scene, including notes of interviews with Plaintiffs and Adriana and Rosauro Mejia."

In further response, Defendant City disputes it had an express or official policy of suppressing or withholding exculpatory or impeachment evidence. *See,* City's Answer and Affirmative Defenses to Plaintiff Reyes' Second Amended Complaint, Dkt. 404 at ¶¶97-107, 116-117, 172-184. Responding further, Defendant City admits that Plaintiff Reyes made the allegations contained within this paragraph, that Plaintiffs' Supplemental Responses to Defendant City of Chicago's First Set of Interrogatories to Plaintiff repeats those claims, but without any evidentiary support (*see e.g.* Dkt. 685-2, Ex. 1 at Nos. 1, 2, 4, 10, 12) and that his expert makes "findings" in his report, which are contradicted by his deposition testimony (*See,* Defendant

**City of Chicago's *Daubert* Motion to Bar Opinions of Thomas J. Tiderington, at Dkt. 729 and Defendant's Statement of Fact Material Facts in Support of its Motion for Summary Judgment, at Dkt. 730 at ¶¶39-119) but denies any such policy existed, denies that Plaintiffs have "evidence" to support this claim, and denies that the findings in Plaintiffs' expert's report substantiate the claim. Plaintiffs' expert has no idea whether any of the documents he claims were not turned over, were in fact given to the prosecutor by CPD, so his opinion that documents were systematically withheld lacks a valid basis. *See,* City's Memorandum of Law in Support of Summary Judgment, Dkt. 731 at 26-28.**

## NOTICE OF EVIDENCE SUPPRESSION

2.      In the early 1980s, City of Chicago final policymakers were made aware that police officers were engaged in an unconstitutional pattern of suppressing investigative materials through two cases: *Palmer v. City of Chicago* and *Jones v. City of Chicago*. In April 1982, Chicago officials, including Chicago Police Department Superintendent Richard Brzeczek, became aware of the circumstances of a 1981 homicide investigation that resulted in charges being brought against George Jones, and the unconstitutional street files practice that caused his wrongful prosecution. Ex. 2 (*Palmer v. City of Chicago*, 562 F. Supp. 1067, 1073 (N.D. Ill. 1983) (J. Shadur) (hereinafter "Shadur Order") (Brzeczek testified at hearing); Ex. 3 (Hickey Dep. in Rivera) at 207:15-209:8, 83:21-24:4 (Brzeczek testified at injunction hearing); Ex. 4 (2016 Hickey Fields Trial Testimony) at 12:3-7 ("It is true that the City got put on notice that there was a problem with the way it was handling the topics I mentioned a minute ago, correct? A. Correct."); 19:13-22.

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record and is argumentative ("final policymakers," "unconstitutional pattern of suppressing investigative materials," "unconstitutional street files practice," "wrongful prosecution"). *See Malec*, 191 F.R.D. at 583. To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore this paragraph does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The events described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by nearly eighteen years and describe events that pre-date the issuance of S.O. 83-1 which expressly mandated that "detectives will preserve and record information and materials obtained in the course of the**

investigation to assure not only that information and materials indicating the possible guilt of the accused are preserved, but also that any materials that may tend to show his possible innocence or aid in his defense is preserved[]", as well as subsequent Special Orders and Standard Operating Procedures. *See* **City's Memorandum of Law in Support of Summary Judgment, Dkt. 731 at 14-16; City's 56.1(a)(3) SOF, Dkt. 730 at ¶¶ 15-20, 26-27. Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) by including multiple allegations.** *See Malec,* **191 F.R.D. at 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response"). Defendant City further objects to the extent that this paragraph states a legal conclusion rather than a material fact.** *See Tel-Lock, Inc. v. Thomson Consumer Electronics,* **No. 03 C 320, 2005 WL 741930, at \*2 (N.D. Ill Mar. 30, 2005). Finally, these facts are not supported by the record.** *See Malec,* **191 F.R.D. at 583. Specifically, Plaintiff improperly relies on the March 31, 1983, Memorandum Opinion and Order issued by Judge Shadur in** *Palmer v. City of Chicago,* **No. 82 C 2349 (Dkt. 685-3, Ex. 2) to establish "facts" recited in court opinions. Court opinions are hearsay.** *See Taylor v. City of Chicago,* **No. 09 C 5092, 2012 WL 669063, \*1 (N.D. Ill. Feb. 29, 2012) (Shadur, J) (A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)). Judge Shadur's order was vacated.** *See Palmer v. City of Chicago,* **562 F. Supp. 1067 (N.D. Ill. 1983)** *rev'd Palmer v. City of Chicago,* **755 F.2d 560 (7th Cir. 1985) (***Palmer I***). Ultimately, the Seventh Circuit found that the class-plaintiffs failed to prove any systematic constitutional violations as a result of the City's street file practice and overruled the District Court's holdings.** *Palmer v. City of Chicago,* **806 F.2d 1316, 1317, 1320-21 (7th Cir. 1986) (***Palmer II***) (emphasis added). Specifically, the Seventh Circuit found that the plaintiffs' claims "depends on there being exculpatory material in the street files –** *and there isn't any.* **The suit has been abandoned because it has been shown to have, in fact, no legal merit."** *Id.* **(emphasis added).**

**Subject to and without waiving these objections, this paragraph is disputed to the extent it lacks evidentiary support. Defendant City admits that Richard Brzeczek was the Superintendent for the Chicago Police Department from January 1980 – April 1983, and that he testified on or around April 20, 1982 at an injunction hearing in the** *Palmer* **litigation but denies that the cited testimony supports the assertion that 1) Brzeczek testified that he was a final policymaker for the City of Chicago, 2) he was made aware that police officers were engaged in an unconstitutional pattern of suppressing investigative materials, 3) he became aware of the circumstances of a 1981 homicide investigation that resulted in charges being brought against George Jones, and the unconstitutional evidence suppression or "street files" practice that caused his wrongful prosecution, and 4) that final policymakers for the City of Chicago were made aware of items 1), 2) and 3).**

**Responding further, Plaintiffs accurately quote James Hickey's testimony from the 2016** *Fields* **trial, but Hickey's cited testimony does not support Plaintiff's propositions that 1) Brzeczek was a final policymaker for the City of Chicago, 2) Brzeczek was made aware that police officers were engaged in an unconstitutional pattern of suppressing investigative materials, 3) Brzeczek became aware of the circumstances of a 1981 homicide investigation that resulted in charges being brought against George Jones, and the unconstitutional street files practice that caused his wrongful prosecution, and 4) that final policymakers for the City of Chicago were made aware of items 1), 2) and 3).**

**Responding further, Winstrom's cited testimony does not support Plaintiffs' propositions that 1) Brzeczek was a final policymaker for the City of Chicago, 2) Brzeczek was made aware that police officers were engaged in an unconstitutional pattern of suppressing investigative materials, 3) Brzeczek became aware of the circumstances of a 1981 homicide investigation that resulted in charges being brought against George Jones, and the unconstitutional street files practice that caused his wrongful prosecution, and 4) that final policymakers for the City of Chicago were made aware of items 1), 2) and 3).**

**In addition, the *Palmer* litigation, which Plaintiffs cite as the basis for support of this "fact" was an unsuccessful class action lawsuit against the City of Chicago challenging the "constitutionality of the Chicago Police Department's alleged practice of concealing exculpatory material collected in criminal investigations and lodged in the department's informal 'street files.'" *Palmer v. City of Chicago,* 806 F.2d 1316, 1317 (7th Cir. 1986) (*Palmer II*). Ultimately, the Seventh Circuit found that the class-plaintiffs failed to prove any systematic constitutional violations as a result of the City's street file practice and overruled the District Court's holdings. *Id.* at 1320-21.**

      3.      In *Jones*, a detective named Frank Laverty developed strong evidence that Jones could not have committed the murder. But, as stated by the Seventh Circuit, this evidence was placed "not in the police department's regular files but in its 'street files.' These were files that the police did not turn over to the state's attorney's office as they did with their regular investigative files." *Jones v. City of Chicago*, 856 F.2d 985, 995-96 (7th Cir. 1988). In the spring of 1982, Detective Laverty learned that Jones was on trial for the murder; he went to his Commander to tell him that an innocent person was being prosecuted, but his Commander took no action; and Laverty then informed Jones's criminal defense attorney about the information in the street file. The court declared a mistrial, and the State's Attorney dropped all charges against Jones. Jones then filed a civil lawsuit stemming from the withholding of important investigative information in a street file, resulting in his wrongful prosecution. His case resulted in a jury verdict finding a custom of maintaining "street files" that were withheld from the State's Attorney's Office and criminal defendants. *Jones*, 856 F.2d at 988; *see also* Ex. 3 (Hickey Dep. in *Rivera*) at 61:3-23, 63:6-9, 67:9-68:3.

**RESPONSE:** To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The events described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by nearly eighteen years and describe events that pre-date the issuance of S.O. 83-1 which expressly mandated that "detectives will preserve and record information and materials obtained in the course of the investigation to assure not only that information and materials indicating the possible guilt of the accused are preserved, but also that any materials that may tend to show his possible innocence or aid in his defense is preserved []", as well as subsequent Special Orders and Standard Operating Procedures. *See* City's Memorandum of Law in Support of Summary Judgment, Dkt. 731 at 14-16; City's 56.1(a)(3) SOF, Dkt. 730, at ¶¶ 15-20, 26-27. Defendant City also objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) by including multiple allegations and because it is argumentative. *See Malec*, 191 F.R.D. at 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response"). Defendant City further objects to the extent that this paragraph states a legal conclusion rather than a material fact. *See Tel-Lock, Inc.*, 2005 WL 741930, at *2. Finally, this fact is not supported by the record. *See Malec*, 191 F.R.D. at 583. Specifically, Plaintiffs' reliance on the Memorandum Opinion and Order issued in *Jones v. City of Chicago*, 856 F.2d 985, 995-96 (7th Cir. 1988) in support of a "fact" paragraph is improper as legal opinions are not "fact." Moreover, legal opinions and jury findings are hearsay. *See Taylor*, 2012 WL 669063, at *1 (Shadur, J) (A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)); *Franklin v. Adkins*, No. 92-1765, 1993 WL 179221, at *5 (7th Cir. May 25, 1993) (finding that a jury's verdict is a hearsay statement); *Spinnenweber v. Laducer*, No. 2:14-CV-101-JEM, 2019 2019 WL 6649847 at *1 (N.D. Ind. Dec. 5, 2019) (finding a jury verdict makes the plaintiff whole and is not to send a message to the defendants or society at large).

Subject to and without waiving these objections, the City denies that the jury verdict in *Jones* was a "finding of a custom of maintaining documents with important investigative material that were withheld from the State's Attorney's Office and criminal defendants." Rather, the Seventh Circuit noted that, "Although the lawfulness of the street-files practice has never been adjudicated, the City, which has abandoned the practice, does not challenge the jury's implicit finding that it denied criminal defendants due process of law." *Jones v. Chicago*, 856 F.2d 985, 995 (7th Cir. 1988).

4.     In 1988, in *Jones v. City of Chicago,* 856 F. 2d 985 (7th Cir. 1988), the Seventh

Circuit affirmed the jury verdict in favor of George Jones, including the finding that the City of

Chicago had maintained an unconstitutional practice of permitting detectives to keep street files

undisclosed to criminal defendants. The appellate decision that (a) the case disclosed "frightening

abuse of power by members of the Chicago police force and unlawful conduct by the City itself";

(b) Laverty was charged with a disciplinary infraction, "transferred out of the detective division, ostracized by his fellow officers, and assigned to a series of menial tasks culminating in the monitoring of police recruits giving urine samples" while "none of the defendants has been disciplined for misconduct"; (c) there was "enough evidence to enable the jury to infer that [a Chicago Police Department Commander, Lieutenant and Sergeant] had known . . . [and] had approved every false step"; and (d) there was sufficient evidence against the City that the street files practice existed, caused Jones' injuries, and was "consciously approved at the highest policy-making level." 856 F. 2d 985, at 988, 991, 993, 996.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The events described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by nearly eighteen years and describe events that pre-date the issuance of S.O. 83-1 (the Jones prosecution occurred in 1982) which expressly mandated that "detectives will preserve and record information and materials obtained in the course of the investigation to assure not only that information and materials indicating the possible guilt of the accused are preserved, but also that any materials that may tend to show his possible innocence or aid in his defense is preserved." *See* City's Memorandum of Law in Support of Summary Judgment, Dkt. 731 at 14-16; City's 56.1(a)(3) SOF, Dkt. 730 at ¶¶ 15-16. Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative and states a legal conclusion. *See Malec*, 191 F.R.D. at 583; *Tel-Lock, Inc.*, 2005 WL 741930, at *2; *Taylor*, 2012 WL 669063, at *1 (Shadur, J) (A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)). Specifically, Plaintiff improperly relies on the jury's findings and the Seventh Circuit's opinion in *Jones v. City of Chicago*, to establish "facts". Court opinions and jury findings are hearsay. *Taylor*, 2012 WL 669063, at *1; *Franklin v. Adkins*, No. 92-1765, 1993 WL 179221, at *5 (7th Cir. May 25, 1993) (finding that a jury's verdict is a hearsay statement); *Spinnenweber v. Laducer*, No. 2:14-CV-101-JEM, 2019 2019 WL 6649847 at *1 (N.D. Ind. Dec. 5, 2019) (finding a jury verdict makes the plaintiff whole and is not to send a message to the defendants or society at large).**

**Subject to and without waiving these objections, Defendant City admits in part and denies in part. The City admits that the Seventh Circuit affirmed the jury verdict in *Jones v. City of***

*Chicago,* and that the Plaintiffs have accurately included quotes from that opinion in this paragraph. The City denies that the Seventh Circuit found that "the City of Chicago had maintained an unconstitutional practice of evidence suppression, permitting detectives to keep important investigative information undisclosed to criminal defendants." Rather, the Seventh Circuit noted that, "Although the lawfulness of the street-files practice has never been adjudicated, the City, which has abandoned the practice, does not challenge the jury's implicit finding that it denied criminal defendants due process of law." *Jones,* 856 F.2d at 995. Moreover, prior to the Seventh Circuit's decision in *Jones,* the Court had found that the class-plaintiffs in *Palmer v. City of Chicago,* failed to prove any systematic constitutional violations as a result of the City's street file practice. *Palmer II,* 806 F.2d at 1317, 1320-21. Specifically, the Seventh Circuit found that the class-plaintiffs' claims "depend[] on there being exculpatory material in the street files – *and there isn't any.* The suit has been abandoned because it has been shown to have, in fact, no legal merit." *Id.* (emphasis added).

Further answering, and for clarification, unlike *Jones v. City of Chicago,* Plaintiffs have not produced evidence of any withheld file in this case.

5.      In April 1982, shortly after the Laverty revelations about street files, a class action lawsuit called *Palmer v. City of Chicago* was filed to challenge the use of street files to suppress investigative materials, and, days later, the Honorable Judge McMillen issued a temporary restraining order requiring the CPD to preserve all street files. Ex. 2 (Shadur Order) at 2. By September 1982, the action was transferred to the docket of the Honorable Milton Shadur, who thereafter granted a preliminary injunction on the matter. *Id.* at 1; Ex. 3 (Hickey Dep. in Rivera) at 69:22-70:12; 79:21-80:6.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw,* 259 F.3d at 837; *see also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The events described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by nearly eighteen years and describe events that pre-date the issuance of S.O. 83-1 which expressly mandated that "detectives will preserve and record information and materials obtained in the course of the investigation to assure not only that information and materials indicating the possible guilt of the accused are preserved, but also that any materials that may tend to show his possible innocence or aid in his defense is preserved." (*See* City's Memorandum of Law in Support of Summary Judgment, Dkt. 731 at 14-16; City's 56.1(a)(3) SOF, Dkt. 730 at ¶¶ 15-16).**

Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) by including multiple allegations and because it is argumentative. *See Malec*, 191 F.R.D. 581, 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response"). Defendant City further objects to the extent that this paragraph states a legal conclusion rather than a material fact. *See Tel-Lock, Inc.,* 2005 WL 741930, at *2. Further, this fact is not supported by the record. *See Malec*, 191 F.R.D. at 583. Specifically, Plaintiffs improperly rely on the March 31, 1983, Memorandum Opinion and Order issued by Judge Shadur in *Palmer v. City of Chicago,* No. 82 C 2349 (Dkt. 685-3, Ex. 2) to establish "facts" recited in court opinions. Court opinions are hearsay. *See Taylor,* 2012 WL 669063, at *1 (Shadur, J) (A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)). Finally, Defendant City further objects to the extent that Plaintiffs rely on depositions taken in unrelated litigation as they are not bates stamped with any of the bates stamp designations connected to this case. *See Johnson v. Obaisi*, No. 22-1620, 2023 WL 5950125, at *2, (7th Cir. Sept. 13, 2023) (Rule 56(c)(3) assigns the parties the duty to "cit[e] to particular parts of materials *in the record*" when asserting that genuine factual disputes foreclose summary judgment) (emphasis added).

Further answering, and for clarification, the *Palmer* litigation, which Plaintiff cites as the basis for support of this "fact" was a class action litigation filed under 42 U.S.C. §1983 on behalf of two subclasses of persons arrested by the Chicago Police Department and charged with felonies under Illinois law: (1) those convicted of criminal offenses and (2) those awaiting trial for certain offenses. On April 20, 1982, the Honorable Thomas McMillen issued a TRO, which provided, in part "Defendants shall preserve all police department investigative office or working files, sometimes known as 'street files,' together with all contents of such files ..." The parties agreed to continue the TRO beyond the 10-day limitation, and it remained in full force and effect while Judge Milton Shadur held hearings in October 1982 and January 1983. Judge Shadur's order was vacated. *See Palmer v. City of Chicago*, 562 F. Supp. 1067 (N.D. Ill. 1983) *rev'd Palmer v. City of Chicago*, 755 F.2d 560 (7th Cir. 1985) (*Palmer I*). Ultimately, the Seventh Circuit found that the class-plaintiffs failed to prove any systematic constitutional violations as a result of the use of "informal files" or "street files" and overruled the District Court's holdings. *Palmer II,* 806 F.2d at 1320.

6.      James Hickey authored the policies regarding the file disclosure policies for homicide investigations for the City of Chicago in 1983. Ex. 5 (Hickey Dep. in *Fields*) at 50:12-16 ("I was the primary drafter of this order [83-1] on behalf of the chief of detectives."); Ex. 3 (Hickey Dep. in *Rivera*) at 116:22-23 ("When 83-2 was generated you wrote it? A. I drafted it, yes.").

RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they granting Plaintiffs' motion for partial summary

judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The policies described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by over fifteen years.

**Subject to and without waiving these objections, admit.**

7.      Hickey was designated by the City of Chicago under Rule 30(b)(6) in subsequent litigation, including *Fields v. Chicago*, and *Rivera v. Chicago*. See Ex. 5 (Hickey Dep. in *Fields*); Ex. 3 (Hickey Dep. in *Rivera*, 5/6/14) at 47:21-48:18.

**RESPONSE: Defendant City admits that Hickey has been designated as a Rule 30(b)(6) witness in *Fields v. Chicago*, and *Rivera v. Chicago*, but clarifies that Hickey was designated to discuss certain topics as agreed upon between the parties in those cases and as outlined in the 30(b)(6) notice for each case. Specifically, in *Fields v. Chicago*, Hickey was designated to discuss certain policies and procedures that were in existence in 1984 and 1985 related to investigative files and the taking and maintaining of investigative notes. (*See,* Dkt. 511-29, Ex. 5, at 8:4-18.). In *Rivera v. City of Chicago*, he was designated to discuss the City's written and unwritten policies, practices and customs in effect from 1980-1990 related to several topics, including "the documentation and preservation of information learned during a homicide investigation." (*See,* Def's Ex. A, 30(b)(6) Notice from *Rivera v. City of Chicago*.).**

8.      In his capacity as the City's Rule 30(b)(6) witness, Hickey testified that (a) in light of *Palmer* and *Jones*, and as early as 1982, City policymakers knew they had a street file problem; (b) that he reviewed file disclosure practices across the department prior to 1983 and determined that the problem as citywide; (c) that the problem stemmed from a citywide practice of using a "decentralized" file system for homicide investigations, whereby investigative steps were being documented in informal notes and internal to-from memoranda between investigators, all of which were treated as the personal property of the investigators and were stored in parallel files; and (d) entire branches of an investigation, including investigation into alternate suspects, were not getting documented in official reports, and were instead sitting in memos and notes that were not disclosed and eventually destroyed. Ex. 5 (April 10, 2014 Hickey Testimony, *Fields v. City of Chicago*) at 2043:22-2044:11, 2044-2045:7; 2048:2- 2052:9; Ex. 3 (Hickey Dep. in *Rivera*)

at 57:17-58:13, 222:11-22, 228:9-229:3; Ex. 4 (Hickey Fields Trial Testimony 11/23/16) at 23:11-20.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The policies described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by nearly eighteen years and describe events that pre-date the issuance of S.O. 83-1 which expressly mandated that "detectives will preserve and record information and materials obtained in the course of the investigation to assure not only that information and materials indicating the possible guilt of the accused are preserved, but also that any materials that may tend to show his possible innocence or aid in his defense is preserved [ ]", as well as subsequent Special Orders and Standard Operating Procedures. *See* City's Memorandum of Law in Support of Summary Judgment, Dkt. 731 at 14-16; City's 56.1(a)(3) SOF, Dkt. 730 at ¶¶ 15-20, 26-27. Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) by including multiple allegations and because it is argumentative ("evidence suppression and non-disclosure," "resulting from"). *See Malec,* 191 F.R.D. at 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response"). Defendant further objects because this paragraph is not supported by the record. *See id*. Finally, Defendant City objects to this paragraph as it includes a legal conclusion in violation of Local Rule 56.1(d). *See Tel-Lock, Inc.,* 2005 WL 741930, at \*2 (the court struck portions of party's 56.1 that contained legal conclusions).**

**Subject to and without waiving these objections, disputed. The testimony cited does not support the assertions set forth in this paragraph. Specifically, the pages cited do not support that (1) "City policymakers knew they had a ... problem with the practice of evidence suppression and non-disclosure" (2) that the problem was "city-wide;" (3) that the "problem" resulted from using a "decentralized" file system: and (4) that "entire branches of an investigation, including investigation into alternate suspects" were "not disclosed." Hickey testified that around 1982 it was "publicly learned" that detectives considered their investigative notes in homicide cases to be their own personal property, but that was not in violation of any department policy. *See,* Dkt. 685-6, Ex. 5 at 2043:22-2044:11. Hickey further testified that any information that a Chicago Police Department member has that would be of an exculpatory nature, should be preserved. *See,* Dkt. 685-4, Ex. 3 at 65:2024. Hickey further testified that "the detective kept such time as they prepared the supplementary report, at which time they destroyed their notes." *See,* Dkt. 685-8, Ex. 7 at 94:14-20. Finally, he testified that he assisted in the drafting of Detective Division Special Order 83-1, because Superintendent Brzeczek wanted the practice of notes being destroyed to stop. *See,* Dkt. 685-6, Ex. 5 at 2044:5-23.**

9.      As a result of the developments in *Jones* and *Palmer*, Hickey conducted an internal review of Chicago Police Department practices related to street files, the results of which he shared with senior Department officials including Chief of Detectives, William Hanhardt. Ex. 3 (Hickey Dep. in Rivera) at 200-201, 223:5-225:13; Ex. 6 (2014 Hickey Fields Trial Testimony) at 2049-2051.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; *see also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The policies and actions described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by over fifteen years and describe events that pre-date the issuance of S.O. 83-1 which expressly mandated that "detectives will preserve and record information and materials obtained in the course of the investigation to assure not only that information and materials indicating the possible guilt of the accused are preserved, but also that any materials that may tend to show his possible innocence or aid in his defense is preserved [ ]" as well as subsequent Special Orders and Standard Operating Procedures. *See* City's Memorandum of Law in Support of Summary Judgment, Dkt. 731 at 14-16; City's 56.1(a)(3) SOF, Dkt. 730 at ¶¶ 15-20, 26-27. Defendant City objects because this paragraph is not supported by the records cited. *See Malec*, 191 F.R.D. at 583.**

**Subject to and without waiving these objections, the City denies in part and admits in part. Defendant City denies that the cited testimony supports that James Hickey testified that his internal review was related to practices related to "evidence suppression." Defendant City admits that the cited testimony indicates that James Hickey, at the direction of Superintendent Brzeczek, was part of a team that conducted a review of the CPD practices throughout different detective divisions and "found various practices" and that each area did things "a little differently." (Dkt. 685-7, Ex. 6 at 2049-2050). Hickey further testified S.O. 83-1 was subsequently drafted to "implement the superintendent's direction to maintain or establish institutional control over [the] investigative files[]" so that notes would be the "work product of the Chicago Police Department." (*Id.* at 2051:6-20).**

10.      Hickey found that there was a citywide practice of using a "decentralized" file system for homicide investigations, whereby investigative steps were being documented in informal notes and internal to-from memoranda between investigators, all of which were treated as the personal property of the investigators and were stored in parallel files that were not subject to

disclosure. The information in the memos and notes was not making it into official reports. In addition, official reports often were not written right away, and instead were written only once they had settled on a suspect, at which point investigators might consider alternate suspects and other evidence to be non-pertinent. As a result, entire branches of an investigation, including investigation into alternate suspects, were not getting documented in official reports, and were instead sitting in memos and notes that were not disclosed and eventually destroyed once an investigation was complete. Ex. 3 (Hickey Dep. in *Rivera*) at 58:10-13, 72:3-15, 95:14-96:20, 204:3-21, 215:10-16:15, 219:9-221:6; Ex. 6 (April 10, 2014 Hickey Testimony, *Fields v. City of Chicago*) at 2043:22-25; 2044-45, 2050:4-51:20; Ex. 7 (Hickey Dep. in *Kluppelberg* (pt. 1), at 85-89, 94:14-20 ("Q. Generally speaking, what happened to a detective's notes prior to 1983? A. The detective kept the notes until such time as they prepared the supplementary report, at which time they destroyed their notes, threw them in the garbage can or whatever, including myself.").

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The actions described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by over fifteen years and describe events that pre-date the issuance of S.O. 83-1 (Hickey was describing the practice before the issuance of S.O. 83-1) which expressly mandated that "detectives will preserve and record information and materials obtained in the course of the investigation to assure not only that information and materials indicating the possible guilt of the accused are preserved, but also that any materials that may tend to show his possible innocence or aid in his defense is preserved [ ]", as well as subsequent Special Orders and Standard Operating Procedures. *See* City's Memorandum of Law in Support of Summary Judgment, Dkt. 731 at 14-16; City's 56.1(a)(3) SOF, Dkt. 730 at ¶¶ 15-20, 26-27. Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) by including multiple allegations and because it is argumentative ("information in the memos and notes were not making it into official reports," "only once they had settled on a suspect"). *See Malec*, 191 F.R.D. at 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response"). Defendant further objects because this paragraph is not supported by the record. *See id.* Finally, Defendant City objects to this**

paragraph as it includes a legal conclusion in violation of Local Rule 56.1(d). *See also Tel- Lock, Inc.,* 2005 WL 741930, at *2 (the court struck portions of party's 56.1 that contained legal conclusions).

Subject to and without waiving these objections, Defendant City denies this paragraph accurately summarizes all of the testimony cited, or that any of the statements contained in this paragraph were "findings" made by Hickey. The cited testimony of James Hickey establishes that in 1982 "as an investigative unit, that had a decentralized structure [CPD] wanted to make sure that all detective areas were operating under the same guidelines." (Dkt. 685-4, Ex. 3, at 58:10-13). Hickey testified that he did not believe that detectives were keeping "personal files" but rather than they would use a "working file," which he clearly stated was not going home with them. (Dkt. 685-4, Ex. 3 at 73:6-20). Further, Hickey testified that "too often tracks of the investigation were not documented" stating that the "story of elimination [of a suspect] was not included in the official reports and sometimes was included in a memo." (Dkt. 685-4, Ex. 3 at 95:14-96:20). He explained that too often, in 1982, detectives were not memorializing "the first branch of the investigation." (Dkt. 685-4, Ex. 3 at 204:12-21). He gave the example that in an investigation "It turns out that the real offender was the person in the red hood and that person was identified and prosecuted. But when the – the final or any of the supplementary reports were prepared that aspect of the story was not included in the investigation. So it isn't wrong but it's – it's not a complete retelling of the investigation." (Dkt. 685-4, Ex. 3 at 204:12-21).

11.     City officials were aware of resistance within the Police Department to changing

the street files practice of keeping parallel, "personal" files not available to the criminal justice

system, and of the risk of wrongful prosecutions and convictions if the street file problem was

not solved. *See infra* SOF 12-13.

RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The actions described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by over fifteen years and describe events that pre-date the issuance of S.O. 83-1 which expressly mandated that "detectives will preserve and record information and materials obtained in the course of the investigation to assure not only that information and materials indicating the possible guilt of the accused are preserved, but also that any materials that may tend to show his possible innocence or aid in his defense is preserved [ ]", as well as subsequent Special Orders and Standard Operating Procedures. *See* City's Memorandum of Law in Support of Summary Judgment, Dkt. 731 at 14-16; City's 56.1(a)(3) SOF, Dkt. 730 at ¶¶ 15-20, 26-27. Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record, it is argumentative ("risk of wrongful prosecutions and convictions") and because it includes a legal conclusion ("policy of evidence suppression").

*See Malec,* **191 F.R.D. at 583***; see also Tel-Lock, Inc.,* **2005 WL 741930, at \*2 (the court struck portions of party's 56.1 that contained legal conclusions). The City further objects because this paragraph generically references subsequent fact paragraphs, which is improper.** *See Schlessinger v. Chicago Housing Authority*, **130 F. Supp. 3d 1226, 1228 (N.D. Ill. 2015).**

**Finally, Defendant City objects because this paragraph is not supported by the record. Specifically, Plaintiffs' reliance on the Memorandum Opinion and Order issued in** *Palmer v. City of Chicago,* **562 F. Supp. 1067 (N.D. Ill. 1983) in support of a "fact" paragraph as legal opinions are not "fact" but are hearsay.** *See Taylor v. City of Chicago,* **2012 WL 669063, at \*1 (N.D. Ill. Feb. 29, 2012) (Shadur, J) (A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)).**

**Subject to and without waiving these objections, Defendant City denies the statements in this paragraph. Specifically, James Hickey testified in his 2014 deposition in** *Rivera v. Guevara, et. al.,* **that in 1982, there was confusion regarding the implementation of the general orders because previously "notes of detectives were never kept" and that earlier policy directives, specifically, 82-2 and 83-1 were not clear enough regarding the maintenance of notes. (Dkt. 685-4, Ex. 3 at 72:9-73:4; 76:9-24). Nothing in his testimony supports the statement that there was a "practice of keeping parallel, 'personal' files not available to the criminal justice system" as alleged by Plaintiffs or that there was "resistance within the Chicago Police Department to changing the practice," or that "City officials were aware of" any such resistance.**

12.     The City was aware that there was resistance within the Chicago Police Department to changing the street practice. Judge Shadur's April 1982 Order was amended in September 1982 when it was learned that detectives were circumventing the court's order, and Detective Division Notice 82-2 was issued by the Superintendent to preserve all notes. In addition, on March 31, 1983, Judge Shadur issued an order in which he found (a) CPD personnel were applying Detective Division Notice 82-2 "in an improperly restrictive and grudging manner under which detectives could consider their investigative writings as their personal property (and thus not under Detective Division control)"; (b) two Area Commanders interpreted the new directive so that detectives were still free to destroy their own investigative writings under the guise of "personal property"; (c) official reports were sometimes "prepared from the perspective of what fits the preparer's concept of the crime," thereby omitting "highly relevant and sometimes exculpatory" information that "the

preparer does not deem 'pertinent.'" Ex. 2 (Shadur Order) at 5-6; Ex. 3 (Hickey Dep. in *Rivera*) at

72:9-73:4, 76:9-24, 203:19-204:21, 214:18-24; Ex. 8 (Tiderington Report) at 43-47.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The policies and actions described in this paragraph pre-date the criminal investigation and prosecution of Plaintiff by over fifteen years and describe events that pre-date the issuance of S.O. 83-1 which expressly mandated that "detectives will preserve and record information and materials obtained in the course of the investigation to assure not only that information and materials indicating the possible guilt of the accused are preserved, but also that any materials that may tend to show his possible innocence or aid in his defense is preserved [ ]", as well as subsequent Special Orders and Standard Operating Procedures. *See* City's Memorandum of Law in Support of Summary Judgment, Dkt. 731 at 14-16; City's 56.1(a)(3) SOF, Dkt. 730 at ¶¶ 15-20, 26-27. Defendant City further objects to this paragraph as it is argumentative and states a legal conclusion (*i.e.* detectives were "circumventing the court's order") in violation of ND. Ill. L.R. 56.1(d). *See Malec*, 191 F.R.D. at 583; *Tel-Lock, Inc.*, 2005 WL 741930, at \*2 (The court struck portions of party's 56.1 that contained legal conclusions). Defendant City further objects because this paragraph is not supported by the record. Specifically, Plaintiffs improperly rely on the March 31, 1983, Memorandum Opinion and Order issued by Judge Shadur in *Palmer v. City of Chicago*, No. 82 C 2349 (Dkt. 685-3, Ex. 2) to establish "facts" recited in court opinions. Court opinions are hearsay. *See Taylor*, 2012 WL 669063, at \*1 (Shadur, J) (A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)).**

**Subject to and without waiving these objections, admit it part and denied in part. Defendant City admits that Judge Shadur issued an Order on March 31, 1983 that included the above findings, his opinion was overturned by the Seventh Circuit, concluding that the class-plaintiffs failed to prove any systematic constitutional violations as a result of the City's street file practice. *Palmer v. City of Chicago*, 806 F.2d 1316, 1320 (7th Cir. 1986) (*Palmer II*). The City denies that the testimony cited supports that the "City was aware that there was resistance within the Chicago Police Department to changing the street practice" and that.the "detectives were circumventing the court's order." Rather, James Hickey's testified that the thrust of the Special Order was "preservation," and that was understood. (Dkt. 685-8, Ex. 7 at 220:1219). He further testified that while there were questions that came up, and follow up regarding a genuine misunderstanding of whether or not notes should be included, that the order was discussed at "all the coffee tables[,] [i]t was the subject of staff meetings[,] and it was the subject of roll call training." (*Id.* at 221:8-10). Finally, Hickey testified that while he was sure "there were some who voiced their opinions, but it matters not. This was a decision of the Court." (*Id.* at 221:10-13).**

13.     City officials were aware at the time that the street files practice documented above resulted in wrongful prosecutions and convictions. Ex. 3 (Hickey Dep. in *Rivera*) at 102:2-23, 205:18-206:12; Ex. 4 (Hickey 2016 *Fields* Trial Testimony) at 2019:6-9; *Palmer v. City of Chicago*, 562 F. Supp. 1067 (N.D. Ill. 1983) (finding that the failure to retain street file documents "creates a serious potential of deprivation of defendants' constitutional rights," and that "[s]uch deprivations have in fact occurred in the past.").)

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The policies and actions described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by over fifteen years and describe events that pre-date the issuance of S.O. 83-1 which expressly mandated that "detectives will preserve and record information and materials obtained in the course of the investigation to assure not only that information and materials indicating the possible guilt of the accused are preserved, but also that any materials that may tend to show his possible innocence or aid in his defense is preserved [ ]", as well as subsequent Special Orders and Standard Operating Procedures. *See* City's Memorandum of Law in Support of Summary Judgment, Dkt. 731 at 14-16; City's 56.1(a)(3) SOF, Dkt. 730 at ¶¶ 15-20, 26-27. Defendant City further objects to this paragraph as it is argumentative and states a legal conclusion (*i.e.,* that "City officials were aware at the time that the street files practice documented above resulted in wrongful prosecutions and convictions") in violation of N.D. Ill. L.R. 56.1(d). *See Malec*, 191 F.R.D. at 583; *Tel-Lock, Inc.*, 2005 WL 741930, at \*2 (the court struck portions of party's 56.1 that contained legal conclusions). Defendant City further objects because this paragraph is not supported by the record. Specifically, Plaintiffs' reliance on the Memorandum Opinion and Order issued in *Palmer v. City of Chicago,* 562 F. Supp. 1067 (N.D. Ill. 1983) in support of a "fact" paragraph as legal opinions are not "fact" but rather, legal opinions are hearsay. *See Taylor,* 2012 WL 669063, at \*1 (Shadur, J) (A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)). Moreover, the cited testimony of James Hickey does not provide an evidentiary basis for the contentions in this paragraph. Rather, Hickey testified that he was aware that "people not responsible for crime[s] have been found guilty by the criminal justice system." He further acknowledged that after the *Jones* litigation, the City became aware that there was a problem where "sometimes" information developed in the course of an investigation was not transferred into a report. (Dkt. 685-4, Ex. 3 at 206:4-6; Dkt. 685-5, Ex. 4 at 13:22-14:3; 16:10-16).**

Further answering, while Judge Shadur's opinion stated that "any failure to retain unofficial reports creates a serious potential of deprivation of defendants' constitutional rights," *Palmer*, 562 F. Supp. at 1070, his opinion was overturned by the Seventh Circuit, concluding that the class-plaintiffs failed to prove any systematic constitutional violations as a result of the City's street file practice. *Palmer II*, 806 F.2d at 1320.

### POLICY OF WITHHOLDING EXCULPATORY EVIDENCE

14.    In April 1982, after a Temporary Restraining Order was issued in the Palmer litigation, CPD issued a teletype to commanding officers informing them of the TRO, as well as Detective Division Notice 82-2.94. See Ex. 9 (S.O. 82-2 and Memo) at 4; Ex. 7 (Hickey Dep. in *Kluppelberg*) at 201.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Notice 82-2, described in this paragraph, pre-dates the criminal investigation and prosecution of Plaintiffs by over fifteen years and describe events that pre-date the issuance of S.O. 83-1 which expressly mandated that "detectives will preserve and record information and materials obtained in the course of the investigation to assure not only that information and materials indicating the possible guilt of the accused are preserved, but also that any materials that may tend to show his possible innocence or aid in his defense is preserved [ ]", as well as subsequent Special Orders and Standard Operating Procedures. *See* City's Memorandum of Law in Support of Summary Judgment, Dkt. 731 at 14-16; City's 56.1(a)(3) SOF, Dkt. 730 at ¶¶ 15-20, 26-27.**

**Subject to and without waiving these objections, admit.**

15.    CPD Rule 30(b)(6) designee Hickey explained that Notice 82-2 was "a quick and dirty document" designed to implement the TRO but was "not very workable." Ex. 7 (Hickey Dep. in *Kluppelberg*) at 221-22, 224.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Notice 82-2, described in**

this paragraph, pre-dates the criminal investigation and prosecution of Plaintiffs by over fifteen years and describes events that pre-date the issuance of S.O. 83-1 which expressly mandated that "detectives will preserve and record information and materials obtained in the course of the investigation to assure not only that information and materials indicating the possible guilt of the accused are preserved, but also that any materials that may tend to show his possible innocence or aid in his defense is preserved [ ]" *See* City's Memorandum of Law in Support of Summary Judgment, Dkt. 731 at 14-16; City's 56.1(a)(3) SOF, Dkt. 730 at ¶¶ 15-20, 26-27. Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record. *See Malec,* 191 F.R.D. at 583.

Subject to and without waiving these objections, Defendant City admits that Hickey was designated as a Rule 30(b)(6) witness in *Kluppelberg v. Burge,* but clarifies that Hickey was designated to discuss certain topics as agreed upon between the parties in that case subject to the specific 30(b)(6) Notice. (Dkt. 685-8, Ex. 7 at 4:10-5:1). Specifically, the City's policies, procedures and practices as they existed in 1984 and 1985 with respect to the creation of, use of, submission of and access to investigative case files. (Def's Ex. B, *Kluppelberg* 30(b)(6) Notice). Responding further, the City admits that Hickey testified that 82-2 was designed to implement the Court order, and was a "quick and dirty document" that "came out quickly." And while 82-2 was "not very workable," the thrust of the Special Order was "preservation," and that was understood. (Dkt. 685-8, Ex. 7 at 220:12-19). He further testified that while there were questions that came up, and follow up regarding a genuine misunderstanding of whether or not notes should be included, that the order was discussed at "all the coffee tables[,] [i]t was the subject of staff meetings[,] and it was the subject of roll call training." (*Id.* at 221:8-10). Finally, Hickey testified that while he was sure "there were some who voiced their opinions, but it matters not. This was a decision of the Court." (*Id.* at 221:10-13).

16.     Notice 82-2 and the corresponding teletype did not require detectives to put notes or memos into a central repository, and it did not require detectives to preserve notes or memos that had not already been turned into a police file. Ex. 9 (S.O. 82-2 and Memo) at 7; Ex. 7 (Hickey Dep. in *Kluppelberg*) at 212-13.

RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw,* 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Notice 82-2, described in this paragraph, pre-dates the criminal investigation and prosecution of Plaintiffs by over fifteen years and describes events that pre-date the issuance of S.O. 83-1 which expressly mandated that "detectives will preserve and record information and materials obtained in the course of the investigation to assure not only that information and materials indicating the possible guilt of the accused are preserved, but also that any materials that may tend to show his possible innocence or aid in his defense is preserved [ ]", as well as

**subsequent Special Orders and Standard Operating Procedures.** *See* **City's Memorandum of Law in Support of Summary Judgment, Dkt. 731 at 14-16; City's 56.1(a)(3) SOF, Dkt. 730 at ¶¶ 15-20, 26-27.**

**Subject to and without waiving these objections, Defendant City admits that Notice 82-2 did not require detectives, at that time, to keep notes that were not in the "Unit Investigative File" or to submit their notes for inclusion in the unit files. (Dkt. 730-4, Ex. 3 Hickey Dep. at 212:19-213:3). The City denies that Notice 82-2 did not require a central repository for notes or memos. (Dkt. 685-8, Ex. 7, Hickey Dep. at 212:4-7 (82-2 created the Unit Investigative File); Dkt. 685-10, Ex. 9).**

17.     Notice 82-2 lacked procedures to gather or inventory notes, memos, or other

documents, and did not require that detectives put notes or memos into unit investigative files, or

even whether they had to preserve such notes not in the file. Ex. 9 (S.O. 82-2 and Memo); Ex. 7

(Hickey Dep. in *Kluppelberg*) at 161, 212-13; see also Ex. 8 (Tiderington Report) at 40.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2).** *See Outlaw,* **259 F.3d at 837; s***ee also Malec,* **191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Defendant City further objects to Plaintiffs' reliance on Plaintiffs' expert report to support a purported fact and summary judgment.** *See Sommerfield,* **254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 685-9, Ex. 8, Declaration of Thomas Tiderington signed 4/5/24).**

**Moreover, Notice 82-2, described in this paragraph, pre-dates the criminal investigation and prosecution of Plaintiffs by over fifteen years and describes events that pre-date the issuance of S.O. 83-1 which expressly mandated that "detectives will preserve and record information and materials obtained in the course of the investigation to assure not only that information and materials indicating the possible guilt of the accused are preserved, but also that any materials that may tend to show his possible innocence or aid in his defense is preserved [ ]" as well as subsequent Special Orders and Standard Operating Procedures.** *See,* **City's Memorandum of Law in Support of Summary Judgment, Dkt. 731 at 14-16; Def. City's 56.1(a)(3) SOF, Dkt. 730 at ¶¶ 15-20, 26-27.**

**Subject to and without waiving these objections, Defendant City admits that Notice 82-2 did not require detectives, at that time, to keep notes that were not in the unit files or to submit their notes for inclusion in the unit files.** *See,* **Dkt. 685-8, Ex. 7 at 212:19-213:3. The City**

denies that Notice 82-2 did not require a central repository for notes or memos. *See,* Dkt. 685-8, Ex. 7 at 212:4-7 (82-2 created the Unit Investigative File); *see also,* Dkt. 685-10, Ex. 9.

18.     Six months after Notice 82-2 went into effect, Commander Stibich testified that detectives continued to believe that their notes and memos were personal property, for personal use, and that they were not required to turn them into a department file, or even preserve them at all. Ex. 2 (Shadur Order), at 12. Commander Stibich acknowledged that "[w]hat's pertinent to one [detective] might not be to another." *Id*. at 6.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Notice 82-2, described in this paragraph, pre-dates the criminal investigation and prosecution of Plaintiffs by over fifteen years. Moreover, the events described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by over fifteen years and describe events that pre-date the issuance of S.O. 83-1 which expressly mandated that "detectives will preserve and record information and materials obtained in the course of the investigation to assure not only that information and materials indicating the possible guilt of the accused are preserved, but also that any materials that may tend to show his possible innocence or aid in his defense is preserved [ ]", as well as subsequent Special Orders and Standard Operating Procedures. *See,* City's Memorandum of Law in Support of Summary Judgment, Dkt. 731 at 14-16; City's 56.1(a)(3) SOF, Dkt. 730 at ¶¶ 15-20, 26-27. Defendant City further objects because this fact is not supported by the record. *See, Malec*, 191 F.R.D. at 583. Specifically, Plaintiff improperly relies on the March 31, 1983, Memorandum Opinion and Order issued by Judge Shadur in *Palmer v. City of Chicago*, No. 82 C 2349 (Dkt. 685-3, Ex. 2) to establish "facts" recited in court opinions. Court opinions are hearsay. *See, Taylor v. City of Chicago,* 2012 WL 669063, at *1 (N.D. Ill. Feb. 29, 2012) (Shadur, J) (A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22). Specifically, the "facts" that Plaintiff has set forth are not Commander Stibich's actual testimony, but rather Judge Shadur's summary of his testimony.**

**Further answering, and for clarification, the *Palmer* litigation, which Plaintiffs cite in support of this "fact" was an *unsuccessful* class action lawsuit against the City of Chicago challenging the "constitutionality of the Chicago Police Department's alleged practice of concealing exculpatory material collected in criminal investigations and lodged in the department's informal 'street files.'" *Palmer v. City of Chicago,* 806 F.2d 1316, 1317 (7th Cir. 1986) (*Palmer II*). Ultimately, the Seventh Circuit found that the class-plaintiffs failed to prove any systematic constitutional violations as a result of the City's street file practice and overruled the District Court's holdings. *Id.* at 1320. Further, on appeal, the Seventh Circuit**

reversed Judge Shadur's decision, holding it was CPD's responsibility, as public officials, to draft policies and internal guidelines that incorporate the constitutional standard of preservation and assure criminal defendants the due process safeguard of a fair trial, noting that the Federal Courts have "no business, whatsoever, meddling in or attempting to control the daily maintenance and administration of the CPD and the Cook County State's Attorney's office, absent a clear and defined constitutional violation." *Palmer v. Chicago,* 755 F.2d. 560, 578 (7th Cir. 1985) (*Palmer I*).

19.     Judge Shadur found that Notice 82-2 responded to the TRO in "an improperly

restrictive and grudging manner, under which detectives could consider their investigative

writings as their personal property (and thus not 'under Detective Division control') and

therefore outside the preservation requirements of Notice 82-2." Ex. 2 (Shadur Order) at 12.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Notice 82-2, described in this paragraph, pre-dates the criminal investigation and prosecution of Plaintiffs by over fifteen years and describes events that pre-date the issuance of S.O. 83-1 which expressly mandated that "detectives will preserve and record information and materials obtained in the course of the investigation to assure not only that information and materials indicating the possible guilt of the accused are preserved, but also that any materials that may tend to show his possible innocence or aid in his defense is preserved [ ]", as well as subsequent Special Orders and Standard Operating Procedures. *See* City's Memorandum of Law in Support of Summary Judgment, Dkt. 731 at 14-16; Def. City's 56.1(a)(3) SOF, Dkt. 730 at ¶¶ 15-20, 26-27. Defendant City further objects because this fact is not supported by the record. *See Malec*, 191 F.R.D. at 583. Specifically, Plaintiff improperly relies on the March 31, 1983, Memorandum Opinion and Order issued by Judge Shadur in *Palmer v. City of Chicago,* No. 82 C 2349 (Dkt. 685-3, Ex. 2) to establish "facts" recited in court opinions. Court opinions are hearsay. *See Taylor*, 2012 WL 669063, at \*1 (Shadur, J) (A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)).**

**Subject to and without waiving this objection, Defendant City admits that Judge Shadur's March 31, 1983 Order contains the quoted conclusion. Responding further, and for clarification, the *Palmer* litigation, which Plaintiffs cite as the basis for of support of this "fact" was an *unsuccessful* class action lawsuit against the City of Chicago challenging the "constitutionality of the Chicago Police Department's alleged practice of concealing exculpatory material collected in criminal investigations and lodged in the department's informal 'street files.'" *Palmer II*, 806 F.2d at 1317. Ultimately, the Seventh Circuit found that the class-plaintiffs failed to prove any systematic constitutional violations as a result of**

the City's street file practice and overruled the District Court's holdings. *Id.* at 1320. Further, on appeal, the Seventh Circuit reversed Judge Shadur's decision, holding it was CPD's responsibility, as public officials, to draft policies and internal guidelines that incorporate the constitutional standard of preservation and assure criminal defendants the due process safeguard of a fair trial, noting that the Federal Courts have "no business, whatsoever, meddling in or attempting to control the daily maintenance and administration of the CPD and the Cook County State's Attorney's office, absent a clear and defined constitutional violation." *Palmer I*, 755 F.2d. at 578.

20.     In January 1983, Special Order 83-1 replaced Detective Division Notice 82-2. It applied only to detectives assigned to Violent Crimes. Special Order 83-1 defined the term "Investigative File" and created something called an Investigative File Case Folder to secure documents relating to a criminal investigation. Special Order 83-1 also created an "Investigative File inventory sheet," to catalog all the documents placed in the Investigative File, that was to be forwarded to the Records Division when felony charges were approved. Special Order 83-1 also created General Progress Reports ("GPRs"). The GPR forms were to be used by detectives for taking handwritten notes or writing "to-from memos" to their colleagues. Ex. 10 (S.O. 83-1); Ex. 7 (Hickey Dep. in *Kluppelberg*) at 170:7-9; Ex. 3 (Hickey Dep. in *Rivera*) at 227; Ex. 8 (Tiderington Report) at 40-41.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Defendant City further objects to Plaintiffs' reliance on Plaintiffs' expert report to support a purported fact and summary judgment. *See Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 685-9, Ex. 8, Declaration of Thomas Tiderington signed 4/5/24). Moreover, S.O. 83-1 described in this paragraph, pre-dates the criminal investigation and prosecution of Plaintiffs by fifteen years and was replaced by Detective Division Special Order 83-2. Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record. *See Malec,* 191 F.R.D. at 583.**

**Subject to and without waiving these objections, Defendant City admits that in January 1983 Special Order 83-1 ("S.O. 83-1") replaced Detective Division Notice 82-2, and that the GPR form for note taking was created as part of 83-1. (Dkt. 730-4, Ex. 3 Hickey Dep. at 170:79). Responding further, the City admits that this paragraph accurately reflects certain portions of Special Order 83-1, which was designed to "institutionalize the control of all violent crime field investigation documents and files," but does not fully and accurately set forth S.O. 83-1. (Dkt. 685-11, Ex. 10). S.O. 83-1 applied to all within the Bureau of Investigative Services, which included detectives, sergeants, lieutenants, commanding officers and youth officers. (Dkt. 685-4, Ex. 3 at 54:22-55:9; 56:2-7). In addition, S.O. 83-1 described General Progress Reports as "designed to standardize the recording of handwritten notes and memoranda (the investigative-work product) including: inter-watch memoranda (whether handwritten or typewritten), witness or suspect interview notes, on-scene canvass notes, and any other handwritten personal notes normally generated by investigative detectives during the course of a violent crimes field investigation." (Dkt. 685-11, Ex. 10, S.O. 83-1 at § IV E; Def. City's 56.1(a)(3) SOF, Dtk. 730, at ¶¶ 15-19) (discussing S.O. 83-1 and S.O. 83-2, issued to build upon S.O. 83-1).**

21.     Special Order 83-1 created a requirement for detectives to place handwritten GPRs and other investigative materials in the investigative file. It also required detectives to fill out CPD case report forms, such as supplementary reports, documenting relevant information previously recorded on a GPR or other miscellaneous documents. Ex. 10 (S.O. 83-1); Ex. 8 (Tiderington Report) at 41.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion." Defendant City further objects to Plaintiffs' reliance on Plaintiffs' expert report to support a purported fact and summary judgment. *See Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 685-9, Ex. 8, Declaration of Thomas Tiderington signed 4/5/24). Moreover, S.O. 83-1, described in this paragraph, pre-dates the criminal investigation and prosecution of Plaintiffs by fifteen years and was replaced by Detective Division Special Order 83-2.**

**Subject to and without waiving this objection, Defendant City admits that Special Order 83-1 provided "guidelines for the proper retention of official Department reports, notes, memoranda and miscellaneous documents of potential evidentiary value accumulated**

during the course of a particular violent crime field investigation." (Dkt. 685-11, Ex. 10, S.O. 83-1 at § II A. "Purpose"; *see also* Def. City's 56.1(a)(3) SOF, Dkt. 730, at ¶¶ 15-19 (discussing S.O. 83-1 and S.O. 83-2, issued to build upon S.O. 83-1)).

22.     Hickey considered S.O. 83-1 a "major change in the way notes were considered within the police department," yet acknowledged there was never a survey or audit about how its implementation went. Ex. 6 (April 10, 2014 Hickey Testimony, Fields v. City of Chicago) at 2053:24-2054:1; Ex. 5 (Hickey Dep. in Fields) at 43:1-4 ("Q. Was there anything done after the implementation of 83-1 to survey or to audit how the process was going, the new process? A. Not to my knowledge.").

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") S.O. 83-1, described in this paragraph, pre-dates the criminal investigation and prosecution of Plaintiffs by fifteen and was replaced by Detective Division Special Order 83-2. *See* Def. City's 56.1(a)(3) SOF, Dkt. 730, at ¶¶ 15-19 (discussing S.O. 83-1 and S.O. 83-2, issued to build upon S.O. 83-1).**

**Subject to and without waiving this objection, admit. Responding further and for clarification, Defendant states that upon its issuance, all members of the Bureau of Investigative Services participated in mandated training with respect to the special orders related to investigative files. (Dkt. 685-4, Ex. 3 at 54:12-55:12). In addition to training, the order related to investigative files was discussed at "all the coffee tables[,] [i]t was the subject of staff meetings[,] and it was the subject of roll call training." (Dkt. 685-8, Ex. 7 at 221:8-10).**

23.     Judge Shadur found Special Order 83-1 to be deficient, including for the following reasons: (1) there was no obligation to create an investigative case file folder until someone was arrested and charges were approved, leaving the risk of selective retention/disclosure during the investigation; (2) it offered no guidance on what information a detective should deem "relevant" information to include in official reports, leaving discretion for detectives to withhold information on their subjective assessment of its relevance; (3) it failed to ensure that any

detective receiving information related to an investigation not assumed to him will forward the information to the assigned detective, so that information is included in the investigative file folder; and (4) it omits any provision defining how the CPD responds to a subpoena or request to produce information related to a criminal proceeding. Ex. 2 (Shadur Order) at 16-17; Ex. 8 (Tiderington Report) at 41.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Defendant City further objects to Plaintiffs' reliance on Plaintiffs' expert report to support a purported fact and summary judgment. *See Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 685-9, Ex. 8, Declaration of Thomas Tiderington signed 4/5/24).   Moreover, S.O. 83-1, described in this paragraph, pre-dates the criminal investigation and prosecution of Plaintiffs by fifteen years and was replaced by Detective Division Special Order 83-2. *See* Def. City's 56.1(a)(3) SOF, Dkt. 730, at ¶¶ 15-19 (discussing S.O. 83-1 and S.O. 83-2, issued to build upon S.O. 83-1). Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record. *See Malec,* 191 F.R.D. at 583. Defendant City further objects as it is not supported by admissible evidence. Specifically, Plaintiffs improperly rely on the March 31, 1983, Memorandum Opinion and Order issued by Judge Shadur in *Palmer v. City of Chicago,* No. 82 C 2349 (Dkt. 685-3, Ex. 2) to establish "facts" recited in court opinions. Court opinions are hearsay. *See, Taylor v. City of Chicago,* 2012 WL 669063, at *1 (N.D. Ill. Feb. 29, 2012) (Shadur, J)(A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)).**

**Subject to and without waiving these objections, Defendant City admits that Judge Shadur found 83-1 to be "deficient" in certain respects, but denies that this paragraph fully articulates Judge Shadur's findings. *See,* Dkt. 685-3, Ex. 2.**

**Responding further, and for clarification, the *Palmer* litigation, which Plaintiffs cite as the basis for support of this "fact" was an *unsuccessful* class action lawsuit against the City of Chicago challenging the "constitutionality of the Chicago Police Department's alleged practice of concealing exculpatory material collected in criminal investigations and lodged in the department's informal 'street files.'" *Palmer v. City of Chicago,* 806 F.2d 1316, 1317 (7th Cir. 1986) (*Palmer II*) (emphasis added). Ultimately the Seventh Circuit found that the class-plaintiffs failed to prove any systematic constitutional violations as a result of the City's street**

file practice and overruled the District Court's holdings. *Id.* at 1320. In addition, the Seventh Circuit reversed Judge Shadur's decision, holding it was CPD's responsibility, as public officials, to draft policies and internal guidelines that incorporate the constitutional standard of preservation and assure criminal defendants the due process safeguard of a fair trial, noting that the Federal Courts have "no business, whatsoever, meddling in or attempting to control the daily maintenance and administration of the CPD and the Cook County State's Attorney's office, absent a clear and defined constitutional violation." *Palmer v. Chicago,* 755 F.2d. 560, 578 (7th Cir. 1985) (*Palmer I*).

24.     Special Order 83-1 was replaced by Special Order 83-2 in May 1983. Exs. 10, 11

(Special Orders 83-1, 83-2); Ex. 3 (Hickey Dep. in Rivera) at 225, 227:7-229:6.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The policies described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by fifteen years and were replaced by Detective Division Special Order 86-3, ("S.O. 86-3") in May 1986.**

**Subject to and without waiting these objections, admit.**

25.     Special Order 83-2 made a few changes: (1) to require detectives to create records

reflecting all relevant information; (2) to require detectives to pass along information they receive

about another crime to the detective investigating that other crime; (3) to transmit a copy of the

investigative file inventory sheet to either the Office of Legal Affairs or State's Attorney's Office

for its proper disclosure to criminal defendants; and (4) to create an Investigative File Control

Card. Ex. 11 (S.O. 83-2); Ex. 8 (Tiderington Report) at 41-42.

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is argumentative ("made a few changes"). *See Malec*, 191 F.R.D. at 583. To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") S.O. 83-2, described in this paragraph, pre-dates the criminal investigation and prosecution of Plaintiffs by fifteen years and was replaced by S.O. 86-6 in May 1986. *See* Def. City's 56.1 SOF, Dkt. 730, at ¶¶ 19-20.**

Defendant City further objects to Plaintiffs' reliance on Plaintiffs' expert report to support a purported fact and summary judgment. *See Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 685-9, Ex. 8, Declaration of Thomas Tiderington signed 4/5/24).

Subject to and without waiving these objections, Defendant City admits that Special Order 83-2 ("S.O. 83-2") included additional "guidelines for the proper retention of official Department reports, notes, memoranda and miscellaneous documents of potential evidentiary value accumulated during the course of a particular violent crime field investigation[]" but denies that this paragraph fully or accurately summarizes those guidelines, as the Responsibilities and Procedures Section of the Special Order spans two pages and includes multiple subparts. (Dkt. 685-12, Ex. 11, S.O. 83-2 "Responsibilities and Procedures" at §§ V(A)(1-4),(B)(1-6), (C)(1-4)). Responding further, the City admits, as it relates to the transmission of the Investigative File Inventory Sheet, that SO 83-2 states that "[w]henever a subpoena or discovery motion is received in any case", two copies of the Investigative File Inventory sheet is to be transmitted to the Office of Legal Affairs or the Cook County State's Attorney's Office. (*Id.* at § V(B)(6)).

26. S.O. 83-2 still: (1) did not require a single repository for all investigative information maintained by a lead investigator; (2) applied only to detectives, and explicitly excluded from its directives all other officers involved in investigative major crimes; (3) provided no guidance about what information a detective was required to include in a supplementary report beyond information deemed relevant, (4) provided no guidance about how information should be communicated or documented among detectives; (5) provided no policy directive or procedure to ensure production of investigative files; (6) relied on inventory sheets instead of actual file disclosures; and (7) lacked an audit/oversight mechanism. Ex. 11 (S.O. 832); Ex. 7 (Hickey Dep. in *Kluppelberg*) at 236-38; Ex. 8 (Tiderington Report) at 42.

**RESPONSE:** Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is argumentative (i.e., "still ... did not," "applied only," "provided no guidance," "provided no policy," "lacked,"). *See Malec*, 191 F.R.D. at 583. To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D.

at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Defendant City further objects to Plaintiffs' reliance on Plaintiffs' expert report to support a purported fact and summary judgment. *See Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 685-9, Ex. 8, Declaration of Thomas Tiderington signed 4/5/24). S.O. 83-2, described in this paragraph, pre-dates the criminal investigation and prosecution of Plaintiffs by ~~fifteen~~ ten years and was replaced by Detective Division Special Order 86-3 ("S.O. 86-3") in May 1986. (*See* Def. City's 56.1 SOF, Dkt. 730, at ¶¶ 19-20).

Subject to and without waiving these objections, Defendant City disputes that Plaintiffs have accurately summarized the entirety of S.O. 83-2, which is a five page Detective Division Special Order that included six separate and distinct sections and was "designed to institutionalize the control of all violent crimes field investigation documents and files, which may have been previously referred to as street files, working files, running files, or detective's personal files and notes." *See,* Dkt. 685-12, Ex. 11. The City admits that Hickey was asked "Does 83-2 say anything about what's supposed to go into a supplementary report?" To which he responded "No, it does not. It talks about placing it in the Investigative Case Folder." *See,* Dkt. 685-8, Ex. 7 at 238:5-12. Responding further, S.O. 83-2 specifically stated that it was the "policy of the Chicago Police Department to conduct all criminal investigations in an impartial and objective manner and to maintain the integrity of its investigative files to ensure that the due process rights of the accused are not compromised during the subject investigation, initial court hearing or any subsequent review." *See,* Dkt. 685-12, Ex. 11 at § III.

27.     Special Order 86-3 replaced S.O. 83-2 in May 1986. It was substantively identical

to S.O. 83-2, except for the addition of an auditing provision. Compare Ex. 11 (Special Order 832)

with; Ex. 12 (Special Order 86-3); Ex. 3 (Hickey Dep. in *Rivera*) at 100: 9-101:12, 227, 246-47,

249, 174.

RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The policies described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by twelve years. Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record. *See Malec*, 191 F.R.D. at 583.

Subject to and without waiving these objections, Defendant City admits that Special Order 86-3 replaced S.O. 83-2 in May 1986 but denies that the two were "substantively identical."

(*Compare,* Dkt. 685-12, Ex. 11, *with* Dkt. 685-13, Ex. 12). Specifically, Special Order 86-3 includes additional language in Section IV: Responsibilities and Procedures, which acknowledged that homicide investigations, by their nature, generated a significant amount of documentation, and that in order to further ensure the integrity and completeness of the files, certain steps would be taken, as well as additional language related to the Homicide File Retention Schedule, which required that in cleared/closed cases, upon a disposition of guilty, the Investigative File Case folder would be sent to the Records Division for "post-conviction" retention. *Id.*; *see also* Def. City's 56.1 SOF, Dkt. 730, at ¶¶ 19-20.

28.     The modifications in S.O. 86-3 eliminated the requirement that the inventory sheet be forwarded to defense attorneys when a criminal subpoena or discovery motion was received and eliminated the requirement that handwritten notes or other investigative materials be submitted "promptly (normally at the end of each tour of duty)." Compare Ex. 11 (Special Order 83-2) at 4 with Ex. 12 (Special Order 86-3); Ex. 13 (Winstrom Dep) at 106-07; Ex. 8 (Tiderington Report) at 42.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The policies described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by twelve years. Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record or admissible evidence. *See Malec*, 191 F.R.D. at 583. Defendant City further objects to Plaintiffs' reliance on Plaintiffs' expert report to support a purported fact and summary judgment. *See Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed long after Plaintiff's 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 685-9, Ex. 8, Declaration of Thomas Tiderington signed 4/5/24).**

**Subject to and without waiving these objections, Defendant City admits that Special Order 86-3 ("S.O. 86-3") replaced Special Order 83-2, but denies that Plaintiffs have accurately summarized the changes in this paragraph. (*Compare,* Dkt. 685-12, Ex. 11, *with* Dkt. 685-13, Ex. 12). Specifically, S.O. 86-3 maintained the requirement that "all notes, memoranda, and miscellaneous documents of potential evidentiary value" be retained in the files, and further required detectives to "record and preserve relevant information as fully and accurately as possible during the course of their investigation; transcribe relevant information which initially had been recorded upon General Progress Reports, Major**

Incident Worksheets, and other miscellaneous investigative documents, on official department Case Report form[s] (Supplementary, General Offense, etc.), consistent with their Detective Division Unit format; and submit all handwritten notes and investigative documents generated or received to the Unit Supervisor for review and inclusion in the Investigative File Case Folder whenever an Investigative File Case Folder has been initiated." (Dkt. 685-13, Ex. 12, S.O. 86-3 at §V(B)(1)-(2); *see also* Def. City's 56.1 SOF, Dkt. 730, at ¶¶ 19-20).

29.     S.O. 86-3 still (1) did not require a single repository for all investigative information maintained by a lead investigator; (2) permitted detectives to maintain handwritten notes as personal files for longer periods of time, by removing the requirement of "prompt" documentation; (3) provided no guidance about what information a detective was required to include in a supplementary report beyond information deemed relevant; (4) and left defense attorneys with no mechanisms to determine whether their materials were complete without an inventory sheet. Ex. 12 (S.O. 86-3); Ex. 13 (Winstrom Dep. in *Reyes*) at 98:13-99:10; Ex. 8 (Tiderington Report) at 43.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2).** *See Outlaw*, **259 F.3d at 837;** *see also Malec*, **191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The policies described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by twelve years. S.O. 86-3, described in this paragraph, was replaced by Chapter 18 of the Detective Division Standard Operating Procedures in 1988.** *See,* **Dkt. 730 at ¶26. Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record and is argumentative.** *See Malec*, **191 F.R.D. at 583. Defendant City further objects to Plaintiffs' reliance on Plaintiffs' expert report to support a purported fact and summary judgment.** *See Sommerfield*, **254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 685-9, Ex. 8, Declaration of Thomas Tiderington signed 4/5/24).**

**Subject to and without waiving these objections, Defendant City disputes this paragraph and denies that Plaintiffs have fully or accurately summarized S.O. 86-3. Special Order 86-3 clearly stated that it was "the policy of the Chicago Police Department to conduct all criminal**

investigations in an impartial and objective manner and to maintain the integrity of its investigative files *to ensure that the due process rights of the accused are not compromised during an investigation, initial court hearing or any subsequent review.* Additionally, it is the policy of the Chicago Police Department to record and preserve information obtained by any Department member during the course of an investigation. When assigned to an investigation, Division members will preserve and record information and materials obtained in the course of the investigation to ensure not only that the information and material incriminating the accused are preserved, but that information and material which might aid in the defense of the accused are preserved as well." *See,* Dkt. 685-13, Ex. 12, S.O. 86-3 at "Policy" § II (emphasis added). Responding further, Commander Winstrom disagreed that S.O. 86-3 did not provide specific guidance about what information was to be included in supplementary reports, specifically pointing to Section (C)(1) of S.O. 86-3. *See,* Dkt. 685-14, Ex. 13 at 98:13-24. Further, the City denies S.O. 86-3 "contained only one express instruction that only one thing from the investigative file needed to be disclosed: the inventory log" as the cited testimony does not support this assertion.

30.     In 1988, Standard Operating Procedures (SOP) were created to govern the work of detectives. Chapter 18 of the SOP, the relevant portion of the new SOPs dealing with the documentation and disclosure of investigative information, contains "no substantive changes of any kind" from S.O. 86-3. Ex. 3 (Hickey Dep. in Rivera) at 244, 249:19-251:5; Ex. 13 (Winstrom Dep in *Reyes*) at 125:5-126:7 ("Q. And would you agree with me that looking at the [SOP] policy here, it is basically the same policy as what is contained in [S.O.] 86-3? A. I agree."), 208-210.

RESPONSE: Admit; *see also* Def. City's 56.1 SOF, Dkt. 730, at ¶¶ 26-27.

### THE CITY'S ADMISSIONS REGARDING POLICY DEFICIENCIES

31.     Despite an auditing requirement added to Special Order 86-3, the City's designated representatives were unaware of a single instance of such auditing ever taking place, or of any document in existence indicating that someone had done the type of inspection required by S.O. 86-3. Ex. 3 (Hickey Dep. in Rivera) at 178:4-13, 244-45, 249:11-17; Ex. 13 (Winstrom Dep.) at 208-210, 120-121; Ex. 4 (2016 Hickey Fields Testimony) at 43:1-4; Ex. 14 (Cline Dep. in *Reyes*) at 43:13-15, 47:5-13.

RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for

partial summary judgment, nor do they warrant denial of Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The policies described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by over ten years. S.O. 86-3, described in this paragraph, was replaced by Chapter 18 of the Detective Division Standard Operating Procedures in 1988. (Dkt. 730 at ¶26). Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record and is argumentative ("despite an auditing requirement"). *See Malec*, 191 F.R.D. at 583; *see also Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.) (statements of fact should not contain legal argument), *aff'd*, 926 F.3d 409 (7th Cir. 2019) (responses to the opposing party's statement of facts are not the place for "purely argumentative details" or "legal conclusions.")

Subject to and without waiving these objections, denied. James Hickey testified in his 2014 deposition in *Rivera v. Guevara, et. al.,* that in 1983 after the promulgation of 83-1, he did not know of a special audit procedure that was implemented, but "for every directive and even for things that we don't have directives, it's a function of a supervisor, it's a responsibility ever[y] supervisors to make sure the employees, the members of the Chicago Police Department are doing their job and following the department directives." (Dkt. 685-4, Ex. 3 at 244:5-19). Though James Hickey testified that as a supervisor of the subpoena services unit he did not direct a special audit, retired Commander Philip Cline testified that he conducted multiple audits of the files when he was a Lieutenant at Area 2. (Dkt. 685-4, Ex. 3 at 178:4-13; Dkt. 685-15, Ex. 14 at 42:24-43:6). Further answering, Commander Cline testified that "a supervisor would go through the file and make sure that the – the proper reports were in there, that the GPRs were approved, everything that – to get these files ready for court or continue the investigation of an unsolved crime." These audits were both "regular check-ins to make sure the files were as they were supposed to be *and* were specific to assessing compliance with the policy change. (*Id.* at 43:16-20).

32.     Detectives were not disciplined for failure to comply with the new Special Orders.

Ex. 3 (Hickey Dep. in Rivera) at 178:15-179:2, 187:6-10; Ex. 5 (Hickey Fields Dep) at 10; Ex. 8

(Tiderington Report) at 59.

RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs'  motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record. *See Malec*, 191 F.R.D. at 583.

**Subject to and without waiving these objections, Defendant City denies.** James Hickey testified as 30(b)(6) witnesses in *Rivera v. City of Chicago* and *Fields v. City of Chicago* and was designated to discuss "the documentation and preservation of information learned during a homicide investigation." (Def's Ex. A, 30(b)(6) Notice from *Rivera v. City of Chicago;* Def's Ex. C 30(b)(6) Notice from *Fields v. City of Chicago*). He was not disclosed to provide 30(b)(6) testimony addressing discipline. *Id.* Rather, at his deposition Hickey was asked whether any "clerk or sergeant within the subpoena services unit" or "anyone in the police department" had ever been subject to "discipline of any kind for negligence or other failure to provide all responsive documents in response to subpoenas or other requests for information." To which he responded that he was not aware of any discipline regarding "these personnel." (Dkt. 685-4, Ex. 3 at 178:15-179:2, 187:6-10). He further testified that the punishment for failure to follow special orders could be "reprimand, all the way up to a worst-case scenario, a Complaint Register number." (Dkt. 685-6, Ex. 5 at 10:21-11:3). Denying further, James Hickey testified in his 2014 deposition in *Rivera v. Guevara, et. al.,* that in 1983 after the promulgation of 83-1, he did not know of a special audit procedure that was implemented, but "for every directive and even for things that we don't have directives, it's a function of a supervisor, it's a responsibility ever[y] supervisors to make sure the employees, the members of the Chicago Police Department are doing their job and following the department directives." (Dkt. 685-4, Ex. 3 at 244:5-19). Although James Hickey testified that as a supervisor of the subpoena services unit that he did not direct a special audit, retired Commander Philip Cline testified that he conducted multiple audits of the files when he was a Lieutenant at Area 2. (Dkt. 685-4, Ex. 3 at 178:4-13; Dkt. 685-15, Ex. 14 at 42:24-43:6). Further answering, Commander Cline testified that "a supervisor would go through the file and make sure that the – the proper reports were in there, that the GPRs were approved, everything that – to get these files ready for court or continue the investigation of an unsolved crime." These audits were both "regular check-ins to make sure the files were as they were supposed to be *and* were specific to assessing compliance with the policy change. (*Id.* at 43:16-20).

33.     Hickey admitted that he did not know if every detective followed S.O. 86-3. Ex. 4

(2016 Hickey Fields Testimony) at 37:13-20.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The policies described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by over ten years. S.O. 86-3, described in this paragraph, was replaced by Chapter 18 of the Detective Division Standard Operating Procedures in 1988. (Dkt. 730 at ¶26). Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record. *See Malec*, 191 F.R.D. at 583.**

**Subject to and without waiving these objections, the City admits that Hickey testified as to his personal knowledge on whether he knew if every detective immediately followed S.O.**

**863. Responding further, and for clarification, in *Fields v. Chicago,* Hickey was designated to discuss certain policies and procedures that were in existence in 1984 and 1985 related to investigative files and the taking and maintaining of investigative notes. (Dkt. 685-6, Ex. 5 at 8:4-18). He was asked "Although that was the policy you wrote and it was on the books, you don't have a foundation to say that every detective immediately changed their practices, do you." To which he responded, "Of course, I don't know if every detective followed it." (Dkt. 685-5, Ex. 4 at 37:37:13-20).**

34.    Despite Judge Shadur's guidance regarding the deficiencies in the CPD policies, CPD never included a statement or directive in its policy to produce the entire contents of the investigative files, including the newly created General Progress Reports. Instead, the Special Orders contained only an instruction to forward a copy of the inventory sheet to the CPD's Record Division, without ever stating that the actual police reports in the files must be disclosed to prosecutors and criminal defendants. See, e.g., Ex. 12 (S.O. 86-3) (lacking any instruction to disclose entire investigative file and/or all supplementary reports and general progress reports to prosecutors and/or criminal defendants); Ex. 10 (S.O. 83-1) (same); Ex. 13 (Winstrom Dep.) at 106:7-14, 20-24 ("Q. Is there some document that -- is there some other policy document that says, copy the entire investigative file and distribute this file in response to subpoenas? A. Policy document? Not that I'm aware of, no."), 107:21-24; Ex. 8 (Tiderington Report) at 44.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record and is argumentative ("Despite Judge Shadur's guidance regarding the deficiencies in the CPD policies, CPD never," "Instead, the Special Orders contained only"). *See Malec*, 191 F.R.D. at 583; *see also Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.), *aff'd*, 926 F.3d 409 (7th Cir. 2019) (statements of fact should not contain legal argument and responses to the opposing party's statement of facts are not the place for "purely argumentative details" or "legal conclusions.") Defendant City further objects to Plaintiffs' reliance on Plaintiffs' expert report to support a purported fact and summary judgment. *See Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403).**

Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 685-9, Ex. 8, Declaration of Thomas Tiderington signed 4/5/24). Defendant City further objects as it is not supported by admissible evidence. Specifically, Plaintiff's reliance on the Memorandum Opinion and Order issued in *Palmer v. City of Chicago,* 562 F. Supp. 1067 (N.D. Ill. 1983) in support of a "fact" paragraph is improper as legal opinions are not "fact" but rather are hearsay. *See Taylor v. City of Chicago,* 2012 WL 669063, at *1 (N.D. Ill. Feb. 29, 2012) (Shadur, J) (A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)).

To the extent that Plaintiffs are stating as a matter of fact that the City violated Judge Shadur's order or "guidance," the City denies that CPD's policy was in violation of Judge Shadur's order or "guidance," or that Judge Shadur's order was binding on CPD. The *Palmer* litigation, which Plaintiffs cite as the basis for support of this "fact" was an *unsuccessful* class action lawsuit against the City of Chicago challenging the "constitutionality of the Chicago Police Department's alleged practice of concealing exculpatory material collected in criminal investigations and lodged in the department's informal 'street files.'" *Palmer v. City of Chicago,* 806 F.2d 1316, 1317 (7th Cir. 1986) (*Palmer II*). Judge Shadur's order was vacated. *See Palmer v. City of Chicago,* 562 F. Supp. 1067 (N.D. Ill. 1983) *rev'd Palmer v. City of Chicago,* 755 F.2d 560 (7th Cir. 1985) (*Palmer I*). The Seventh Circuit held it was CPD's responsibility, as public officials, to draft policies and internal guidelines that incorporate the constitutional standard of preservation and assure criminal defendants the due process safeguard of a fair trial, noting that the Federal Courts have "no business, whatsoever, meddling in or attempting to control the daily maintenance and administration of the CPD and the Cook County State's Attorney's office, absent a clear and defined constitutional violation." *Palmer v. Chicago,* 755 F.2d. 560, 578 (7th Cir. 1985) (*Palmer I*). Still, to address the class plaintiffs' accusation that they could not establish a constitutional violation if the evidence was in the hands of CPD, the *Palmer I* Court granted the plaintiffs' request to preserve all "street files" for the subclass A plaintiffs. *Palmer I,* 755 F.2d, at 572. Those plaintiffs were permitted to inspect over 300 "street files" for exculpatory evidence. *Palmer II,* 806 F.2d at 1317. Notwithstanding their search of each file, the *Palmer* plaintiffs failed to uncover even one piece of undisclosed exculpatory evidence. *Id.* at 1324 ("their claim depends on there being exculpatory material in the 'street files' – and there isn't any"). Ultimately, the Seventh Circuit found that the class plaintiffs failed to prove any systematic constitutional violations as a result of the City's street file practice and overruled the District Court's holdings. *Palmer II,* 806 F.2d at 1320.

35. Despite Judge Shadur's express guidance regarding the deficiencies in CPD's policies, CPD never updated its policy to stop permitting a system of multiple, parallel files rather than a single centralized file. Ex. 12 (S.O. 86-3); Ex. 15 (Noble Testimony) at 4832, 4818-19 ("[T]he Chicago Police Department has . . . essentially, three separate filing systems"--the investigative file, permanent retention file, and "working file"); Ex. 3 (Hickey Dep. in *Rivera*)

at 192-94; Ex. 7 (Hickey Dep. in *Kluppelberg*) at 295:20-296:4; Ex. 13 (Winstrom Dep.) at 110-115.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2).** *See Outlaw,* **259 F.3d at 837;** *see also Malec,* **191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record and is argumentative ("Despite Judge Shadur's express guidance regarding the deficiencies in CPD's policies, CPD never...")** *See Malec,* **191 F.R.D. at 583;** *see also Uncommon, LLC v. Spigen, Inc.,* **305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.),** *aff'd,* **926 F.3d 409 (7th Cir. 2019) (statements of fact should not contain legal argument and responses to the opposing party's statement of facts are not the place for "purely argumentative details" or "legal conclusions.")**

**Subject to and without waiving these objections, Defendant City admits in part and denies in part. The City admits that Noble testified, as an expert at trial in** *Rivera v. Guevara,* **in 2018, that CPD maintained "permanent retention files, which contain[] the original case report and supplemental reports, those formal reports. [A]n investigative file, which would contain what [83-1 was] talking about, which are the investigative notes, to/from memorandums, notes that are taken by detectives. And then [CPD had] this third thing called a working file, and a working file is nothing more than copies of documents that may be in one of those first two permanent files." (Dkt. 685-16, Ex. 15 at 4818:14-4819:1).**

**To the extent that Plaintiffs are stating as a matter of fact that the City violated Judge Shadur's order or "guidance," Defendant City denies that CPD's policy was in violation of Judge Shadur's order or "guidance," or that Judge Shadur's order was binding on CPD. The** *Palmer* **litigation, which Plaintiffs cite as the basis for support of this "fact" was an** *unsuccessful* **class action lawsuit against the City of Chicago challenging the "constitutionality of the Chicago Police Department's alleged practice of concealing exculpatory material collected in criminal investigations and lodged in the department's informal 'street files.'"** *Palmer v. City of Chicago,* **806 F.2d 1316, 1317 (7th Cir. 1986) (***Palmer II***). Judge Shadur's order was vacated.** *See Palmer v. City of Chicago,* **562 F. Supp. 1067 (N.D. Ill. 1983)** *rev'd Palmer v. City of Chicago,* **755 F.2d 560 (7th Cir. 1985) (***Palmer I***). The Seventh Circuit held it was CPD's responsibility, as public officials, to draft policies and internal guidelines that incorporate the constitutional standard of preservation and assure criminal defendants the due process safeguard of a fair trial, noting that the Federal Courts have "no business, whatsoever, meddling in or attempting to control the daily maintenance and administration of the CPD and the Cook County State's Attorney's office, absent a clear and defined constitutional violation."** *Palmer I,* **755 F.2d. at 578. Still, to address the class plaintiffs' accusation that they could not establish a constitutional violation if the evidence was in the hands of CPD, the** *Palmer I* **Court granted the plaintiffs' request to preserve all**

"street files" for the subclass A plaintiffs. *Palmer I*, 755 F.2d at 572. Those plaintiffs were permitted to inspect over 300 "street files" for exculpatory evidence. *Palmer II*, 806 F.2d, at 1317. Notwithstanding their search of each file, the *Palmer* plaintiffs failed to uncover even one piece of undisclosed exculpatory evidence. *Id.* at 1324 ("their claim depends on there being exculpatory material in the 'street files' – and there isn't any"). Ultimately, the Seventh Circuit found that the class-plaintiffs failed to prove any systematic constitutional violations as a result of the City's street file practice and overruled the District Court's holdings. *Palmer II*, 806 F.2d at 1320.

36.    The City acknowledges that its continued system of having multiple files of a centralized file, coupled with the lack of instruction or directive ordering or ensuring that the entire contents of the investigative files be produced, left detectives and subpoena personnel confused about their disclosure obligations. Ex. 3 (Hickey Dep. in *Rivera*) at 36-37, 162-64, 25354 (testifying to subpoena clerks and detectives questioning what they were required to produce in response to subpoenas, including whether investigative files had to be produced); Ex. 56 (Hickey/Spratte Trial Testimony in *Rivera*) at 3285:5-8; Ex. 13 (Winstrom Dep.) at 106-107 (S.O. 86-3 does not direct to turn the investigative file over to prosecutors and criminal defense), 192-94 (no instructions to subpoena clerks for responding to subpoena in homicide case), 209 (no audits or inspections to ensure that all documents related to homicide investigations be produced in response to subpoenas); Ex. 12 (S.O. 86-3); Ex. 2 (Shadur Order) at 9-10.

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record. *See Malec,* 191 F.R.D. at 583. Defendant City further objects as it is not supported by admissible evidence. Specifically, Plaintiffs improperly rely on the March 31, 1983, Memorandum Opinion and Order issued by Judge Shadur in *Palmer v. City of Chicago,* No. 82 C 2349 (Pl. Ex. 70) to establish "facts" recited in court opinions. Court opinions are hearsay. *See Taylor,* 2012 WL 669063, at \*1 (Shadur, J) (A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)).**

**Subject to and without waiving these objections, denied. In 2021, Commander Winstrom testified, as a 30(b)(6) witness where he was designated to discuss the City's policies, practices, training and customs in effect from 1986-1998 related to the documentation and preservation of information learned during a homicide investigation, including the storage, location and movement of homicide files and responding to subpoenas. (Dkt. 685-14, Ex. 13 at 159:5-17; Def's Ex. D, *Solache/Reyes,* Rule 30(b)(6) Deposition Notice). He testified that the process once**

a member of the subpoena unit received a subpoena would be for "the individual to read the subpoena and make a determination by the contents of the subpoena of where the subpoena should be delivered ... to obtain the records needed." (Dkt. 685-14, Ex. 13 at 189:8-12). Subpoena clerks also had the resources of a sergeant to ask for direction when they were confused or unable to understand a subpoena request. (Dkt. 685-4, Ex. 3 at 163:79). Responding further, and for clarification purposes, the testimony from James Hickey pertained to when he was working in the Records Division in the early 2000s, years *after* the events of this lawsuit took place and not when he was assigned to the subpoena service unit or the detective division. (Dkt. 685-4, Ex. 3 at 253:21-24). In further response, the conversations Hickey recalled, were whether the investigative file needed to be turned over if it was not specifically requested. *Id.*

37.     Despite Judge Shadur's express guidance regarding the deficiencies in CPD's policies, the policy applied only to the Detective Division, and not investigators in other divisions and special units, including patrol officers and gang crimes officers. Ex. 12 (S.O. 86-3); Ex. 3 (Hickey Dep. in Rivera) at 54-55, 86-88; Ex. 16 (Hickey/Spratte Trial Testimony in Rivera) at 3388:9-3389:5.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record and is argumentative ("Despite Judge Shadur's express guidance the deficiencies in CPD's policies, the policy applied only to"). *See Malec*, 191 F.R.D. at 583; *see also Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.), *aff'd*, 926 F.3d 409 (7th Cir. 2019) (statements of fact should not contain legal argument and responses to the opposing party's statement of facts are not the place for "purely argumentative details" or "legal conclusions.")**

**Subject to and without waiving these objections, denied. Defendant City states that the policies related to investigative files, and the training that stemmed from those policies, applied to all within the Bureau of Investigative Services. (Dkt. 685-4, Ex. 3 at 54:22-55:9). However, members of the Chicago Police Department who were gang crimes specialists, were part of the Patrol Division, and were therefore subject to Patrol Division orders.**

**To the extent that Plaintiffs are stating as a matter of fact that the City violated Judge Shadur's order or "guidance," the City denies that CPD's policy violated Judge Shadur's order or "guidance," or that Judge Shadur's order was binding on CPD. The *Palmer* litigation, which Plaintiffs cite as the basis for support of this "fact" was an *unsuccessful* class**

action lawsuit against the City of Chicago challenging the "constitutionality of the Chicago Police Department's alleged practice of concealing exculpatory material collected in criminal investigations and lodged in the department's informal 'street files.'" *Palmer II*, 806 F.2d at 1317. Judge Shadur's order was vacated. *See Palmer v. City of Chicago*, 562 F. Supp. 1067 (N.D. Ill. 1983) *rev'd Palmer v. City of Chicago*, 755 F.2d 560 (7th Cir. 1985) (*Palmer I*). The Seventh Circuit held it was CPD's responsibility, as public officials, to draft policies and internal guidelines that incorporate the constitutional standard of preservation and assure criminal defendants the due process safeguard of a fair trial, noting that the Federal Courts have "no business, whatsoever, meddling in or attempting to control the daily maintenance and administration of the CPD and the Cook County State's Attorney's office, absent a clear and defined constitutional violation." *Palmer I*, 755 F.2d at 578. Still, to address the class plaintiffs' accusation that they could not establish a constitutional violation if the evidence was in the hands of CPD, the *Palmer I* Court granted the plaintiffs' request to preserve all "street files" for the subclass A plaintiffs. *Id.* at 572. Those plaintiffs were permitted to inspect over 300 "street files" for exculpatory evidence. *Palmer II*, 806 F.2d at 1317. Notwithstanding their search of each file, the *Palmer* plaintiffs failed to uncover even one piece of undisclosed exculpatory evidence. *Id.* at 1324 ("their claim depends on there being exculpatory material in the 'street files' – and there isn't any"). Ultimately, the Seventh Circuit found that the class-plaintiffs failed to prove any systematic constitutional violations as a result of the City's street file practice and overruled the District Court's holdings. *Id.* at 1320.

38.     Despite Judge Shadur's express guidance regarding the deficiencies in CPD's policies, the policy failed to provide any definition of what was "relevant" or "pertinent" information that needed to be documented, thus permitting detectives to make subjective decisions about what was relevant, and could do so based on subsequent information learned during the investigation. The City's designees acknowledged that given this lack of instruction, detectives could reach different decisions about what needed to be documented. Detectives could, for example, determine that leads and investigative efforts into an alternate suspect could be deemed not pertinent or irrelevant, and thus would not need to be documented or disclosed. Ex. 12 (S.O. 86-3); Ex. 2 (Shadur Order) at 5-6; Ex. 7 (Hickey Dep. in *Kluppelberg*) at 237:1722 (not the policy of the department to require eliminated suspects to be identified in supplemental reports), 339; Ex. 13 (Winstrom Dep.) at 64-66, 89-90, 99:6-10 ("Q. Does this policy provide

any guidance about what information is to be treated as relevant and not relevant? A. This policy just says relevant information, no.").

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record and it is argumentative ("Despite Judge Shadur's express guidance regarding the deficiencies in CPD's policies, the policy failed to," "thus permitting detectives to make subjective decisions," "given this lack of instruction, detectives could.") *See Malec*, 191 F.R.D. at 583; *see also Uncommon, LLC v. Spigen, Inc.*, 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.), *aff'd*, 926 F.3d 409 (7th Cir. 2019) (statements of fact should not contain legal argument and responses to the opposing party's statement of facts are not the place for "purely argumentative details" or "legal conclusions.") Defendant City further objects as it is not supported by admissible evidence. Specifically, Plaintiffs improperly rely on the March 31, 1983, Memorandum Opinion and Order issued by Judge Shadur in *Palmer v. City of Chicago*, No. 82 C 2349 (Dkt. 685-3 Ex. 2) to establish "facts" recited in court opinions. Court opinions are hearsay. *See Taylor*, 2012 WL 669063, at \*1 (Shadur, J) (A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)).**

**Subject to and without waiving these objections, denied. In 2021, Commander Winstrom testified, as a 30(b)(6) witness where he was designated to discuss the City's policies, practices, training and customs in effect from 1986-1998 related to the documentation and preservation of information learned during a homicide investigation, including the storage, location and movement of homicide files and responding to subpoenas. (Dkt. 685-14, Ex. 13 at 159:5-17; Def's Ex. D, *Solache/Reyes* Rule 30(b)(6) Deposition Notice). Commander Winstrom testified consistently that Detectives were required to include relevant information in supplementary reports, and whether information was determined to be relevant was done on a case-by-case basis by the detectives working the case. (Dkt. 685-14, Ex. 13 at 64-67). He further testified that Plaintiff's description of the policy, as described in this paragraph, was a "cynical way of changing what [he] said[,]" and reiterated that detectives were required to include relevant information." (*Id.* at 63). Moreover, in 2014, James Hickey testified as a 30(b)(6) witness in *Kluppelberg v. Burge*, and expressly disagreed with Plaintiff's example and testified that "if a suspect was seriously considered and was ruled out through investigative activity, there should be some mention of it[]" in a supplementary report. (Dkt. 685-8, Ex. 7 at 237:17-238:7).**

**To the extent that Plaintiffs are stating as a matter of fact that the City violated Judge Shadur's order or "guidance," the City denies that CPD's policy was in violation of Judge Shadur's order or "guidance," or that Judge Shadur's order was binding on CPD. The *Palmer* litigation, which Plaintiffs cite as the basis for support of this "fact" was an**

*unsuccessful* class action lawsuit against the City of Chicago challenging the "constitutionality of the Chicago Police Department's alleged practice of concealing exculpatory material collected in criminal investigations and lodged in the department's informal 'street files.'" *Palmer II*, 806 F.2d at 1317. Judge Shadur's order was vacated. *See Palmer v. City of Chicago*, 562 F. Supp. 1067 (N.D. Ill. 1983) *rev'd Palmer v. City of Chicago*, 755 F.2d 560 (7th Cir. 1985) (*Palmer I*). The Seventh Circuit held it was CPD's responsibility, as public officials, to draft policies and internal guidelines that incorporate the constitutional standard of preservation and assure criminal defendants the due process safeguard of a fair trial, noting that the Federal Courts have "no business, whatsoever, meddling in or attempting to control the daily maintenance and administration of the CPD and the Cook County State's Attorney's office, absent a clear and defined constitutional violation." *Palmer I*, 755 F.2d at 578. Still, to address the class plaintiffs' accusation that they could not establish a constitutional violation if the evidence was in the hands of CPD, the *Palmer I* Court granted the plaintiffs' request to preserve all "street files" for the subclass A plaintiffs. *Id.* at 572. Those plaintiffs were permitted to inspect over 300 "street files" for exculpatory evidence. *Palmer II*, 806 F.2d at 1317. Notwithstanding their search of each file, the *Palmer* plaintiffs failed to uncover even one piece of undisclosed exculpatory evidence. *Id.* at 1324 ("their claim depends on there being exculpatory material in the 'street files' – and there isn't any"). Ultimately, the Seventh Circuit found that the class-plaintiffs failed to prove any systematic constitutional violations as a result of the City's street file practice and overruled the District Court's holdings. *Id.* at 1320.

39.     The Subpoena Service Unit in the Records Division handled requests for discovery from prosecutors and criminal defendants, but CPD had no policies, procedures, checklists, or other documents requiring, or explaining, how the Subpoena Service Unit staff were supposed to gather all responsive documents, or providing guidance to assist them in requesting material from all the right repositories. As a result, the process of responding to requests for police files was more of an "art," and whether prosecutors and criminal defendants received all of the documents and investigative material associated with a case was primarily a question of luck. Ex. 16 (Hickey Trial Testimony in Rivera) at 3284:17-19; Ex. 7 (Hickey Dep. in Kluppelberg) at 362-63; Ex. 3 (Hickey Dep. in Rivera) at 36:11-37:4, 43-46, 185-87; Ex. 13 (Winstrom Dep.) at 192-94.

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is argumentative ("primarily a question of luck.")** *See Malec*, **191 F.R.D. at 583;** *see also Uncommon, LLC v. Spigen, Inc.,* **305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.),** *aff'd*, **926 F.3d 409 (7th Cir. 2019) (statements of fact should not contain legal argument**

and responses to the opposing party's statement of facts are not the place for "purely argumentative details" or "legal conclusions.")

**Subject to and without waiving these objections, Defendant City admits in part and denies in part. The City admits that there was not a specific directive that governed the Subpoena Service Unit within CPD, and that James Hickey testified that when he had command over the unit in the early 2000s, the process of responding to subpoenas was "both technical and an art form." (Dkt. 685-4, Ex. 3, at 161:18-162:12). Specifically, James Hickey testified that the "personnel assigned to the subpoena processing unit, received on-the-job training. For the time period in question certainly the topic of investigative files had become common – common terminology." (Dkt. 685-4, Ex. 3, at 161:18-162:12). The City denies that CPD did not provide any guidance to assist the Subpoena Service Unit Staff and that whether prosecutors and criminal defendants received all the documents and investigative material was a "question of luck." Rather, James Hickey testified that members of the Subpoena Services unit would get a request, and use their best experience and judgment to direct the responsive units to cause a search for their individual records. (Dkt. 685-17, Ex. 16 Hickey Trial Testimony at 3284:7-12). He further testified that the staff at the Subpoena Services Unit had a "working relationship[] with the file clerks in all the units" and also "kept a record of the place or units" that requests were being sent to. (Dkt. 685-8, Ex. 7 Hickey Dep in *Kluppelberg* at 362:8-20).**

40.     In 2020, the City of Chicago's Office of Inspector General issued a report regarding the CPD's practices concerning the disclosure of police records to criminal defendants and civil plaintiffs, which included a review of case studies from 2010-2013, information regarding nine instances in which the City was sanctioned by federal judges from May 2011 through February 2018, and interviews with more than a dozen CPD employees. The OIG found that "CPD's records management and production processes are inadequate to meet its constitutional and legal obligations." Ex. 17 (June 2020 OIG Report) at 4-5 (finding that the units responsible for responding to subpoenas and records requests "cannot ensure that they are identifying and locating all responsive records for production" and that "members [of the Subpoena Unit] routinely do not attempt to identify paper records, as they cannot determine which of the CPD's units may hold such records"); see also Ex. 18 (Sept. 2021 OIG Follow-Up Report) at 2; Ex. 8 (Tiderington Report) at 34.

**RESPONSE:** Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence and is argumentative. *See Malec,* 191 F.R.D. at 583; *see also Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.) (statements of fact should not contain legal argument). Defendant City further objects to Plaintiffs' reliance on Plaintiffs' expert report to support a purported fact and summary judgment. *See Sommerfield,* 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 685-9, Ex. 8, Declaration of Thomas Tiderington signed 4/5/24). To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw,* 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Specifically, the June 2020 and September 2021 OIG reports, cited in this paragraph reviewed the processes and directives from 2017 through 2019, twenty (20) years *after* the arrest and prosecution of Plaintiffs. Defendant City further objects to Plaintiffs' reliance on Plaintiffs' expert report to support a purported fact and summary judgment. *See Sommerfield,* 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403).

Subject to and without waiving these objections, Defendant City admits in part and denies in part. The City admits that the OIG released a report in June 2020 and September 2021, but denies that the reports "adequately reflect[ed] the current discovery and records processes within the Department" CPD noted that the OIG failed to take into account the volume of subpoenas and document requests handled by CPD in criminal and civil cases per year without mistake. *See* Dkt. 685-18, Ex. 17 at Appendix B: CPD's Response. Rather, CPD flatly rejected the OIG's conclusions, which were reached from citing a handful of discovery sanctions. *Id.* Further answering, each case cited by the OIG has led to a "material improvement in CPD's document production and management systems." *Id*.

41.    During expert discovery, the Defendants disclosed five retained experts. Among them, they disclosed one former law enforcement practitioner to opine about the underlying investigation in this matter and whether it comported with generally accepted police practices, Nelson Andreu. Andreu is not offering any opinions whatsoever about whether CPD's policies regarding documentation and disclosure generally, and Special Orders 83-1 and its progeny specifically is an adequate or sound policy. In addition, the City also disclosed a former prosecutor, Bernard Murray, to opine about criminal discovery in Cook County; Mr. Murray has never worked

in a police department and concedes he is not offering any opinions about whether the documentation and disclosure policies at issue are adequate or sound policies. Ex. 19 (Defendants' Rule 26(a)(2) Disclosures); Ex. 20 (Andreu Report) (no opinions regarding Monell claims, including the policies at issue or their adequacy to address problems identified during Jones/Palmer); Ex. 21 (Murray Report) (same); Ex. 22 (Murray Dep. in Solache/Reyes) at 38:21-25 (only professional experience is as a prosecutor); 87:13-19, 107:18-109:19, 114:12-115:12.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiff's motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Specifically, whether the City disclosed any experts to opine on "whether CPD's policies regarding documentation and disclosure generally, and Special Orders 83-1 and its progeny specifically is an adequate or sound policy" is not material. *Damiani v. Allen*, No. 4:16-cv-00053-RLY-DML, 2018 WL 4095080, at \*6 (S.D. Ind. Aug. 28, 2018) (stating "[w]hether the officers violated accepted police practices does not determine the outcome of Plaintiff's constitutional claims").**

**Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) by including multiple allegations, and because it is argumentative. *See Malec*, 191 F.R.D. at 583. Defendant City further objects because the record citations do not support the assertions. *See Malec*, 191 F.R.D. at 583. Specifically, Plaintiffs cherry-pick Mr. Murray's deposition testimony to present a distorted picture of his opinions.**

**Subject to and without waiving these objections, Defendant City admits in part and denies in part. The City admits that it retained Nelson Andreu to opine on various aspects of the police investigation which led to Plaintiffs' criminal convictions and not about the policies and practices of the Chicago Police Department. The City further admits that it hired Bernard Murray, but denies that his opinions were limited to criminal discovery in Cook County. (*See* Dkt. 685-22, Ex. 21, Murray's Expert Report, at §II, Discovery Obligations, and §V Comparison of Permanent Retention/RD Files). Mr. Murray further opined that Tiderington's opinions were deficient for a variety of reasons, including but not limited to Tiderington's assumption that documents that were missing from criminal defense files today establishes that the documents were withheld from criminal defendants, his failure to review the prosecutors' files, and his failure to account for the significant redactions to the criminal defense files. (*Id.* at pp. 1-3). Mr. Murray further opined on the interactions between prosecutors in Cook County and CPD to ensure that the prosecutor's discovery obligations were fulfilled, including the effect of S.O. 83-1 and its progeny on that process. (*Id.* at pp. 39). Mr. Murray further opined about the deficiencies in Tiderington's opinions about CPD's use of a decentralized file**

keeping system. (*Id*. at pp. 10-11). Mr. Murray also analyzed some of the same files highlighted in Tiderington's report and opined on the deficiencies of Mr. Tiderington's analysis, including but not limited to explaining that certain documents Tiderington claims was missing from the criminal defense file were for cases where no charges were filed and that certain documents that Tiderington claims were withheld were identified in on a signed discovery receipt retained in the prosecutor's file. (*Id.* at pp. 11-24).

## POLICIES DID NOT MEANINGFULLY CHANGE OVER TIME

42.     The City of Chicago has admitted that its written policies regarding the documentation and disclosure of investigative information did not change between 1983 and 2012. Ex. 23 (Loughran Dep. in Taylor) at 40:12-16 (testifying that the CPD policy regarding homicide files did not change from 1992 to 2012); Ex. 13 (Winstrom Dep.) at 43:7-46:2 (agreeing that the policies applying to documentation in homicide investigations from 1986 to 1998 were "nearly identical," and despite some "difference[s] in wording," the "overall policy is the same"); see also id. at 46:19-23 ("Q. Okay. So in the period from 1986 through 1998, is it correct that the policies with regard to documentation of homicide investigations were the same across all detective areas? A. Correct."); Ex. 3 (Hickey Dep. in Rivera) at 119:7-9 (testifying that the policy regarding records retention was consistent from 1983 to 2011); see also id. at 123:11-17 (same); Ex. 5 (Hickey Dep. in Fields) at 43:1-7 (noting that nothing was done after S.O. 83-1, effective in 1983, to review the document retention process, nor was there any new directive as to documentation in investigative or street files).

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record and is argumentative.** ***See Malec,*** **191 F.R.D. at 583;** ***see also Uncommon, LLC v. Spigen, Inc.,*** **305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.),** ***aff'd,*** **926 F.3d 409 (7th Cir. 2019) (statements of fact should not contain legal argument and responses to the opposing party's statement of facts are not the place for "purely argumentative details" or "legal conclusions.") Specifically, the cited testimony from Kathleen Loughran discusses the retention of homicide files from 1992-2012, not documentation and disclosure policies. (Dkt. 685-24, Ex. 23 Loughran Dep at 40:12-16). Further, the cited deposition testimony from James Hickey in** ***Rivera v. Guevara,*** **discusses the fact that cleared open and open homicide files should stay at the area indefinitely. (Dkt. 685-4, Ex. 3 Hickey Dep. at 123:11-17). Finally, James Hickey's testimony from the** ***Fields v. City***

*of Chicago,* deposition discussed auditing of the implementation of 83-1. (*See* Dkt. 685-6, Ex. 5 Hickey Dep. at 43:1-4).

Subject to and without waiving these objections, denied. Commander Winstrom testified that Detective Division Standard Operating Procedures went into place in 1988 and were in effect through 1998. When asked about substantive changes between S.O. 86-3 and the 1988 Detective SOPs, he stated "there is a difference in wording. There may be something substantive procedurally that I didn't pick up on, the overall *policy theme* is the same." (*See,* Dkt. 685-14, Ex. 13, Winstrom Dep. at 44:21-45:5) (emphasis added). Commander Winstrom went on to discuss how orders, such as S.O. 86-3 would have applied to the entire detective division across the entire department, and that from 1986-1998, policies with regard to documentation of homicide investigations were the same *across all detective division areas.* (*Id.* at 46:3-23). Finally, the evolution of the various Special Orders related to file maintenance are discussed in depth in the City's Memorandum of Law in Support of Summary Judgement, Dkt. 731 at §II; *see also* Def. City's 56.1(a)(3) SOF, Dkt. 730, at ¶¶ 15-20, 26-27.

43.     Even though S.O. 83-1 was considered a "major change" in policy, no steps were ever taken to establish any clear guidelines or protocols on how to check or audit whether these "major changes" were actually being implemented and no steps were ever taken to record, or document any auditing to establish that the "major change" required by the Special Order was actually being implemented and followed. Ex. 6 (April 10, 2014 Hickey Testimony, Fields v. City of Chicago) at 2053:24-2054:1; Ex. 3 (Hickey Dep. in Rivera) at 244, 247, 249; Ex. 4 (Hickey Testimony from 2016 Fields Trial) at 35:11-25; Ex. 14 (Cline Dep. in *Reyes*) at 43:1315, 47:5-13.

RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The policies described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by fifteen years. Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record and it is argumentative ("Even though," "no auditing or other steps were taken to ensure." *See Malec,* 191 F.R.D. at 583; *see also Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.), *aff'd,* 926 F.3d 409 (7th Cir. 2019) (statements of fact should not contain legal argument and responses to the opposing party's statement of facts are not the place for "purely

**argumentative details" or "legal conclusions.")** Subject to and without waiving these objections, admit in part and denied in part. The City admits that James Hickey was asked during direct examination in his 2014 testimony in *Fields v. City of Chicago*, if it was "fair to say that 83-1 was ... 83-1 was a major change in the way notes were considered within the police department?" and that he responded, "It was." (*Dkt. 685-7, Ex. 6, Hickey Testimony at 2053:24-2054:1*). The City denies the remainder of this paragraph. James Hickey testified that while he did not know of a special audit procedure that was implemented, it was the "function of a supervisor, it's a responsibility [of] ever[y] supervisor[] to make sure that the employees, the members of the Chicago Police Department are doing their job and following the department directives." (*See, Dkt. 685-4, Ex. 3, Hickey Dep. at 244:5-19*). James Hickey also testified in *Fields v. City of Chicago,* that in 1986, a section was added to the policy regarding investigative files to have commanding officers "conduct random inspections" of investigative files. (*See, Dkt. 685-5, Ex. 4, Hickey Testimony at 35: 11-17*).

Finally, retired Commander Philip Cline testified that he conducted multiple audits of the files when he was a Lieutenant at Area 2. (*See Dkt. 685-15, Ex. 14, Deposition of Philip Cline at 42:24-43:6*). Further answering, Commander Cline testified that "a supervisor would go through the file and make sure that the – the proper reports were in there, that the GPRs were approved, everything that – to get these files ready for court or continue the investigation of an unsolved crime." These audits were both "regular check-ins to make sure the files were as they were supposed to be *and* were specific to assessing compliance with the policy change. (*Id.* at 43:16-20).

44.     Rather than checking out the investigative file, where all memos and notes were supposed to be stored and preserved (on general progress reports), detectives reverted back to keeping personal files with their own copies of investigative material. Ex. 7 (Hickey Dep. in Kluppelberg) at 327-29.

**RESPONSE:** To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The events described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by fifteen years. Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record, and it is argumentative ("Rather than checking," "reverted back.") *See Malec*, 191 F.R.D. at 583; *see also Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.), *aff'd*, 926 F.3d 409 (7th Cir. 2019) (statements of fact should not contain legal argument and responses to the opposing party's statement of facts are not the place for "purely argumentative details" or "legal conclusions.") Subject to and without waiving these objections, denied. Specifically, Hickey testified that after 83-1 was implemented, department members were aware that "sometimes some detectives [were]

**not signing out the investigative files <u>and</u> [had] personal copies of some documents." (*See*, Dkt. 685-8, Ex. 7, Hickey Dep at 327:4-7) (emphasis added). He further testified that supervisors were responsible for making sure that the information amassed by the detectives, including their own copies, were getting turned in and made part of the investigative file, and that he believed that it was happening. (*Id.* at 328:3-15).**

**Finally, retired Commander Philip Cline testified that he conducted multiple audits of the files when he was a Lieutenant at Area 2. (*See* Dkt. 685-15, Ex. 14, Deposition of Philip Cline at 42:24-43:6). Further answering, Commander Cline testified that "a supervisor would go through the file and make sure that the – the proper reports were in there, that the GPRs were approved, everything that – to get these files ready for court or continue the investigation of an unsolved crime." These audits were both "regular check-ins to make sure the files were as they were supposed to be *and* were specific to assessing compliance with the policy change. (*Id.* at 43:16-20).**

45.     The substantively unchanged documentation policy resulted in other wrongful prosecutions and convictions in which relevant investigative information was withheld from criminal defendants, including for example, Nathson Fields, James Kluppelberg, and Jacques Rivera. Ex. 3 (Hickey Dep. in Rivera) at 55:5-24; *Fields v. City of Chicago*, No. 10 C 1168, 2014 WL 477394, at *7 (N.D. Ill. Feb. 6, 2014)(citing to Fields' street file); Ex. 24 (Fields Street File); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1028 (N.D. Ill. 2018), op. clarified, No. 12-CV-04428, 2018 WL 11469072 (N.D. Ill. May 17, 2018); Ex. 25 (Rivera Street File); Ex. 26 (Rivera Permanent Retention File); Ex. 27 (Order on Kluppelberg Certificate of Innocence); Ex. 28 (Brasfield Report) Attachment I at 11, Attachment H at 40-45; *Fields v. City of Chicago*, No. 10 C 1168, 2017 WL 4553411, at *3 (N.D. Ill. Oct. 12, 2017), aff'd, 981 F.3d 534 (7th Cir. 2020); Ex. 8 (Tiderington Report) at 60-62.

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record, and it is argumentative ("substantively unchanged documentation policy," "other wrongful prosecutions and convictions," "withheld.") *See Malec*, 191 F.R.D. at 583; *see also Uncommon, LLC v. Spigen, Inc.*, 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.) (statements of fact should not contain legal argument); *see also Judson Atkinson Candies v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n. 2 (7th Cir. 2008) ("It is inappropriate to make legal arguments in a Rule 56.1 statement of facts"). Defendant City further objects as it is not supported by admissible evidence, specifically, the citations to an expert report from previous and current litigation, and plaintiff Kluppelberg's certificate**

of innocence, which are hearsay. *See Sommerfield v. City of Chicago,* 254 F.R.D. 317, 329 (N.D. Ill. 2008) (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 685-9, Ex. 8, Declaration of Thomas Tiderington signed 4/5/24). S*ee also Taylor v. City of Chicago,* 2012 WL 669063, at *1 (N.D. Ill. Feb. 29, 2012) (Shadur, J)(A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)). Finally, Defendant City objects to the extent that this paragraph states a legal conclusion rather than a material fact. *See Tel-Lock, Inc. v. Thomson Consumer Electronics,* 2005 WL 741930, at * 2 (N.D. Ill Mar. 30 2005).

Subject to and without waiving these objections, denied. There is no record support for the assertion that Dkt. 685-25, Ex. 24 is the "Fields Street File," that Dkt. 685-26, Ex. 25 is the "Rivera Street File," that Dkt. 685-27, Ex. 26 is the "Rivera Permanent Retention File," or that the documents comprising those exhibits, whatever they are, or Hickey's testimony in *Rivera,* establish that the City had a "substantively unchanged documentation policy" or that any City policy "resulted in other wrongful prosecutions and convictions in which relevant investigative information was withheld from criminal defendants." Similarly, Kluppelberg's certificate of innocence order, Brasfield's report, and Judge Kennelly's order denying the City's post-trial motions in *Fields v. City of Chicago,* do not establish that the City's "substantively unchanged documentation policy resulted in other wrongful prosecutions and convictions in which relevant investigative information was withheld from criminal defendants." Rather these are hearsay. Specifically, Plaintiffs' reliance on *exhibits* to an expert report from an unrelated litigation is quintessentially hearsay, given that it is being used for the truth of the matter asserted. *See Sommerfield v. City of Chicago,* 254 F.R.D. 317, 329 (N.D. Ill. 2008) (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Plaintiffs have no foundation to rely on the exhibits attached to an expert report from a previous litigation where the expert was not retained or deposed in this litigation. *See Ideal Mfg. & Sales Corp. v. Pase Grp., Inc.,* 2008 WL 11463582, at *9 (E.D. Wis. Nov. 24, 2008) ("'[W]hile an unsworn expert report, standing alone, does not constitute admissible evidence that can be considered at the summary judgment stage of proceedings, and will not defeat a motion for summary judgment, an unsworn expert report may be considered where the opinions therein are otherwise adopted or reaffirmed in an *admissible affidavit or deposition testimony* by the expert.'" (quoting *Maytag Corp. v. Electrolux Home Products, Inc.,* 448 F.Supp.2d 1034, 1065 (N.D. Iowa 2006)(emphasis added)).

Similarly, legal opinions are also hearsay. *See Taylor,* 2012 WL 669063, at *1 (Shadur, J)(A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)).

46. Fields's police practices expert, Michael Brasfield, conducted a comprehensive

analysis of 429 Chicago Police Department homicide files, summaries of which were introduced

as substantive evidence, which was almost entirely unrebutted, and which showed that the policy of evidence suppression continued, at minimum, from 1983 to 1989, and from 1999 to 2009, across the City of Chicago, in Chicago Police Department Detective Areas 1, 2, 3, and 4. Ex. 29 (Fields AM Trial Tr. 11/29/16) at 120:9-19, 121-133; Ex. 30 (Brasfield Summary of Voluminous Records—Comparing Basement, Criminal Defense and Permanent Retention Files).

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record or admissible evidence, is argumentative ("comprehensive analysis") and fails to cite to any "specific evidentiary material." *See Malec,* 191 F.R.D. at 583. Specifically, Plaintiffs' reliance on an exhibit that they state are "summaries" they claim "were introduced as substantive evidence" somewhere, which they also claim "was almost entirely unrebutted," prepared by an unidentified source are hearsay. Plaintiffs have provided no foundation for the "summaries." The City further objects to reliance on "summaries" of unknown origin without any identifying information or explaining any context for the citations in violation of Federal Rules of Evidence 1006. *See* Fed. R. Evid. 1006. Finally, Defendant City objects to the extent that this paragraph states a legal conclusion rather than a material fact ("policy of evidence suppression.") *See Tel-Lock, Inc.,* 2005 WL 741930, at \*2.**

**Subject to and without waiving these objections, denied. Further answering and for clarification, the City denies that plaintiff Fields proved a policy of evidence suppression that continued, from 1983-1989, and 1999-2009, and denies that the jury found that a "failure to disclose the street file to Mr. Fields was the result of a pattern and practice of the Chicago Police Department." Plaintiffs fail to substantiate this assertion with record evidence. Responding further, the verdict entered against the City was a general verdict and did not specify the policy for which it found the City liable was a "pattern and practice." (Def's Ex, E, *Fields* Jury Verdict). To the contrary, the plaintiff in *Fields* argued four different "policies" for which the jury could find the City liable. (Def's Ex. F, *Fields v. City of Chicago,* Trial Transcripts, closing arguments, p. 136-137) ("That brings you to the policy claim ...We win if we can show any of them. If we can show an express policy, if we can show there was a practice or we can show training or notice to a policymaker. Actually, there's four ways we can win.")**

47.     Brasfield testified that approximately 80% of the criminal defense files were missing handwritten notes from the CPD files, 46% were missing general progress reports (on

which detectives take notes), and 36% were missing inventories. Ex. 31 (Fields PM Trial Tr. 11/29/16) at 3:6-4:13, 7:7-8:8 (citing statistics referenced above), 126:4-130:14.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record. *See Malec*, 191 F.R.D. at 583. Specifically, the cited testimony at 3:6-4:13 and 7:7-8:8 does not support the calculations and statistics provided in this paragraph. Finally, Defendant City objects to the extent that this paragraph states a legal conclusion rather than a material fact. *See Tel-Lock, Inc.*, 2005 WL 741930, at \*1.**

**Subject to and without waiving these objections, the City admits that Brasfield testified to those calculations and statistics but clarifies that he testified that those calculations were based upon his comparison of 23 criminal defense files from the 1983 to 1989 time period and 27 criminal defense files from the 1999 to 2009 time period to the "basement files." (Dkt. 685-32, Ex. 31 at 6:9-23, 7:7-8:8).**

48.     In December 2016, the jury in Fields found that the failure to disclose the street file to Mr. Fields was the result of a pattern and practice of the Chicago Police Department, and awarded Mr. Fields compensatory damages of $22 million. Discovery in Fields revealed dozens of other street files in the Area Central basement. Ex. 30 (Brasfield Summary of Voluminous Records—Comparing Basement, Criminal Defense and Permanent Retention Files). At the trial in Mr. Fields's case, additional evidence in support of the conclusion that the City had a street file practice was presented, including the following:

   a.   Defendants and other CPD employees testified that there were frequently widespread departures from written policies; that they did not even know new written policies had been put in place in the 1980s; that they considered investigative materials their personal property, and would not transcribe all investigative leads into official reports; and that there was no mechanism for

reporting missing investigative materials. *See* Ex. 32 (*Fields* Trial Tr. 11/23/16) at 78:8-25, 79:1-8; Ex. 33 (*Fields* Trial Tr. 12/1/16) at 124:25-125:23; Ex. 34 (*Fields* Trial Tr. 11/17/16) at 103:5-8, 112:3-9; Ex. 35 (*Fields* Trial Tr. 11/28/16) at 30:23-31:22, 31:23- 25, 32:14-24, 52:5-112; Ex. 36 (*Fields* Trial Tr. 12/6/16) at 85:8-86:7, 95:22-96:5, 97:2-19; Ex. 37 (*Fields* Trial Tr. 12/5/16) at 137:5-22.

b. Street files were kept and suppressed in violation of Brady in the cases of Jon Fulton, Timothy Malone, and James Crockett. Ex. 32 (*Fields* Trial Tr. 11/23/16) at 12:3-14:15, 17:1-21:12, 18:10-17; Ex. 29 (*Fields* AM Trial Tr. 11/29/16) at 111:2-115:18; Ex. 38 (Fields Trial Tr. 12/8/16) at 29:13-31:8, 31:9-34:5, Ex. 39 (Fields Trial Tr. 12/7/16) at 69:8-21; Ex. 40 (Fields Trial Tr. 11/30/16) at 31:2-15, 32:11-33:20, 41:8-42:8; 58:1-61:1.

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) by including multiple allegations, s*ee Malec*, 191 F.R.D. at 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response"), and it is argumentative ("dozens of undisclosed files," "frequently widespread departures," "they did not even know," "they considered," "important investigative materials.") *See Malec*, 191 F.R.D. at 583; *see also Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.), *aff'd*, 926 F.3d 409 (7th Cir. 2019) (statements of fact should not contain legal argument and responses to the opposing party's statement of facts are not the place for "purely argumentative details" or "legal conclusions"); *see also Judson Atkinson Candies v. Latini-Hohberger Dhimantec,* 529 F.3d 371, 382 n. 2 (7th Cir. 2008) ("It is inappropriate to make legal arguments in a Rule 56.1 statement of facts.") Further objecting, the records cited do not support the contentions in this paragraph, in violation of N.D. Ill. L.R. 56.1(d). Specifically, none of the cited testimony supports Plaintiffs' contention that the file of investigative information were not disclosed, that exculpatory information was systematically withheld pursuant to a pattern or practice, or that any investigative materials were suppressed.**

**Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported admissible evidence and fails to cite to any "specific evidentiary material." *See Malec,* 191 F.R.D. at 583. Specifically, Plaintiffs' reliance on an exhibit that they state are "summaries" they claim revealed undisclosed files in discovery prepared by an unidentified source are hearsay. Plaintiffs have provided no foundation for the "summaries." The City further objects to reliance on "summaries" of unknown origin without any identifying**

information or explaining any context for the citations in violation of Federal Rules of Evidence 1006. *See* Fed. R. Evid. 1006. Finally, Defendant City objects to the extent that this paragraph states a legal conclusion rather than a material fact. *See Tel-Lock, Inc.,* 2005 WL 741930, at *2.

Subject to and without waiving these objections, admit in part and denied in part. The City admits that the jury in *Fields* found in favor of the plaintiff and awarded him $22 million dollars. The City denies that the jury found that a "failure to disclose the file of investigative information to Mr. Fields was the result of a pattern and practice of the Chicago Police Department." Rather, the verdict entered against the City was a general verdict and did not specify the policy for which it found the City liable was a "pattern and practice." (Def's Ex. E, *Fields* Jury Verdict). To the contrary, the plaintiff in *Fields* argued four different "policies" for which the jury could find the City liable. (Def's Ex. F, *Fields v. City of Chicago,* Trial Transcripts, closing arguments, p. 136-137) ("That brings you to the policy claim ...We win if we can show any of them. If we can show an express policy, if we can show there was a practice or we can show training or notice to a policymaker. Actually, there's four ways we can win.")

49.     Police practices expert Tom Tiderington confirms that his findings—that the CPD's policies related to the documentation, storage/preservation, and disclosure of information learned during homicide investigations was contrary to generally accepted police practices—are consistent with the findings of the City of Chicago's own Office of Inspector General, whose 2020 report stated that "CPD's records management and production processes are inadequate to meet its constitutional and legal obligations." Ex. 8 (Tiderington Report) at 34; Ex. 17 (June 2020 OIG Report) at 4-5 (finding that the units responsible for responding to subpoenas and records requests "cannot ensure that they are identifying and locating all responsive records for production" and that "members [of the Subpoena Unit] routinely do not attempt to identify paper records, as they cannot determine which of the CPD's units may hold such records"); see also Ex. 18 (Sept. 2021 OIG Follow-Up Report) at 2.

RESPONSE: Defendant City objects to this paragraph as it is not supported by admissible evidence. *See Sommerfield v. City of Chicago,* 254 F.R.D. 317, 329 (N.D. Ill. 2008) (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed long after

Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 685-9, Ex. 8, Declaration of Thomas Tiderington signed 4/5/24).

To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; *see also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Specifically, the June 2020 and September 2021 OIG reports, cited in this paragraph reviewed the processes and directives from 2017 through 2019, twenty (20) years *after* the arrest and prosecution of Plaintiffs. To the extent Plaintiffs are relying on these facts to establish "standard police procedures" at the time of Plaintiffs' arrests in 1998 these facts are also not material to Plaintiff's motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; *see also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") A violation of standard police procedures does not constitute a constitutional violation. *Damiani v. Allen*, No. 4:16-cv-00053-RLY-DML, 2018 WL 4095080, at *6 (S.D. Ind. Aug. 28, 2018) (stating "[w]hether the officers violated accepted police practices does not determine the outcome of Plaintiff's constitutional claims").

Subject to and without waiving these objections, Defendant City admits in part and denies in part. The City admits that the OIG released a report in June 2020 and September 2021, but denies that the reports "adequately reflect[ed] the current discovery and records production processes within the Department" noted that the OIG failed to account for the volume of subpoenas and document requests handled by CPD in criminal and civil cases per year without mistake. (Dkt. 685-18, Ex. 17 at Appendix B: CPD's Response). Rather, CPD flatly rejected the OIG's conclusions, which were reached from citing a handful of discovery sanctions. *Id*. Further answering, each case cited by the OIG has led to a "material improvement in CPD's document production and management systems." *Id*.

Further, Defendant City admits that Thomas Tiderington makes "findings" in his report, but denies that Tiderington has the foundation to compare his "findings" to the OIG report. (*See* Defendant City of Chicago's *Daubert* Motion to Bar Opinions of Thomas J. Tiderington, at Dkt. 729; Defendant's Statement of Fact Material Facts in Support of its Motion for Summary Judgment, at Dkt. 730 at ¶¶39-119).

## POLICY DEFICIENCIES

50.    As part of his review, Tiderington reviewed and analyzed the 344 Area 5 investigative files from 1995-1998 that were provided to him for analysis, and compared them to available permanent retention files and criminal defense files. Ex. 8 (Tiderington Report) at 49-60;

see also Attachment B to Tiderington Report (materials reviewed). The file-by-file, document-by-document comparison of all of these file types is contained in Attachment F to Tiderington's Report. Ex. 8 (Tiderington Report) at 53; *see* Attachment F. Tiderington reached a number of conclusions, including that none of the Special Orders implemented after *Jones/ Palmer* rectified the problems with filekeeping, documentation, and disclosure within the CPD uncovered during Jones/Palmer. Id. at 49-66.

**RESPONSE: Defendant City objects to this paragraph as it is not supported by admissible evidence. *See Sommerfield v. City of Chicago,* 254 F.R.D. 317, 329 (N.D. Ill. 2008) (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 685-9, Ex. 8, Declaration of Thomas Tiderington signed 4/5/24).**

**Subject to and without waiving these objections, admit in part and denied in part. The City admits that according to Tiderington's report he was provided with various files from 1998, but denies that he "reviewed and analyzed" the thousands of pages of records contained in files produced. (*See* Defendant City of Chicago's *Daubert* Motion to Bar Opinions of Thomas J. Tiderington, at Dkt. 729 at 11-13). Tiderington admits that of the 475 investigative files he was provided, he "did spot checks on probably 30 or 40 cases." (Dkt. 730-24, Ex. 23, Tiderington Deposition from *Sierra* dated 12/8/22, 285:16-19; *see also* Dkt. 730-23, Ex. 22 Tiderington Dep from *Solache/Reyes* dated 10/6/22, 401:10-402:7). The City denies that Tiderington did the case-by-case comparison reflected in Attachment F of his report. Rather, Plaintiffs' legal team created the spreadsheet, Attachment F, and provided the spreadsheet to Tiderington based upon 344 investigative files and 341 records division files ranging from 1995-1998, (Attachment F). The City denies that Tiderington has the proper foundation to render opinions based upon the spreadsheet. Tiderington testified that he did not create the spreadsheet, rather it was created by Plaintiffs' counsel's office, Loevy & Loevy, he was not involved in the decision making or creation of the spreadsheet and does not know who or how many people were involved in their preparation. Dkt. 730-23, Ex. 22, Tiderington Dep from *Solache/Reyes* dated 10/6/22, 388:20-389:23, 401:10-402:7; Dkt. 730-30, Ex. 29, Tiderington Dep from *Johnson* dated 9/20/23, 230:9-21; Dkt. 730-24, Ex. 23, Tiderington Deposition from *Sierra* dated 12/8/22, 285:2-19 ("*I did not do my own calculations.*") (emphasis added). Finally, the City denies Tiderington has any foundation to provide opinion testimony related to CPD's policies and further states that many of the conclusions drawn in his report are contradicted by his deposition testimony. (*See* Defendant City of Chicago's *Daubert* Motion to Bar Opinions of Thomas J. Tiderington, at Dkt. 729; *see also* Defendant's Statement of Fact Material Facts in Support of its Motion for Summary Judgment, at Dkt. 730 at ¶¶39-119).**

51.     Tiderington also reviewed the expert reports of Michael Brasfield in *Fields v. City of Chicago* and *Rivera v. City of Chicago*, which involve a similar review of hundreds more homicide files and corresponding files, as well as the police homicide files in Rivera, Fields and Kluppelberg. Ex. 8 (Tiderington Report) at 33-34, 49-51; see also Attachments G & H to Tiderington's Report.

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record or admissible evidence.** *See Malec,* **191 F.R.D. at 583;** *Sommerfield,* **254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 685-9, Ex. 8, Declaration of Thomas Tiderington signed 4/5/24).**

**Subject to and without waiving these objections, admit in part and denied in part. The City admits that according to Tiderington's report he was provided with the expert reports of Michael Brasfield in the** *Fields v. City of Chicago* **civil litigation, related to a 1984 double homicide investigation and the** *Rivera v. City of Chicago* **civil litigation, related to the 1988 homicide investigation, but denies that he conducted any analysis of the files purportedly reviewed in those reports. (Dkt. 730-23, Ex. 22, Tiderington Dep from** *Solache/Reyes* **dated 10/6/22, 385:4-17). Specifically, when asked whether he analyzed the spreadsheets attached to the reports authored by Michael Brasfield in any way, Tiderington testified that he did not, and in fact could not recall whether he saw a specific spreadsheet attached to Mr. Brasfield's report which involved the review of the files in question, rather he assumed that the spreadsheet Mr. Brasfield reviewed was the same one he reviewed (which it was not). (Dkt. 730-23, Ex. 22, Tiderington Dep from** *Solache/Reyes* **dated 10/6/22, 385:222-386:4). Further answering, Tiderington testified that he "spot-checked" police files and criminal defense files for the time period from 1991-1995 and 1995-1998, but relied largely on the accuracy of the spreadsheets created by and provided to him by Plaintiffs' counsel at Loevy & Loevy based on information gathered from investigative files and records division files (sometimes referred to as "RD Files" or "permanent retention files") (also collectively referred to as "homicide files") from homicides that were investigated by Area 5 detectives of CPD from 1991-1998. (Dkt. 730-23, Ex. 22, Tiderington Dep from** *Solache/Reyes* **dated 10/6/22, 388:20-24; 401:10-402:7; Dkt. 730-30, Ex. 29, Tiderington Dep from** *Johnson* **dated 9/20/23, 230:9-21; Dkt. 730-24, Ex. 23, Tiderington Deposition from** *Sierra* **dated 12/8/22, 285:11-19).**

52.     Tiderington's review of hundreds of files from 1995-1998 confirmed that CPD's policies were not sufficiently addressing the problems with file keeping and documentation of

which the City of Chicago was aware. Ex. 8 (Tiderington Report) at 49-55; *see supra* SOF 8-13, 23.

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record or admissible evidence and is argumentative.** *See Malec*, **191 F.R.D. at 583;** *Sommerfield*, **254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 685-9, Ex. 8, Declaration of Thomas Tiderington signed 4/5/24). Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is argumentative ("not sufficiently addressing").** *See Malec*, **191 F.R.D. at 583;** *see also Uncommon, LLC v. Spigen, Inc.,* **305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.) (statements of fact should not contain legal argument);** *see also Judson Atkinson Candies v. Latini-Hohberger Dhimantec,* **529 F.3d 371, 382 n. 2 (7th Cir. 2008) ("It is inappropriate to make legal arguments in a Rule 56.1 statement of facts").**

**Subject to and without waiving these objections, Defendant City admits in part and denies in part. The City admits that Plaintiffs' expert made these conclusions within his expert report, however, the City denies that Tiderington has the proper foundation to support his conclusions included in this paragraph. (See, Defendant City of Chicago's** *Daubert* **Motion to Bar Opinions of Thomas J. Tiderington, Dkt. 729, at §I, and Def. City's 56.1(a)(3) SOF, Dkt 730, at ¶¶39-119). Tiderington testified that he "spot-checked" police files and criminal defense files for the time period from 1991-1995 and 1995-1998, but relied largely on the accuracy of the spreadsheets created by and provided to him by Plaintiffs' counsel at Loevy & Loevy based on information gathered from investigative files and records division files (sometimes referred to as "RD Files" or "permanent retention files") (also collectively referred to as "homicide files") from homicides that were investigated by Area 5 detectives of CPD from 1991-1998. See, Dkt. 730-23, Ex. 22, Tiderington Dep from** *Solache/Reyes* **dated 10/6/22, 388:20-24; 401:10-402:7; Dkt. 730-30, Ex. 29, Tiderington Dep from** *Johnson* **dated 9/20/23, 230:9-21; Dkt 730-24, Ex. 23, Tiderington Deposition from** *Sierra* **dated 12/8/22, 285:219 ("***I did not do my own calculations.***") (emphasis added).**

53.     Detectives consistently used handwritten notes not on GPRs, although Judge

Shadur had found the practice of keeping investigative information outside of official reports

deficient. Ex. 2 (Shadur Order) at 4-6; Ex. 8 (Tiderington Report) at 49.

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record or admissible evidence and is argumentative.** *See Malec*, **191 F.R.D. at 583;** *Sommerfield*, **254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which**

should be stricken, because his declaration was filed long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 685-9, Ex. 8, Declaration of Thomas Tiderington signed 4/5/24). Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it states a legal conclusion ("ie. "Shadur had found" "consistently used"). *See Malec*, 191 F.R.D. at 583; *Tel-Lock, Inc.*, 2005 WL 741930, at \*2; *Taylor*, 2012 WL 669063, at \*1 (Shadur, J)(A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)).

Finally, the City denies Tiderington has any foundation to provide opinion testimony related to CPD's policies and further states that many of the conclusions drawn in his report are contradicted by his deposition testimony. (*See* Defendant City of Chicago's *Daubert* Motion to Bar Opinions of Thomas J. Tiderington, at Dkt. 729; *see also* Defendant's Statement of Fact Material Facts in Support of its Motion for Summary Judgment, at Dkt. 730 at ¶¶39-119).

54.    Handwritten notes not on GPRs were found in approximately 46% of the investigative files that Tiderington reviewed from 1995-1998—consistent with Brasfield's findings in Rivera (61%) and Fields (82%). Ex. 8 (Tiderington Report) at 49.

**RESPONSE:** Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record or admissible evidence and is argumentative. *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 685-9, Ex. 8, Declaration of Thomas Tiderington signed 4/5/24).

Finally, the City denies Tiderington has any foundation to provide opinion testimony related to CPD's policies and further states that many of the conclusions drawn in his report are contradicted by his deposition testimony. (*See* Defendant City of Chicago's *Daubert* Motion to Bar Opinions of Thomas J. Tiderington, at Dkt. 729; *see also* Defendant's Statement of Fact Material Facts in Support of its Motion for Summary Judgment, at Dkt. 730 at ¶¶39--119).

55.    Similarly, detectives continued using to-from memos, which were also not included in official forms–despite the City's knowledge of this deficiency. Ex. 2 (Shadur Order) at 4-6; Ex. 8 (Tiderington Report) at 57. To-from memos (not on official police forms) were found in approximately 28% of the files reviewed from 1995-1998—consistent with Brasfield's findings in Rivera (20%) and Fields (43%). Ex. 8 (Tiderington Report) at 49.

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record or admissible evidence and is argumentative. *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 685-9, Ex. 8, Declaration of Thomas Tiderington signed 4/5/24). Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it states a legal conclusion ("ie. "City's knowledge of this deficiency"). *See Malec*, 191 F.R.D. at 583; *Tel-Lock, Inc.*, 2005 WL 741930, at \*2; *Taylor*, 2012 WL 669063, at \*1 (Shadur, J)(A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)).**

**Finally, the City denies Tiderington has any foundation to provide opinion testimony related to CPD's policies and further states that many of the conclusions drawn in his report are contradicted by his deposition testimony. (*See* Defendant City of Chicago's *Daubert* Motion to Bar Opinions of Thomas J. Tiderington, at Dkt. 729; *see also* Defendant's Statement of Fact Material Facts in Support of its Motion for Summary Judgment, at Dkt. 730 at ¶¶39-119).**

56.　　Further, inventory sheets were not consistently included in the investigative files (and when they were included, the majority of them were incomplete). In the period from 1995-1998, 17% of total investigative files contained no inventory sheet, and 81% contained incomplete inventory sheets. Ex. 8 (Tiderington Report) at 49-50.

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record or admissible evidence and is argumentative. *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 685-9, Ex. 8, Declaration of Thomas Tiderington signed 4/5/24).**

**Subject to and without waiving these objections, Defendant City admits in part and denies in part. The City admits that Plaintiffs' expert included these statistics within his expert report, however, the City denies that Tiderington has the proper foundation to support the statistics included in this paragraph. (*See* Defendant City of Chicago's *Daubert* Motion to Bar Opinions of Thomas J. Tiderington, Dkt. 729, at §I, and Def. City's 56.1(a)(3) SOF, Dkt 730, at ¶¶39-119). Tiderington testified that he "spot-checked" police files and criminal defense files for the time period from 1991-1995 and 1995-1998, but relied largely on the accuracy of the spreadsheets created by and provided to him by Plaintiffs' counsel at Loevy & Loevy based on information gathered from investigative files and records division files**

(sometimes referred to as "RD Files" or "permanent retention files") (also collectively referred to as "homicide files") from homicides that were investigated by Area 5 detectives of CPD from 1991-1998. (*See* Dkt. 730-23, Ex. 22, Tiderington Dep from *Solache/Reyes* dated 10/6/22, 388:20-24, 401:10-402:7; Dkt. 730-30, Ex. 29, Tiderington Dep from *Johnson* dated 9/20/23, 230:9-21; Dkt. 730-24, Ex. 23, Tiderington Deposition from *Sierra* dated 12/8/22, 285:2-19 ("*I did not do my own calculations.*") (emphasis added).

57.    Additionally, not all relevant information in unofficial documents—including potentially exculpatory information contained on handwritten notes—was transcribed in official reports, despite the City's continued awareness of this deficiency. Ex. 2 (Shadur Order) at 17; Ex. 8 (Tiderington Report) at 50-52.

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record or admissible evidence and is argumentative. *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 685-9, Ex. 8, Declaration of Thomas Tiderington signed 4/5/24). Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it states a legal conclusion ("ie. "potentially exculpatory information"). *See Malec*, 191 F.R.D. at 583; *Tel-Lock, Inc.*, 2005 WL 741930, at *2; *Taylor*, 2012 WL 669063, at *1 (Shadur, J)(A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)).**

58.    Finally, Tiderington concluded that important investigative materials were regularly withheld from the criminal defense files for criminal defendants, despite the City's notice of this issue. For example, he found that approximately 59% of the criminal defense files analyzed were missing handwritten notes that were present in the investigative files; that 43 of the 63 criminal defense files lacked an inventory, despite the CPD's requirement; and that not all of the documents in the investigative file were disclosed to criminal defense attorneys in response to a subpoena for street files. Ex. 2 (Shadur Order) at 17; Ex. 8 (Tiderington Report) at 52-55.

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record or admissible evidence and is argumentative. *See***

***Malec***, 191 F.R.D. at 583; ***Sommerfield***, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 685-9, Ex. 8, Declaration of Thomas Tiderington signed 4/5/24).  Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it states a legal conclusion ("withheld from criminal defense files" "City's notice of this issue"). ***See Malec***, 191 F.R.D. at 583; ***Tel-Lock, Inc.***, 2005 WL 741930, at *2; ***Taylor***, 2012 WL 669063, at *1 (Shadur, J)(A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)).

Subject to and without waiving these objections, Defendant City admits in part and denies in part. The City admits that Plaintiffs have retained Thomas Tiderington but denies that Tiderington has the proper foundation to support these conclusions. (*See* Defendant City of Chicago's ***Daubert*** Motion to Bar Opinions of Thomas J. Tiderington, at Dkt. 729; Defendant's Statement of Fact Material Facts in Support of its Motion for Summary Judgment, at Dkt. 730 at ¶¶39-119). The City further denies that Tiderington "found" and specifically denies that Tiderington, himself compared enough  investigative files to corresponding criminal files for the years 1995-1998 to conduct any statistical analysis. Tiderington testified that he did not personally compare the 63 investigative files to the corresponding criminal defense files and only personally compared under ten files and while he "spot-checked" police files and criminal defense files for the time period from 1991-1995 and 1995-1998, he relied largely on the accuracy of the spreadsheets created by and provided to him by Plaintiff's counsel at Loevy & Loevy. (*See* Dkt. 730-23, Ex. 22, Tiderington Dep from ***Solache/Reyes*** dated 10/6/22, 388:20-24, 401:10-402:7, 601:11603:8; Dkt. 730-30, Ex. 29, Tiderington Dep from ***Johnson*** dated 9/20/23, 230:9-21; Dkt. 730-24, Ex. 23, Tiderington Deposition from ***Sierra*** dated 12/8/22, 285:2-19 ("*I did not do my own calculations.*") (emphasis added).

59.     The analysis that Tiderington conducted in this case is the same analysis conducted by Michael Brasfield in Rivera and Fields, and his findings are entirely consistent with Brasfield's. In particular, Tiderington's finding that the 1995-1998 Area 5 investigative files demonstrate that the City's problems with filekeeping, documentation, and disclosure of investigative information first identified in *Jones/Palmer* persisted under the policies of the CPD is the same conclusion that Brasfield reached with regard to 1985-1991 Area 5 investigative files, and 1984-1989 Area 1 (primarily) investigative files. Ex. 8 (Tiderington Report) at 49; Ex. 28 (Brasfield Report in Rivera) at 43-45; Ex. 41 (Brasfield Report in *Fields*) at 15-19.

RESPONSE: Defendant City objects to this paragraph as it is not supported by admissible evidence. *See Sommerfield v. City of Chicago,* 254 F.R.D. 317, 329 (N.D. Ill. 2008) (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 685-9, Ex. 8, Declaration of Thomas Tiderington signed 4/5/24). Plaintiffs also have no foundation to rely on an expert report from a previous litigation where the expert was not retained or deposed in this litigation. *See Ideal Mfg. & Sales Corp. v. Pase Grp., Inc.,* 2008 WL 11463582, at *9 (E.D. Wis. Nov. 24, 2008) ("'while an unsworn expert report, standing alone, does not constitute admissible evidence that can be considered at the summary judgment stage of the proceedings, and will not defeat a motion for summary judgment, an unsworn expert report may be considered at summary judgment where the opinions therein are otherwise adopted or reaffirmed in an *admissible affidavit or deposition testimony* by the expert'") (emphasis added) (quoting *Maytag Corp. v. Electrolux Home Products, Inc.,* 448 F. Supp. 2d 1034, 1065 (N.D. Iowa 2006)). Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record (none of the cited record supports that Tiderington's "analysis" is the same as Brasfield's), and it is argumentative ("entirely consistent"). *See Malec,* 191 F.R.D. at 583; *see also Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.), *aff'd,* 926 F.3d 409 (7th Cir. 2019) (statements of fact should not contain legal argument and responses to the opposing party's statement of facts are not the place for "purely argumentative details" or "legal conclusions"); *see also Judson Atkinson Candies v. Latini-Hohberger Dhimantec,* 529 F.3d 371, 382 n. 2 (7th Cir. 2008) ("It is inappropriate to make legal arguments in a Rule 56.1 statement of facts").

Subject to and without waiving these objections, Defendant City admits in part and denies in part. The City admits that plaintiff Rivera's expert testified to the statistics included in this paragraph, but denies that he had the proper foundation to provide said testimony. The statistics in this paragraph relate only to 50 "basement files." (Dkt. 685-32, Ex. 31, Fields Trial Tr. 11/29/16 at 3:6-23 (PM Transcript), 7:7-8:8 (PM Transcript)). Further, Mr. Brasfield admitted during trial that he only reviewed six State's Attorney's files, specifically, ones provided to him by plaintiff Rivera's counsel. (*See* Def's Ex. G, *Rivera* Trial Transcripts, June 18, 2018 at 2303:7-17).

Further, Defendant City admits that Thomas Tiderington makes "findings" in his report but denies that Tiderington has the proper foundation to compare the analysis done in any of the reports. (*See* Defendant City of Chicago's *Daubert* Motion to Bar Opinions of Thomas J. Tiderington, at Dkt. 729; Defendant's Statement of Fact Material Facts in Support of its Motion for Summary Judgment, at Dkt. 730 at ¶¶39-119). Tiderington testified that he "spot-checked" police files and criminal defense files for the time period from 1991-1995 and 1995-1998, but relied largely on the accuracy of the spreadsheets created by and provided to him by Plaintiffs' counsel at Loevy & Loevy based on information gathered from investigative files and records division files (sometimes referred to as "RD Files" or "permanent retention files") (also collectively referred to as "homicide files") from homicides that were investigated by Area 5 detectives of CPD from 1991-1998. (*See* Dkt. 730-23, Ex. 22, Tiderington Dep from *Solache/Reyes* dated 10/6/22, 388:20-24, 401:10-402:7; Dkt. 730-30, Ex. 29, Tiderington Dep

from *Johnson* dated 9/20/23, 230:9-21; Dkt. 730-24, Ex. 23, Tiderington Deposition from *Sierra* dated 12/8/22, 285:11-19).

Finally, the City denies Tiderington had the proper foundation to opine on any purported comparisons drawn between his opinions and Brasfield's opinions in *Jones/Palmer, Rivera,* or *Fields*. Tiderington testified that the only information he had regarding *Rivera* and *Fields* came from Brasfield's reports. (*See* Dkt. 730-23, Ex. 22, Tiderington Dep from *Solache/Reyes* dated 10/6/22, at 384:7-14). Tiderington also admitted that he learned the information regarding *Jones* and *Palmer* from Plaintiff's counsel, and that he did not read the *Palmer* case he cites to in any "specific detail." (*Id.* at 447:4-15). Thus, any information he learned about the *Jones* and *Palmer* cases discussed in Brasfield's report could only come from reading that report (whether Tiderington read Brasfield's 300 pages of reports himself or whether it was summarized for him by someone else). Further, Tiderington was unable to answer any questions regarding what Brasfield reviewed with specificity and even testified he believed he and Brasfield worked off the same spreadsheet. (*Id.,* at 387:1-388:19).

## ADJUDICATION OF ISSUE IN PAST CASES

60.    The existence of the City of Chicago's official policy of suppressing exculpatory and/or impeaching investigative information was established in the cases of, inter alia, *Rivera v. Guevara*, No. 12 C 4428 (N.D. Ill.); *Fields v. City of Chicago*, No. 10 C 1168 (N.D. Ill.); *Palmer v. City of Chicago,* 562 F. Supp. 1067 (N.D. Ill.); and *Jones v. City of Chicago*, No. 87 C 2536 (N.D. Ill.).

RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative and states a legal conclusion ("official policy of suppressing exculpatory and/or impeaching investigative information was established"). *See Malec*, 191 F.R.D. at 583; *Tel-Lock, Inc.*, 2005 WL 741930, at *2; *Taylor,* 2012 WL 669063 at *1 (Shadur, J) (A judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)). The events described in this paragraph related to *Jones* and *Palmer* pre-date the criminal investigation and prosecution of Plaintiffs by over sixteen years and describes events that pre-date the issuance of S.O. 83-1 which expressly mandated that "detectives will preserve and record information and materials obtained in the course of the investigation to assure not only that information and materials indicating the possible guilt of the accused are preserved, but also that any materials that may tend to show his possible innocence or aid in his defense is preserved." (*See* City's Memorandum of Law in Support of Summary Judgment, Dkt. 731 at 14-16; City's 56.1(a)(3) SOF, Dkt. 730 at ¶¶ 15-16).

Subject to and without waiving these objections, denied. Responding further, the *Palmer* litigation, which Plaintiffs cite as the basis for support of this "fact" was an *unsuccessful* class action lawsuit against the City of Chicago challenging the "constitutionality of the Chicago

Police Department's alleged practice of concealing exculpatory material collected in criminal investigations and lodged in the department's informal 'street files.'" *Palmer II*, 806 F.2d at 1317. Judge Shadur's order was vacated. *See Palmer v. City of Chicago*, 562 F. Supp. 1067 (N.D. Ill. 1983) *rev'd Palmer v. City of Chicago*, 755 F.2d 560 (7th Cir. 1985) (*Palmer I*). The Seventh Circuit held it was CPD's responsibility, as public officials, to draft policies and internal guidelines that incorporate the constitutional standard of preservation and assure criminal defendants the due process safeguard of a fair trial, noting that the Federal Courts have "no business, whatsoever, meddling in or attempting to control the daily maintenance and administration of the CPD and the Cook County State's Attorney's office, absent a clear and defined constitutional violation." *Palmer I*, 755 F.2d at 578. Still, to address the class plaintiffs' accusation that they could not establish a constitutional violation if the evidence was in the hands of CPD, the *Palmer I* Court granted the plaintiffs' request to preserve all "street files" for the subclass A plaintiffs. *Palmer I*, 755 F.2d at 572. Those plaintiffs were permitted to inspect over 300 "street files" for exculpatory evidence. *Palmer II*, 806 F.2d at 1317. Notwithstanding their search of each file, the *Palmer* plaintiffs failed to uncover even one piece of undisclosed exculpatory evidence. *Id.* at 1324 ("their claim depends on there being exculpatory material in the 'street files' – and there isn't any"). Ultimately, the Seventh Circuit found that the class-plaintiffs failed to prove any systematic constitutional violations as a result of the City's street file practice and overruled the District Court's holdings. *Id.* at 1320.

The City further denies that the jury verdict in *Jones* was a "finding of a custom of maintaining 'street files' that were withheld from the State's Attorney's Office and criminal defendants. Rather, the Seventh Circuit noted that, "Although the lawfulness of the street-files practice has never been adjudicated, the City, which has abandoned the practice, does not challenge the jury's implicit finding that it denied criminal defendants due process of law." *Jones v. Chicago*, 856 F.2d 985, 995 (7th Cir. 1988).

The City further denies that the jury found that an "official policy of suppressing exculpatory and/or impeaching investigative information" in the *Fields v. City of Chicago*, case. Rather, the verdict entered against the City was a general verdict and did not specify the policy for which it found the City liable was a "pattern and practice." To the contrary, the plaintiff in Fields argued four different "policies" for which the jury could find the City liable. (*See* Def's Ex. F, *Fields v. City of Chicago*, Trial Transcripts, closing arguments, p. 136-137 ("That brings you to the policy claim ...We win if we can show any of them. If we can show an express policy, if we can show there was a practice or we can show training or notice to a policymaker. Actually, there's four ways we can win.")

Finally, the City denies that the jury found an "official policy of suppressing exculpatory and/or impeaching investigative information" in *Rivera v. Guevara*. Rather, the verdict entered against the City was a general verdict and did not specify the policy for which it found the City liable was a "pattern or practice." Again, the plaintiff in *Rivera* argued multiple policies for which the jury could find the City liable. (*See* Def's Ex. H, *Rivera v. Guevara*, Trial Transcripts, closing arguments, p. 4201:6-8 ("We win any which way, all we have to show is one way.") Responding further, City Defendants appealed the judgment in *Rivera v. Guevara*, (*see* Def's Ex. I, Notice of Appeal, *Rivera v. Guevara*, No. 12 C 4428, Dkt.

783, (N.D. Ill. Oct. 16, 2019)), and the parties then engaged in a successful mediation in the Seventh Circuit Court of Appeals wherein the parties reached an agreement to resolve the case for a sum total from the City in turn for, among other things, the defendants dismissing the appeal. (*See* Def's Ex. J, Notice of Cir. Rule 33 Mediation, *Rivera v. Guevara*, No. 193045 (7th Cir. Oct. 24, 2019)). The parties executed a Release, Satisfaction of Judgment, and Settlement Agreement (herein the "*Rivera* Agreement") on March 25, 2020, memorializing the terms. (*See* Def's Ex. K, *Rivera* Agreement). The *Rivera* Agreement stated: "[t]he parties and their respective attorneys acknowledge that the settlement of this case is not an admission of liability, or of unconstitutional or illegal conduct by or on the part of any Defendant, and/or the City of Chicago's future, current or former officers, agents and employees, and shall not serve as evidence of *any wrongdoing* by or on the part of any Defendant, and/or the City of Chicago's future, current or former officers, agents and employees. The parties and their respective attorneys further acknowledge that settlement is made to avoid the uncertainty of the outcome of litigation and the expense in time and money of further litigation and for the purpose of judicial economy." (Ex. K, *Rivera* Agreement, at ¶ 5) (emphasis added). The *Rivera* Agreement further provided that Defendants agreed to dismiss the appeal within fourteen (14) days of the execution of the Rivera Agreement. (*See* Ex. K, at ¶ 8). The City Defendants timely filed an agreed motion to dismiss the appeal under Federal Rule of Appellate Procedure 42(b), which the Seventh Circuit granted, and issued the mandate. (*See* Def's Ex. L, Agreed Mtn. Vol. Dismissal, *Rivera v. Guevara*, No. 19-3045 (7th Cir. Apr. 6, 2020); *see* Def's Ex. M, Notice of Issuance of Mandate, *Rivera v. Guevara*, No. 19-3045 (7th Cir. Apr. 7, 2020)).

61.     In *Fields*, the jury was instructed that, to find against the City of Chicago on the plaintiff's policy claim, Fields had to prove, in pertinent part, that "[a]t the time of the concealment, it was the policy of the City of Chicago to conceal material exculpatory and/or impeachment evidence," and that this policy (as defined in the instructions) caused the concealment of material exculpatory or impeachment evidence in the plaintiff's criminal case, which harmed plaintiff as a result. Ex. 42 (Fields Final Jury Instructions) at 14-15.

**RESPONSE:** To the extent that Plaintiffs are relying on these "facts" to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")

Answering further, the verdict entered against the City was a general verdict and did not specify the reasons or specific basis for which it found the City liable and did not expressly find a "pattern and practice." To the contrary, the plaintiff in *Fields* argued four different "policies" for which the jury could find the City liable. (*See* Def's Ex. F, *Fields v. City of*

*Chicago*, **Trial Transcripts, closing arguments, p. 136-137) ("That brings you to the policy claim ...We win if we can show any of them. If we can show an express policy, if we can show there was a practice or we can show training or notice to a policymaker. Actually, there's four ways we can win.")**

62.     During trial, both sides presented extensive Monell evidence, which is collected

in the parties' post-trial submissions in Fields. Ex. 43 (Defs.' Combined Post-Trial Mot. in

Fields) at 9-16, 18-24; Ex. 44 (Pl.'s Resp. to Defs.' Post-Trial Mot. in Fields) at 12-25; Ex. 45

(Defs.' Reply in Support of Post-Trial Mot.) at 5-10.

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative and states a legal conclusion.** *See Malec*, **191 F.R.D. at 583;** *Tel-Lock, Inc.*, **2005 WL 741930, at \*2;** *Taylor*, **2012 WL 669063, at \*1 (Shadur, J) (A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)).**

**Subject to and without waiving these objections, Defendant City admits in part and denies in part. The City admits that Plaintiffs have cited to various pleadings filed in the** *Fields* **litigation, but denies that those pleadings contain all of the evidence collected and presented at trial, and further denies that these pleadings are material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for summary judgment, and therefore does not comply with Local Rule 56.1(a)(2).** *See Outlaw*, **259 F.3d at 837; s***ee also Malec,* **191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")**

63.     The City lost the jury trial in *Fields*. Ex. 46 (Fields Verdict Summary). A judgment

was entered against the City on the jury's verdict, awarding Fields $22 million in compensatory

damages (as well as punitive damages). Ex. 47 (Fields Judgment). After fully briefing the issues,

the City's post-trial motion challenging the judgment was denied. *Fields v. City of Chicago*, 2017

WL 3987356 (N.D. Ill. Sep. 11, 2017); Ex. 43 (Defs.' Combined Post-Trial Mot. in Fields) at 9-

16, 18-24; Ex. 44 (Pl.'s Resp. to Defs.' Post-Trial Mot. in Fields) at 12-25; Ex. 45 (Defs.' Reply

in Support of Post-Trial Mot.) at 5-10.

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative and states a legal conclusion.** *See Malec*, **191 F.R.D. at 583;** *Tel-Lock, Inc.*, **2005 WL 741930, at \*2;** *Taylor*, **2012 WL 669063, at \*1 (Shadur, J) (A Judge's finding does not qualify as a hearsay exception**

under Rule 803(8) or Rule 803(22)); *Franklin v. Adkins*, No. 92-1765, 1993 WL 179221, at *5 (7th Cir. May 25, 1993) (finding that a jury's verdict is a hearsay statement); *Spinnenweber v. Laducer*, No. 2:14-CV-101-JEM, 2019 2019 WL 6649847 at *1 (N.D. Ind. Dec. 5, 2019) (finding a jury verdict makes the plaintiff whole and is not to send a message to the defendants or society at large).

**The City admits that the jury in *Fields* found in favor of the plaintiff and awarded him $22 million dollars. The City denies that the jury found that a "failure to disclose the street file to Mr. Fields was the result of a pattern and practice of the Chicago Police Department." Rather, the verdict entered against the City was a general verdict and did not specify the policy for which it found the City liable and did not specifically find there was a "pattern and practice." (*See* Ex. E, *Fields,* Jury Verdict). To the contrary, the plaintiff in *Fields* argued four different "policies" for which the jury could find the City liable. (*See* Def's Ex. F, *Fields v. City of Chicago,* Trial Transcripts, closing arguments, p. 136-137) ("That brings you to the policy claim ...We win if we can show any of them. If we can show an express policy, if we can show there was a practice or we can show training or notice to a policymaker. Actually, there's four ways we can win.") Responding further, the City denies that citations to various pleadings from the *Fields* litigation are material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")**

64.     The denial of the City's post-trial motion was affirmed on direct appeal, where the U.S. Court of Appeals for the Seventh Circuit concluded that the City had notice of deficient policies with respect to withholding/disclosure of evidence "as a result of prior litigation that the use of street files and the failure to ensure the production of the evidence within those files presented a constitutional problem," and that in Fields, the evidence presented sufficiently allowed the jury "to conclude that the City had failed to take the necessary steps to address that unconstitutional practice." *Fields v. City of Chicago*, 981 F.3d 534, 563 (7th Cir. 2020).

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative and states a legal conclusion. *See Malec*, 191 F.R.D. at 583; *Tel-Lock, Inc.*, 2005 WL 741930, at *2; *Taylor*, 2012 WL 669063, at *1 (Shadur, J) (A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)).**

65.     Jacques Rivera was wrongfully convicted of the 1988 murder of Felix Valentin on the northwest side of Chicago, and his conviction was based on false evidence fabricated by

Chicago Police officers–including Detective Guevara–working out of Detective Area Five. *Rivera,* 319 F. Supp. 3d at 1015; Ex. 57 (Rivera Certificate of Innocence) at 1, 3-9, 10-13.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw,* 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The events described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by ten years.**

**Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record and states a legal conclusion. *See Tel-Lock, Inc.,* 2005 WL 741930, at \*2 (the court struck portions of party's 56.1 that contained legal conclusions). Defendant City further objects as it is not supported by admissible evidence, specifically, the citations to a court opinion and plaintiff Rivera's certificate of innocence, which are hearsay. *See Taylor,* 2012 WL 669063, at \*1 (Shadur, J)(A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)).**

**Subject to and without waiving these objections, admitted in part and denied in part. There is no record support for the assertions that Rivera was "wrongfully convicted" or that Rivera's conviction was "based on false evidence fabrication by Chicago Police officers – including Detective Guevara – working out of Detective Area Five." The City admits that Plaintiffs have cited the order granting Rivera's Certificate of Innocence in the *Rivera* litigation but denies that citations to various pleadings from the *Rivera* litigation are material or support for granting Plaintiffs' motion for partial summary judgment in this case, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")**

66.     After his conviction was vacated and charges dropped in 2011, Rivera filed a lawsuit against the involved officers and the City of Chicago, alleging that the defendants had suppressed exculpatory information throughout his criminal proceedings and that the City was liable for its official policy of suppressing exculpatory evidence. *Rivera,* 319 F. Supp. 3d at 1015-16, 1020.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The policies described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by ten years.**

**Subject to and without waiving these objections, admit.**

67.    In *Rivera*, the plaintiff made an underdeveloped preclusion argument based on Fields which was limited to three paragraphs in the plaintiff's summary judgment response. Ex. 48 (Rivera Plaintiff's Resp. to Defendant's Summ. J. Mot.) at 54. Similarly, the Court's analysis of the issue consisted of two paragraphs. *Rivera,* 319 F. Supp. 3d at 1062-63.

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative ("underdeveloped") and states a legal conclusion. *See Malec*, 191 F.R.D. at 583; *Tel-Lock, Inc.*, 2005 WL 741930, at *2; *Taylor*, 2012 WL 669063, at *1 (Shadur, J) (A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)).**

**Subject to and without waiving these objections, Defendant City admits in part and denies in part. The City admits that Plaintiffs have cited plaintiff Rivera's response to summary judgment as well as the Court's ruling on summary judgment in the *Rivera* litigation, but denies that citations to various pleadings from the *Rivera* litigation are material or support granting Plaintiffs' motion for partial summary judgment in this case. The City further denies that plaintiff Rivera's preclusion argument was underdeveloped in any way. Responding further, City Defendants appealed the judgment in *Rivera v. Guevara*, (*see* Def's Ex. U, Notice of Appeal, *Rivera v. Guevara*, No. 12 C 4428, Dkt. 783, (N.D. Ill. Oct. 16, 2019)), and the parties then engaged in a successful mediation in the Seventh Circuit Court of Appeals wherein the parties reached an agreement to resolve the case for a sum total from the City in turn for, among other things, the defendants dismissing the appeal. (*See* Def's Ex. J, Notice of Cir. Rule 33 Mediation, *Rivera v. Guevara*, No. 19-3045 (7th Cir. Oct. 24, 2019). The parties executed a Release, Satisfaction of Judgment, and Settlement Agreement (herein the "*Rivera* Agreement") on March 25, 2020, memorializing the terms. (*See* Def's Ex. K, *Rivera* Agreement). The *Rivera* Agreement stated: "[t]he parties and their respective attorneys acknowledge that the settlement of this case is not an admission of liability, or of unconstitutional or illegal conduct by or on the part of any Defendant, and/or the City of Chicago's future, current or former officers, agents and employees, and shall not serve as evidence of *any wrongdoing* by or on the part of any Defendant, and/or the City of Chicago's future, current or former officers, agents and employees. The parties and their respective attorneys further acknowledge that settlement is made to avoid the uncertainty of the outcome**

of litigation and the expense in time and money of further litigation and for the purpose of judicial economy." (Ex. K, *Rivera* Agreement, at ¶ 5) (emphasis added). The *Rivera* Agreement further provided that Defendants agreed to dismiss the appeal within fourteen (14) days of the execution of the Rivera Agreement. (*See* Ex. K, at ¶ 8). The City Defendants timely filed an agreed motion to dismiss the appeal under Federal Rule of Appellate Procedure 42(b), which the Seventh Circuit granted, and issued the mandate. (*See* Def's Ex. L, Agreed Mtn. Vol. Dismissal, *Rivera v. Guevara*, No. 19-3045 (7th Cir. Apr. 6, 2020); *See* Def's Ex. M, Notice of Issuance of Mandate, *Rivera v. Guevara*, No. 19-3045 (7th Cir. Apr. 7, 2020).

68.     In *Rivera*, the jury was instructed that to find against the City of Chicago on the

policy claim, Rivera had to prove by a preponderance of the evidence, in pertinent part, that "[t]he

City of Chicago had a policy of concealing material exculpatory and/or impeachment evidence,"

and that this policy (as defined in the previous paragraph) caused the violation of the plaintiff's

constitutional rights. Ex. 49 (*Rivera* Final Jury Instructions) at 26.

**RESPONSE:** **To the extent that Plaintiffs are relying on these "facts" to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")**

**Answering further, the verdict entered against the City was a general verdict and did not specify the policy for which it found the City liable was a "pattern or practice." Again, the plaintiff in *Rivera* argued multiple policies for which the jury could find the City liable, including a failure to train. (*See* Def's Ex. H, *Rivera v. Guevara,* Trial Transcripts, closing arguments, p. 4201:6-8) ("We win any which way, all we have to show is one way.")**

**Responding further, City Defendants appealed the judgment in *Rivera v. Guevara*, (*see* Def's Ex. I, Notice of Appeal, *Rivera v. Guevara*, No. 12 C 4428, Dkt. 783, (N.D. Ill. Oct. 16, 2019)), and the parties then engaged in a successful mediation in the Seventh Circuit Court of Appeals wherein the parties reached an agreement to resolve the case for a sum total from the City in turn for, among other things, the defendants dismissing the appeal. (*See* Ex. J, Notice of Cir. Rule 33 Mediation, *Rivera v. Guevara*, No. 19-3045 (7th Cir. Oct. 24, 2019). The parties executed a Release, Satisfaction of Judgment, and Settlement Agreement (herein the "*Rivera* Agreement") on March 25, 2020, memorializing the terms. (*See* Ex. K, *Rivera* Agreement). The *Rivera* Agreement stated: "[t]he parties and their respective attorneys acknowledge that the settlement of this case is not an admission of liability, or of unconstitutional or illegal conduct by or on the part of any Defendant, and/or the City of Chicago's future, current or former officers, agents and employees, and shall not serve as evidence of *any wrongdoing* by or on the part of any Defendant, and/or the City of Chicago's**

future, current or former officers, agents and employees. The parties and their respective attorneys further acknowledge that settlement is made to avoid the uncertainty of the outcome of litigation and the expense in time and money of further litigation and for the purpose of judicial economy." (Ex. K, *Rivera* Agreement, at ¶ 5) (emphasis added). The *Rivera* Agreement further provided that Defendants agreed to dismiss the appeal within fourteen (14) days of the execution of the Rivera Agreement. (*See* Ex. K, at ¶ 8). The City Defendants timely filed an agreed motion to dismiss the appeal under Federal Rule of Appellate Procedure 42(b), which the Seventh Circuit granted, and issued the mandate. (*See* Ex. L, Agreed Mtn. Vol. Dismissal, *Rivera v. Guevara*, No. 19-3045 (7th Cir. Apr. 6, 2020); s*ee* Ex. M; Notice of Issuance of Mandate, *Rivera v. Guevara*, No. 19-3045 (7th Cir. Apr. 7, 2020))

69.     Based on that jury instruction, in June 2018, a federal jury entered a verdict for

Rivera and against the City, and a judgment was entered against the City on the jury's verdict.

Ex. 50 (Rivera Judgment); Ex. 51 (Rivera Verdict).

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative and states a legal conclusion. *See Malec*, 191 F.R.D. at 583; *Tel-Lock, Inc.*, 2005 WL 741930, at \*2; *Taylor*, 2012 WL 669063, at \*1 (Shadur, J) (A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)); *Franklin v. Adkins*, No. 92-1765, 1993 WL 179221, at \*5 (7th Cir. May 25, 1993) (finding that a jury's verdict is a hearsay statement); *Spinnenweber v. Laducer*, No. 2:14-CV-101-JEM, 2019 2019 WL 6649847 at \*1 (N.D. Ind. Dec. 5, 2019) (finding a jury verdict makes the plaintiff whole and is not to send a message to the defendants or society at large).**

**Subject to and without waiving these objections, the City admits that a federal jury entered a verdict for Rivera and against the City in *Rivera v. Guevara*. Responding further, the City states that the verdict entered was a general verdict and did not specify the policy for which it found the City liable was a "pattern or practice." Again, the plaintiff in *Rivera* argued multiple policies for which the jury could find the City liable, including a failure to train. (*See* Def's Ex. H, *Rivera v. Guevara*, Trial Transcripts, closing arguments, p. 4201:6-8) ("We win any which way, all we have to show is one way.") Responding further, City Defendants appealed the judgment in *Rivera v. Guevara*, (*see* Def's Ex. I, Notice of Appeal, *Rivera v. Guevara*, No. 12 C 4428, Dkt. 783, (N.D. Ill. Oct. 16, 2019)), and the parties then engaged in a successful mediation in the Seventh Circuit Court of Appeals wherein the parties reached an agreement to resolve the case for a sum total from the City in turn for, among other things, the defendants dismissing the appeal. (*See* Def's Ex. J, Notice of Cir. Rule 33 Mediation, *Rivera v. Guevara*, No. 19-3045 (7th Cir. Oct. 24, 2019)). The parties executed a Release, Satisfaction of Judgment, and Settlement Agreement (herein the "*Rivera* Agreement") on March 25, 2020, memorializing the terms. (*See* Def's Ex. K, *Rivera* Agreement). The *Rivera* Agreement stated: "[t]he parties and their respective attorneys acknowledge that the settlement of this case is not an admission of liability, or of unconstitutional or illegal conduct by or on the part of any Defendant, and/or the City of**

Chicago's future, current or former officers, agents and employees, and shall not serve as evidence of *any wrongdoing* by or on the part of any Defendant, and/or the City of Chicago's future, current or former officers, agents and employees. The parties and their respective attorneys further acknowledge that settlement is made to avoid the uncertainty of the outcome of litigation and the expense in time and money of further litigation and for the purpose of judicial economy." (**Ex. K,** *Rivera* **Agreement, at ¶ 5) (emphasis added). The** *Rivera* **Agreement further provided that Defendants agreed to dismiss the appeal within fourteen (14) days of the execution of the Rivera Agreement. (***See* **Ex. K, at ¶ 8). The City Defendants timely filed an agreed motion to dismiss the appeal under Federal Rule of Appellate Procedure 42(b), which the Seventh Circuit granted, and issued the mandate. (***See* **Ex. L, Agreed Mtn. Vol. Dismissal,** *Rivera v. Guevara*, **No. 19-3045 (7th Cir. Apr. 6, 2020);** *see* **Ex. M, Notice of Issuance of Mandate,** *Rivera v. Guevara*, **No. 19-3045 (7th Cir. Apr. 7, 2020)).**

70.     During trial, both sides presented extensive Monell evidence, which is collected in the parties' post-trial submissions in Rivera. Ex. 52 (City's Mot. for New Trial) at 2-11; Ex. 53 (Pl.'s Resp. to City's Mot. for New Trial) at 78-109; Ex. 54 (City's Reply In Support of Mot. for New Trial) at 3-23, 30-34. As reflected there, Rivera amassed evidence to show (1) that the suppression of evidence was the result of municipal policy, including (1) evidence of the City's past litigation of the issue, its written policies, its designated Rule 30(b)(6) witness, and expert testimony, and (2) that the Chicago Police Department was aware post-*Jones/Palmer* of its evidence suppression problem in 1982, of its deficient subsequent policies, and of the unabated evidence suppression in homicide investigations throughout the time period that Rivera was prosecuted and convicted. Ex. 53 at 80-90 (citing supportive trial evidence); Ex. 55 (*Rivera* Trial Tr. 6/15/18) at 2210-15, 2226, 2248; Ex. 56 (Rivera Trial Tr. 6/26/18) at 3912-3919; *Rivera v. Guevara*, No. 12-CV-4428, 2019 WL 13249674, at *2-4 (N.D. Ill. Sept. 20, 2019) (denying City's sufficiency of the evidence arguments).

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative and states a legal conclusion.** *See Malec*, **191 F.R.D. at 583;** *Tel-Lock, Inc.*, **2005 WL 741930, at *2;** *Taylor*, **2012 WL 669063, at *1 (Shadur, J) (A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)).**

Subject to and without waiving these objections, Defendant City admits in part and denies in part. The City admits that Plaintiffs have referred to various pleadings filed in the *Rivera* litigation, but denies that the pleadings contain all of the evidence collected and presented at trial, and further denies that these citations to various pleadings from the *Rivera v. Guevara* litigation are material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")

Responding further, City Defendants appealed the judgment in *Rivera v. Guevara*, (*see* Def's Ex. I, Notice of Appeal, *Rivera v. Guevara*, No. 12 C 4428, Dkt. 783, (N.D. Ill. Oct. 16, 2019)), and the parties then engaged in a successful mediation in the Seventh *Circuit* Court of Appeals wherein the parties reached an agreement to resolve the case for a sum total from the City in turn for, among other things, the defendants dismissing the appeal. (*See* Def's Ex. J, Notice of Cir. Rule 33 Mediation, *Rivera v. Guevara*, No. 19-3045 (7th Cir. Oct. 24, 2019). The parties executed a Release, Satisfaction of Judgment, and Settlement Agreement (herein the "*Rivera* Agreement") on March 25, 2020, memorializing the terms. (*See* Ex. K, *Rivera* Agreement). The *Rivera* Agreement stated: "[t]he parties and their respective attorneys acknowledge that the settlement of this case is not an admission of liability, or of unconstitutional or illegal conduct by or on the part of any Defendant, and/or the City of Chicago's future, current or former officers, agents and employees, and shall not serve as evidence of *any wrongdoing* by or on the part of any Defendant, and/or the City of Chicago's future, current or former officers, agents and employees. The parties and their respective attorneys further acknowledge that settlement is made to avoid the uncertainty of the outcome of litigation and the expense in time and money of further litigation and for the purpose of judicial economy." (Def's Ex. K, *Rivera* Agreement, at ¶ 5) (emphasis added). The *Rivera* Agreement further provided that Defendants agreed to dismiss the appeal within fourteen (14) days of the execution of the Rivera Agreement. (*See* Ex. K, at ¶ 8). The City Defendants timely filed an agreed motion to dismiss the appeal under Federal Rule of Appellate Procedure 42(b), which the Seventh Circuit granted, and issued the mandate. (*See* Def's Ex. L, Agreed Mtn. Vol. Dismissal, *Rivera v. Guevara*, No. 19-3045 (7th Cir. Apr. 6, 2020); *see* Def's Ex. M, Notice of Issuance of Mandate, *Rivera v. Guevara*, No. 19-3045 (7th Cir. Apr. 7, 2020).

71.     Rivera's expert, Michael Brasfield, conducted an analysis of 138 Chicago Police Department homicide files, this time from Area Five for the years 1985 to 1991, which revealed that in more than 90% of cases information in Chicago Police Department files were not produced to prosecutors and criminal defense attorneys in the criminal justice system, and in a full 100% of cases the written policies promulgated by the City after *Palmer* were not followed.

Ex. 55 (*Rivera* Trial Tr. 6/15/18) at 2210-15, 2226, 2248; Ex. 56 (Rivera Trial Tr. 6/26/18) at 3912-3919.

**RESPONSE:** To the extent that Plaintiffs are relying on these "facts" to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to Plaintiffs' motion for partial summary judgment, nor do they warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Specifically, this paragraph references analysis of files "for the years 1985 to 1991" thirteen to seven years before the arrest of Plaintiffs in this matter.

Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative and states a legal conclusion. *See Malec*, 191 F.R.D. at 583; *Tel-Lock, Inc.*, 2005 WL 741930, at *2. Plaintiffs also have no foundation to rely on an expert report from a previous litigation where the expert was not retained or deposed in this litigation. *See Ideal Mfg. & Sales Corp. v. Pase Grp., Inc.,* 2008 WL 11463582, at *9 (E.D. Wis. Nov. 24, 2008) ("'while an unsworn expert report, standing alone, does not constitute admissible evidence that can be considered at the summary judgment stage of the proceedings, and will not defeat a motion for summary judgment, an unsworn expert report may be considered at summary judgment where the opinions therein are otherwise adopted or reaffirmed in an *admissible affidavit or deposition testimony* by the expert'") (emphasis added) (quoting *Maytag Corp. v. Electrolux Home Products, Inc.,* 448 F. Supp. 2d 1034, 1065 (N.D. Iowa 2006))

Subject to and without waiving these objections, Defendant City admits in part and denies in part. The City admits that plaintiff Rivera's expert testified to the statistics included in this paragraph, but denies that he had the proper foundation to provide said testimony.

72.     The City's post-trial motion was denied. *Rivera*, 2019 WL 13249674, at *4.

**RESPONSE:** Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative and states a legal conclusion. *See Malec*, 191 F.R.D. at 583; *Tel-Lock, Inc.*, 2005 WL 741930, at *2; *Taylor*, 2012 WL 669063, at *1 (Shadur, J) (A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)).

Subject to and without waiving these objections, Defendant City admits in part and denies in part. The City admits that the post-trial motions filed in *Rivera v. Guevara* were denied, but denies that the citation to the ruling on the post trial motions are material to Plaintiffs' motion for partial summary judgment, nor does it warrant granting Plaintiffs' motion for partial summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")

**Responding further, City Defendants appealed the judgment in *Rivera v. Guevara*, (*see* Def's Ex. I, Notice of Appeal, *Rivera v. Guevara*, No. 12 C 4428, Dkt. 783, (N.D. Ill. Oct. 16, 2019)), and the parties then engaged in a successful mediation in the Seventh *Circuit* Court of Appeals wherein the parties reached an agreement to resolve the case for a sum total from the City in turn for, among other things, the defendants dismissing the appeal. (*See* Def's Ex. J, Notice of Cir. Rule 33 Mediation, *Rivera v. Guevara*, No. 19-3045 (7th Cir. Oct. 24, 2019)). The parties executed a Release, Satisfaction of Judgment, and Settlement Agreement (herein the "*Rivera* Agreement") on March 25, 2020, memorializing the terms. (*See* Def's Ex. K, *Rivera* Agreement). The *Rivera* Agreement stated: "[t]he parties and their respective attorneys acknowledge that the settlement of this case is not an admission of liability, or of unconstitutional or illegal conduct by or on the part of any Defendant, and/or the City of Chicago's future, current or former officers, agents and employees, and shall not serve as evidence of *any wrongdoing* by or on the part of any Defendant, and/or the City of Chicago's future, current or former officers, agents and employees. The parties and their respective attorneys further acknowledge that settlement is made to avoid the uncertainty of the outcome of litigation and the expense in time and money of further litigation and for the purpose of judicial economy." (Ex. K, *Rivera* Agreement, at ¶ 5) (emphasis added). The *Rivera* Agreement further provided that Defendants agreed to dismiss the appeal within fourteen (14) days of the execution of the Rivera Agreement. (*See* Ex. K, at ¶ 8). The City Defendants timely filed an agreed motion to dismiss the appeal under Federal Rule of Appellate Procedure 42(b), which the Seventh Circuit granted, and issued the mandate. (*See* Def's Ex. L, Agreed Mtn. Vol. Dismissal, *Rivera v. Guevara*, No. 19-3045 (7th Cir. Apr. 6, 2020); *See* Ex. M, Notice of Issuance of Mandate, *Rivera v. Guevara*, No. 19-3045 (7th Cir. Apr. 7, 2020).**

73.    In *Kluppelberg v. Burge*, 276 F. Supp. 3d 773 (N.D. Ill. 2017), a case concerning a claim that the City had a policy of suppressing exculpatory evidence that resulted in the suppression of investigative information in a 1984 homicide arson investigation that led to James Kluppelberg's 1988 arrest and 1989 wrongful conviction, the plaintiff Kluppelberg advanced this theory with all of the same evidence offered in *Fields*, including an expert analysis of additional homicide files from Area Three. 276 F. Supp. at 777 n.6. The district court granted Kluppelberg's motion to apply collateral estoppel, stating that:

> To establish that the issues are the same and were necessarily decided, Kluppelberg must show that the jury in *Fields*, in order to have reached its verdict, had to have found that the City had a policy or practice of withholding material exculpatory and/or impeachment evidence, specifically street files.... The court finds that Kluppelberg has met that burden. That the jury must have found a policy or practice of withholding evidence is clear from the jury instructions in *Fields*, which stated that, to

succeed on his *Monell* claim, Fields must prove by a preponderance of the evidence that 'it was the policy of the City of Chicago to conceal material exculpatory and/or impeachment evidence.'.... Kluppelberg's motion to apply collateral estoppel barring the City from arguing that it did not have a policy or practice of withholding material exculpatory and/or impeachment evidence contained in street files is granted." *Id*. at 776-79.

**RESPONSE:** **Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56(d) because it is not supported by admissible evidence, is argumentative and states a legal conclusion.** ***See Malec***, **191 F.R.D. at 583;** ***Tel-Lock, Inc.***, **2005 WL 741930, at \*2;** ***Taylor***, **2012 WL 669063, at \*1 (Shadur, J) (A Judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 802(22)).**

Dated: January 27, 2025

Respectfully Submitted,

by: /s/ *Eileen E. Rosen*
Eileen E. Rosen
Special Assistant Corporation Counsel
*One of the Attorneys for City of Chicago*

Eileen E. Rosen
Theresa Berousek Carney
Catherine M. Barber
Austin G. Rahe
Lauren M. Ferrise
Rock Fusco & Connelly, LLC
333 W. Wacker, 19th Floor
Chicago, Illinois 60606
(312) 494-1000
erosen@rfclaw.com