## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTIRCT OF ILLINIOS
## EASTERN DIVISION

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | |
| Plaintiff, | ) | 1:18 Civ. 1028 |
| | ) | |
| v. | ) | Hon. Steven Seeger |
| | ) | District Judge |
| REYNALDO GUEVARA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| GABRIEL SOLACHE, | ) | |
| | ) | |
| Plaintiff, | ) | 1:18 Civ. 2312 |
| | ) | |
| v. | ) | Hon. Steven Seeger |
| | ) | District Judge |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **DEFENDANTS' RENEWED MOTION TO BIFURCATE TRIAL**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................................ 1

LEGAL STANDARD.......................................................................................................................... 4

ARGUMENT........................................................................................................................................ 4

I.     PLAINTIFFS' *MONELL* CLAIMS SHOULD BE BIFURCATED BECAUSE A JOINT TRIAL WOULD UNFAIRLY PREJUDICE ALL DEFENDANTS.................................................................... 4

II.    BIFURCATION IS APPROPRIATE BECAUSE THE CITY'S LIABILITY DEPENDS ENTIRELY ON PLAINTIFFS FIRST PROVING LIABILITY AGAINST DEFENDANT OFFICERS. 11

III.    BIFURCATION OF A *MONELL* TRIAL PROMOTES SIGNIFICANT JUDICIAL ECONOMY. ................................................................................................................................................ 14

CONCLUSION.................................................................................................................................... 19

# CASES

*Ackerman v. Allen*, 2017 WL 1536447 (N.D. Ill., April 27, 2017) ........................................ 11, 12

*Bradford v. City of Chicago*, 2019 WL 5208852 (N.D. Ill. October 16, 2019)........................ 5, 12

*Carr v. City of North Chicago*, 908 F.Supp.2d 926 (N.D. Ill. 2012)..................................... 10, 14

*Castillo v. City of Chicago*, 2012 WL 1658350 (N.D. Ill. May 11, 2012) ..................................... 21

*City of Los Angeles v. Heller*, 475 U.S. 796 (1986)......................................................... 13, 14

*Cruz v. City of Chicago*, 2008 WL 5244616 (N.D. Ill. Dec. 16, 2008) ........................................... 4

*Dollard v. Whisenand*, 946 F.3d 342 (7th Cir. 2019) ................................................................... 8

*Estate of McIntosh v. City of Chicago*, 2015 WL 5164080 (N.D. Ill. Sept. 2, 2015)................... 10

*First Midwest Bank v. City of Chicago*, 988 F.3d 978 (7th Cir. 2021)........................................ 13

*Gibson v. City of Chicago*, 2021 WL 2127182 (N.D. Ill. April 6, 2021) ..................................... 11

*Horton v. City of Chicago*, 2016 WL 316878 (N.D. Ill. 2016)..................................................... 20

*Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117 (7th Cir. 1999)..................................... 5

*Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647 (7th Cir. 2021)....................................... 12

*Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988) ........................................................... 6, 7

*Kuri v. City of Chicago*, 409 F.Supp.3d 626 (N.D. Ill. 2019)..................................................... 15

*Lindsey v. Orlando*, 232 F.Supp.3d 1027 (N.D. Ill. 2017) ......................................................... 14

*Lopez v. City of Chicago,* 2002 WL 335346 (N.D. Ill. Mar. 1, 2002) ......................................... 10

*Mims v. City of Chicago*, 155 F.4th 970 (7th Cir. 2025) ........................................................ 9, 13

*Mims v. City of Chicago*, No. 18-cv-7192, 2024 WL 1075152 (N.D. Ill. Mar. 12, 2024) ........... 13

*Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978)............................... 1

*Moore v. City of Chicago*, 2007 WL 3037121 (N.D. Ill. Oct. 15, 2007)....................................... 22

*Moran v. Calumet City*, 54 F.4th 483 (7th Cir. 2022) ................................................................. 13

*Ojeda-Beltran v. Lucio*, 2008 WL 2782815 (N.D. Ill. July 16, 2008)........................................... 9

*Palmer v. City of Chicago*, 755 F.2d 560 (7th Cir. 1985) (“*Palmer I*”) ........................................ 6

*Palmer v. City of Chicago*, 806 F.2d 1316 (7th Cir. 1987) (“*Palmer II*”).................................. 6, 7

*Savory v. Cannon*, 2022 WL 767169 (N.D. Ill. March 14, 2022) ............................................... 21

*Swanigan v. City of Chicago*, 775 F.3d 953 (7th Cir. 2015)................................................... 14, 21

*Swanigan v. City of Chicago*, 881 F.3d 577 (7th Cir. 2018)....................................................... 15

*Taylor v. Kachiroubas*, 2013 WL 6050492 (N.D. Ill. Nov. 15, 2013) ........................................ 20

*Treece v. Hochstetler*, 213 F.3d 360 (7th Cir. 2000) ............................................................... 4, 14

*Veal v. Kachiroubas*, 2014 WL 321708 (N.D. Ill. Jan. 29, 2014) ............................................... 10

*Washington v. Boudreau*, No. 16-cv-01893, 2023 WL 184239 (N.D. Ill. Jan. 13, 2023) ........ 9, 12

*Wrice v. Byrne*, 14 C 5934, 2020 WL 13961378 (N.D. Ill. June 24, 2020) ................................ 16

Defendants City of Chicago (the "City") and Joann Halvorsen, as Special Representative of Ernest Halvorsen (deceased), Edwin Dickinson, Robert Rutherford, Daniel Trevino, and Reynaldo Guevara (collectively, "Defendant Officers"), by and through their undersigned counsel, renew their motion to bifurcate Plaintiffs' claims against Defendant Officers from their claims against the City pursuant to *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978) for trial. Bifurcation is now appropriate because (1) trying the *Monell* claims with the claims against Defendant Officers (one of whom is deceased and who will have no opportunity to testify) will unfairly prejudice all Defendants; (2) as a matter of law, the *Monell* claims are wholly contingent on resolving the claims against Defendant Officers and are unnecessary to try; and (3) bifurcating *Monell* from trial serves interest of judicial economy. In support of their Motion, Defendants state as follows:

## INTRODUCTION

As this Court is aware, the Court ruled on the parties' various summary judgment motions (Dkts. 797, 806, 814, 815[1]) and set this matter for trial May 11, 2026. (Dkt. 821). After summary judgment, the only claims that survive against Defendant Officers are coerced and fabricated confessions claims, three out of the twelve *Brady* claims (theories #5, 6, and 12[2]), failure to intervene claims, §1983 deprivation of liberty claims, and state law claims for malicious prosecution, conspiracy, and intentional infliction of emotional distress; and the only claims that

---

[1] When citing to the record, Defendants will refer to *Reyes v. Guevara, et al.*, 18-cv-1028, unless there are material distinctions, then Defendants will refer to both dockets.

[2] Theory #5 is that Defendant Officers allegedly suppressed evidence that they initially investigated the Soto family members as suspects; theory #6 is that Defendants Guevara and Halvorsen allegedly withheld what the victims' neighbor initially told police which was different from his trial testimony; and theory #12, which this Court described as a subset of theory #5, where Plaintiffs allege that polaroid photos of alternative suspects were allegedly withheld. (Dkt. 797; Ex. 1, 7/24/25 Transcript of Oral Ruling, at 84:8-93:8, 98:4-25).

survive against the City are *Monell* theories based upon an alleged failure to discipline and "street files," plus derivative claims of respondeat superior and indemnification. (Dkts. 797, 814, 815). A single trial of all these claims will be extremely complex, time-consuming, unwieldy, and expensive.

If past is prologue, by way of example in another Guevara-related case with similar claims set for trial January 5, 2026, *Johnson v. Guevara, et al.*, 20-cv-4156, the parties recently exchanged proposed trial exhibits, proposed proofs, and anticipated witnesses demonstrates this point. In that analogous case, in which plaintiff Johnson is represented by the same firm that represents Plaintiff Reyes in this case, plaintiff Johnson intended to offer approximately 250 exhibits related solely to his *Monell* claim – just one of those exhibits includes over **200,000 pages of documents**, and there are many more exhibits that are equally voluminous. (*See, e.g., Johnson v. Guevara, et al.*, 20-cv-4156, Dkt. 415-1, Plaintiff's Exhibit List, No. 354 labeled "Documents relating to Guevara victim Roberto Almodovar and William Negron," which is one of over 60 exhibits that include hundreds if not thousands of pages of document labeled "Documents related to Guevara victim XXX").

To be sure, rather than being predicated upon a discrete policy issue stemming from a singular municipal action, Plaintiffs' *Monell* claims are complex and predicated upon alleged systemic flaws as well as behavioral norms spanning decades of time. To that end, Plaintiffs, like plaintiff Johnson, will inevitably attempt to introduce wide-ranging evidence, including contested past and current pending litigation matters, scores of disputed allegations from other incidents, exhibits that include hundreds of thousands of pages of documents, and more. There can be no question that a simultaneous trial would be unfairly prejudicial to both the City and Defendant Officers, particularly where this Court has significantly narrowed the *Brady* claims against Defendant Officers to whether they suppressed that: 1) they initially investigated the Soto family

2

members as suspects (theory #5); 2) when they asked Alfredo Aranda, a neighbor of the victims who testified at trial that he had heard sounds coming from the Sotos' family apartment that corroborated the content of Plaintiffs' false confessions, if Aranda had heard sounds, he initially said he had not heard such sounds, and that Guevara and Halvorsen nevertheless wrote a report claiming Aranda heard those sounds and never disclosed that he initially said he had not heard sounds (theory #6); and 3) polaroid photos that they took of individuals they considered alternative suspects in the crime (theory #12) (Dkt. 797; Ex. 1, 7/24/25 Transcript of Oral Ruling, at 84:8-93:8, 98:4-25), which are the only claims that would support Plaintiffs' *Monell* theories at trial concerning evidence suppression or "street files."

Introduction of Plaintiffs' likely wide-ranging *Monell* evidence is unnecessary and will only further detract from reaching the core remaining constitutional issues in this case: did Defendant Officers fabricate or coerce Plaintiffs' confessions, and did they withhold evidence that they investigated other potential suspects, and if so, is that exculpatory *Brady* evidence? The factual and legal underpinnings to adjudicate those claims are already complex and will command significant resources and marshalling of much evidence and witnesses. *Monell* adds nothing to the merits of those issues and affords Plaintiffs not a cent of additional recovery if they prove those claims. The burdens on the trial process and prejudicial effect of the evidence are decidedly unnecessary. This is particularly true because, as summary judgment has made clear, Plaintiffs' theory of liability against the City under *Monell* depends completely upon Plaintiffs first proving that Defendant Officers violated their constitutional rights. Ex. 2, 10/1/25 Transcript of Oral Ruling, at 5:18-20 ("The three requirements for *Monell* liability are well-established. First, there must be a deprivation of a constitutional right"). If they do prevail against Defendant Officers, Plaintiffs will be afforded all the relief to which they are entitled and if they do not, they cannot

prevail under *Monell. Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 305 (7th Cir. 2009) (without an underlying constitutional violation, plaintiffs cannot proceed with a *Monell* claim on the same basis because doing so would create an inconsistent verdict). As explained below, Defendants' Motion should be granted.

## LEGAL STANDARD

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues [or] claims." Fed. R. Civ. P. 42(b); *Chlopek v. Federal Insurance Co.*, 499 F.3d 692, 700 (7th Cir. 2007) (bifurcation appropriate if it will "prevent prejudice to a party or promote judicial economy"). "If one of these criteria is met, the district court may order bifurcation as long as doing so will not prejudice the non-moving party or violate the Seventh Amendment," which guarantees a jury trial for civil cases in federal court. *Id.* "District courts approach bifurcation motions with a pragmatic mindset," *Cruz v. City of Chicago*, 2008 WL 5244616, at *1 (N.D. Ill. Dec. 16, 2008), and have "considerable discretion to order the bifurcation of a trial." *Treece v. Hochstetler*, 213 F.3d 360, 364-65 (7th Cir. 2000).

## ARGUMENT

### I. PLAINTIFFS' *MONELL* CLAIMS SHOULD BE BIFURCATED BECAUSE A JOINT TRIAL WOULD UNFAIRLY PREJUDICE ALL DEFENDANTS.

Bifurcation may be proper based on prejudice alone. *See Chlopek*, 499 F.3d at 700 (bifurcation is appropriate *either* to prevent prejudice *or* to promote judicial economy) (emphasis added); *Bradford v. City of Chicago*, 2019 WL 5208852, at *4 (N.D. Ill. October 16, 2019) ("prejudice alone can justify bifurcation"). A court must determine if separate trials would avoid prejudice against a party or serve the purpose of judicial economy, though only one of these criteria needs to be met. *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999). Here, a combined trial that includes the *Monell* claims in this case will significantly and

unnecessarily prejudice both the City and Defendant Officers, particularly where one of Defendant Officers, Halvorsen, is deceased and therefore cannot defend himself against the tsunami of *Monell* evidence that Plaintiffs will introduce at trial to prove their *Monell* claims. Nor can the City defend itself by examining Defendant Halvorsen as to his understanding of the CPD policy and procedure.

In addition to Exhibit No. 354, "Documents relating to Guevara victim Roberto Almodovar and William Negron," discussed above, in the analogous case of *Johnson v. Guevara*, which will mirror this case almost exactly[3], plaintiff Johnson identified 250 exhibits to support his *Monell* claim. (*See Johnson v. Guevara, et al.*, 20-cv-4156, Dkt. 415-1, Pl.'s Ex. List, Nos. 168-187, 191-204, 243-458; *see also*, *Johnson v. Guevara, et al.*, 20-cv-4156, Dkt. 423, Defs.' Renewed Mt. Bifurcate Trial, at 4-11 for list of *Monell* exhibits). Even a cursory review of this list demonstrates that Plaintiffs intend to interject scores of unrelated documents related to hundreds if not thousands of unrelated incidents in pursuit of their *Monell* claims. And, as this list demonstrates, a joint trial will invite evidence concerning police conduct spanning decades that is entirely unrelated to the conduct of Defendant Officers, the facts of this case, or the relevant time period. First, Plaintiffs purport to draw a similarity between an investigation of alternative suspects and purported fabrication of a witness statement in this case which was allegedly withheld and the *file* that was subject to the litigation in *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988), as well as the Seventh Circuit's decisions in *Palmer v. City of Chicago*, 755 F.2d 560 (7th Cir. 1985) ("*Palmer I*") and *Palmer v. City of Chicago*, 806 F.2d 1316 (7th Cir. 1987) ("*Palmer II*"). Indeed, Plaintiffs' *Monell* expert, Thomas Tiderington, devotes twelve pages of his sixty-six-page Report on the history of the *Jones* and *Palmer* cases, CPD's policies in the wake of *Jones* and *Palmer*, and his

---

[3] The principal difference between Johnson's *Monell* claim and Plaintiffs' *Monell* claims, is that Johnson pursued a *Monell* theory based upon the City's eyewitness identification policies (which Plaintiffs, here, do not pursue) and Johnson did not pursue a failure to discipline theory (which Plaintiffs do pursue.)

conclusion that these written policies did not adequately address the *Jones* and *Palmer* "street files" problem. (Dkt. 759-2, Ex. A, Tiderington's Report, at 36-48).

However, Plaintiffs' premise for the theory that *Jones* and *Palmer* established a "problem of system suppression of investigative materials" is flawed. Neither of these cases stands for the proposition that the City had an evidence suppression policy *per se*. In fact, in *Jones*, the Seventh Circuit specifically noted that "the lawfulness of the street files practice has never been adjudicated." 856 F.2d at 995. Furthermore, in *Palmer II*, the Court affirmatively held that the class plaintiffs failed to prove any systemic constitutional violations as a result of the City's "street file" practice. 806 F.2d at 1320-21. Specifically, the Seventh Circuit found that the class plaintiffs' claims "depend[] on there being exculpatory material in the street files – *and there isn't any*. The suit has been abandoned because it has been shown to have, in fact, *no legal merit*." *Id*. (emphasis added). Initially investigating other suspects, polaroid photos of alleged alternative suspects, and what the victims' neighbor allegedly initially told police is nothing like the *Jones* "street file." And while this Court denied the City's *Daubert* motion which sought to bar Tiderington from opining on *Jones* and *Palmer*, this Court expressly noted that "[i]t's true that an expert cannot uncritically rely on summaries prepared by someone else…So if the City thinks that Tiderington's thoughts on the cases are thin, that's best saved for cross-examination." Ex. 3, 8/7/25 Transcript of Oral Ruling, at 12:12-20. The Court further noted that Tiderington's testimony that he did not read *Palmer* "in specific detail" could be "meat on the bone for cross-examination" and that the City could question Tiderington on his knowledge of the cases and call his credibility into question. *Id.* at 12:25-13:5. In reference to Tiderington, the Court stated,

> I will say this as an observation: Sometimes expert reports are bloated. Sometimes expert reports do too much. Sometimes that's a great benefit to the opposing party because it creates a target-rich environment, because most experts don't know their reports as well as they think they do, and it leads to vulnerability. So when you have

6

an expert report that's 50 pages or 60 pages or 70 pages or 80 pages, the expert better know it or the expert is going to get exposed.

*Id.* at 13:6-14.

Likewise, Plaintiffs' reliance on *Fields v. City of Chicago*, *Rivera v. City of Chicago*, and *Kluppelberg v. City of Chicago* and the analysis conducted by a different expert, Mike Brasfield, that Tiderington adopted to prop up his street files opinion will similarly inject extensive cross-examination to expose Tiderington's abject failure to conduct any of the analysis set forth in Brasfield's opinions. Acting as a blueprint for this case, plaintiff Johnson also identified at least 11 exhibits from the *Fields* civil lawsuit including hundreds of pages of trial testimony, at least 41 exhibits from the *Rivera* civil lawsuit including thousands of pages of trial testimony, and at least 8 exhibits from the *Kluppelberg* civil lawsuit. (*See Johnson v. Guevara, et al.*, 20-cv-4156, Dkt. 415-1, Pl.'s Ex. List, Nos. 137-41, 249-53, 258, 289-94, 296, 300, 306-331, 333-42, 451).

Additionally, equally prejudicial is the introduction of non-party officers' actions at trial through the vehicle of hundreds of unrelated homicide investigations and complaint register ("CR") files (Finnell purports to rely on 765 CR files in support of his opinion that the City engaged in a widespread pattern and practice that condoned unlawful, unreasonable, and improper law enforcement practices) that Plaintiffs plan to introduce to prove their *Monell* claims—evidence that otherwise would be impermissible propensity evidence barred by Federal Rules of Evidence 403 and 404(b). In fact, this Court noted the potential for prejudice resulting from both Tiderington's and Finnell's expert opinions, inviting additional motions to bar both Tiderington and Finnell based on Federal Rule of Evidence 403. Ex. 3, 8/7/25 Transcript of Oral Ruling, 33:1-15; 48:18-20; 55:7-9. Plaintiffs seek to use *Monell* to raise the specter of unrelated police misconduct so that Defendant Officers will be found liable by association. But "the concept of guilt by association is repugnant to our notion of elemental justice and fair play." *Dollard v.*

*Whisenand*, 946 F.3d 342, 359 (7th Cir. 2019). Plaintiffs intend, through Tiderington, to introduce evidence of unrelated homicide files that their expert concluded contained documents that were withheld, despite Tiderington's concession that he never reviewed any of the Cook County State's Attorney files for any of the homicide files he claims to have reviewed. (Dkt. 759, Mot. Bar Tiderington, at 15-16). *Mims v. City of Chicago*, 155 F.4th 970 (7th Cir. 2025) (Brady's disclosure obligation rests primarily with the prosecution; "a criminal defendant generally cannot establish a *Brady* violation by pointing to a police failure to disclose exculpatory evidence if the prosecutor was aware of that evidence or obtained it from another source."). This evidence will amount to accusations that the City, through its practices, committed multiple *Brady* violations. Similarly, Plaintiffs intend, through Finnell, to introduce hundreds of unrelated CR files to establish that the City's alleged failure to discipline and supervise created a sense of impunity for Defendant Officers. Accordingly, if alleged City practices based largely on unrelated homicide cases and CR files are shared with the jury, the extreme prejudice suffered by Defendant Officers, one of whom is deceased and has no ability to distance himself from any of the unrelated complaints, investigations and *Brady* accusations, can only be cured by the bifurcation at trial of Plaintiffs' claims against Defendant Officers and their *Monell* claims against the City.

Various courts that have bifurcated *Monell* claims for trial agree. *See Washington v. Boudreau*, No. 16-cv-01893, 2023 WL 184239, at *6 (N.D. Ill. Jan. 13, 2023) (finding the risk of unfair prejudice to defendants justified bifurcation, noting that "[i]t is possible, perhaps probable, that a jury would, by association, impermissibly tag the defendant officers with accountability for the notorious and lurid 'Burge era' after having been presented with evidence to that effect"); *Ojeda-Beltran v. Lucio*, 2008 WL 2782815, at *3 (N.D. Ill. July 16, 2008) (finding "there is a real 'danger that evidence admissible on the issues relating to conduct by the City ... will contaminate

the mind of the finder of fact in its consideration of the liability of the other defendant[s]" and concluding bifurcation of the *Monell* claim "is a proper means to combat this potential prejudice"); *Veal v. Kachiroubas*, 2014 WL 321708, at *6 (N.D. Ill. Jan. 29, 2014) ("Presenting evidence to the jury regarding [an] [entity]-wide policy, practice or custom involving improper [individual] actions poses a danger of undue prejudice to the [individuals] by creating the perception that the [entity] routinely acts improperly, even if the [individuals] acted properly…."); *Lopez v. City of Chicago,* 2002 WL 335346, at *2 (N.D. Ill. Mar. 1, 2002) ("[w]ithout bifurcation, the jury would likely hear evidence against the City of Chicago's various acts of alleged police misconduct committed by numerous non-party officers to establish a policy or practice. Such evidence can be prejudicial to the individual defendants."); *Carr v. City of North Chicago*, 908 F.Supp.2d 926, 934 (N.D. Ill. 2012) (allegations of misconduct against non-defendants could prejudice defendants' ability to distinguish their own actions from those of other non-party officers and strongly favors bifurcation). Indeed, even courts that have denied bifurcation motions, finding undue prejudice analysis "premature and too speculative" at the early stages of the case, have stated they may still order a bifurcation of trial. *Estate of McIntosh v. City of Chicago*, 2015 WL 5164080, at *9 (N.D. Ill. Sept. 2, 2015); s*ee also Gibson v. City of Chicago*, 2021 WL 2127182, at *3 (N.D. Ill. April 6, 2021) (the court would "consider a renewed motion to bifurcate prior to trial based on specific evidence the parties intend to present on the individual and municipal liability claims").

Jury instructions also cannot prevent Defendant Officers from being irreparably tainted by evidence concerning the conduct of other non-party officers. While courts are divided on the efficacy of limiting instructions, there is no dispute that bifurcation eliminates the risk of prejudice. As then-Chief Judge Castillo wrote in a case presenting the possibility of far less actual prejudice than presented here,

> Bifurcation also reduces the risk of unfairly prejudicial evidence being presented at trial. By their very nature, *Monell* claims normally invite the use of evidence of other instances where municipality employees violated an individual's constitutional rights. Evidence of other non-party officers using excessive force could lead the jury to infer that the Defendant Officers committed similar acts, even if the evidence presented at trial did not support such a finding. It is true that courts may minimize this risk by instructing the jury, and juries are presumed to dutifully follow limiting instructions. *However, while jury instructions may correct for such prejudice, bifurcation avoids it entirely.*

*Ackerman v. Allen*, 2017 WL 1536447, at *5 (N.D. Ill., April 27, 2017) (emphasis added). Chief Judge Castillo added that "[b]ifurcation will also reduce unfair prejudice to Defendants by minimizing the opportunities for the jury to infer the guilt of one party by the acts of another," and while limiting instructions might minimize the prejudice from presenting individual and *Monell* claims in the same trial, "the fact that such prejudice is curable does not mean that it is unavoidable." *Id.* at *7. *See also Washington*, 2023 WL 184239, at *6 ("This case presents one of those perhaps-rare occasions where, in the Court's view, limiting instructions and stipulations are insufficient to ameliorate the potential prejudice to Defendants.").

Finally, bifurcation of the *Monell* claims at trial is necessary to avoid prejudice to the City. Plaintiffs have claims against Defendant Officers other than their *Brady* claims. Specifically, their fabrication and coerced confession claims, as well as liability stemming from the derivative claims based upon these alleged fabrications. But *Monell* and its progeny provide § 1983 plaintiffs with a means to hold a municipality liable for its *own* conduct, not a way to establish the City's liability solely by association with Defendant Officers. "*Monell* rejected the common-law theory of respondeat superior liability for an employee's actions. Instead, the court crafted a new, more restrictive standard to determine when a municipal government itself has caused a deprivation of constitutional rights." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). Trying all claims together makes it much more likely that jurors will misunderstand *Monell*

10

liability and treat it as nothing more than vicarious liability. This point is "compelling" and "counsels in favor of bifurcation." *Bradford*, 2019 WL 5208852, at *4. For these reasons, Defendants' Motion should be granted.

## II. BIFURCATION IS APPROPRIATE BECAUSE THE CITY'S LIABILITY DEPENDS ENTIRELY ON PLAINTIFFS FIRST PROVING LIABILITY AGAINST DEFENDANT OFFICERS.

Plaintiffs cannot prevail against the City as to their *Brady* or their failure to discipline theories unless they first prove either that Defendant Officers concealed that they were pursuing alternative suspects or concealed that they fabricated witness Aranda's statement that caused them to suffer prejudice at their criminal trials or that Defendant Officers violated Plaintiffs' constitutional rights by withholding exculpatory evidence, coercing their confessions, knowingly fabricated their confessions, or deprived Plaintiffs of their liberty and, in turn, damages. *Moran v. Calumet City*, 54 F.4th 483, 492 (7th Cir. 2022) (setting forth the required elements for § 1983 liability for a fair trial *Brady* claim). Again, there must be "more than simply proving that exculpatory evidence was not disclosed to the defense." *Id*. *Mims v. City of Chicago*, No. 18-cv-7192, 2024 WL 1075152, at *9, 18-19 (N.D. Ill. Mar. 12, 2024) (plaintiff needed affirmative evidence that police withheld information and officers were not obligated to ensure court-impounded materials accessible by prosecutors "actually made it into the hands of defense counsel"); *Mims v. City of Chicago*, 155 F.4th 970 (7th Cir. 2025) (evidence is considered suppressed in a § 1983 suit only if a police officer "acted intentionally or at least recklessly" in failing to turn it over to the prosecution). As the Supreme Court has stated, "if [plaintiff is] unsuccessful in [his] claims against the individual defendants, [he] will no longer have a cause of action against the city." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021); s*ee also Swanigan v. City of Chicago*,

775 F.3d 953, 962 (7th Cir. 2015). Likewise, the City cannot be liable under *Monell* on a failure to discipline theory, unless Defendant Officers violated Plaintiffs' constitutional rights. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (as a fundamental principle, if no constitutional violation occurred, the alleged City policies are "quite beside the point"). Thus, if Plaintiffs do not prove that Defendant Officers concealed that they were investigating alternative suspects causing them to suffer prejudice at their criminal trials or that Defendant Officers otherwise violated Plaintiffs' constitutional rights as set forth above and damages, then their claims against the City are extinguished.

Pursuant to *Heller*, Plaintiffs first must prove their claims against Defendant Officers to succeed against the City on their *Monell* claims. For this reason, bifurcation is proper. *See Treece*, 213 F.3d at 364 (approving bifurcation in light of *Heller*); *Lindsey v. Orlando*, 232 F.Supp.3d 1027, 1035 (N.D. Ill. 2017) ("Bifurcating the claims makes particular sense where the *Monell* claim is wholly dependent on the outcome of the cases against the individual defendants."); *Carr*, 908 F.Supp.2d at 930 (bifurcation is appropriate if the plaintiff did not suffer an injury to his constitutional rights); *Williams v. City of Chicago,* 315 F.Supp.3d 1060, 1081 (N.D. Ill. 2018) ("because there is no way that a jury could consistently find the City liable without first finding the Officers liable, this factor weighs in favor of bifurcation").

Indeed, trial of the *Monell* claims ultimately may be unnecessary under any circumstances. If Defendant Officers are found not liable as to the *Brady* claims, there will be no basis to impose *Monell* liability on the City based upon any *Brady Monell* theory of liability, for the reasons explained above. Conversely, if one or more of Defendant Officers are found liable to Plaintiffs as to the *Brady* claims remaining for trial, the City has proposed a consent that will allow for the entry of a judgment against it for any compensatory damages a jury awards against Defendant Officers,

plus reasonable attorney fees, without requiring Plaintiffs to prove the remaining elements of §
1983 municipal liability. *See* Ex. 4, Limited Consent to Entry of Judgment. The same analysis
applies to Plaintiffs' failure to discipline theory of *Monell* liability. Defendants recognize the Court
has previously refrained from adopting this Limited Consent during discovery and prior to
adjudication of Defendants' motions for summary judgment. But much has changed since that
ruling and this matter is set for a month-long trial on the claims against Defendant Officers. Even
if Plaintiffs prevail on their constitutional claims against Defendant Officers, they cannot recover
any more compensation against the City even if they were to prevail against the City on their
*Monell* claims. *See Swanigan v. City of Chicago*, 881 F.3d 577, 582 (7th Cir. 2018) ("Federal
common law prevents § 1983 plaintiffs from recovering twice for the same injury. That means
Swanigan cannot recover from the City for the prolonged detention because he was compensated
for that constitutional violation in his suit against the officers."). In fact, Judge Chang recently
found that where there is a verdict against the indemnified defendant officers, there no longer is a
case or controversy to proceed on a *Monell* claim. *See Kuri v. City of Chicago*, 409 F.Supp.3d 626,
653 (N.D. Ill. 2019) (denying plaintiff's motion to re-open previously bifurcated *Monell* claim
following verdict against individual defendants for lack of "live case or controversy against the
City on which Kuri can move forward"); *see also Wrice v. Byrne*, 14 C 5934, 2020 WL 13961378,
at *1-2 (N.D. Ill. June 24, 2020) (rejecting plaintiff's attempt to litigate *Monell* claim after
prevailing against defendant officers).

      Bifurcation and entry of the Limited Consent, as a practical matter, allows Plaintiffs to
obtain a judgment against the City for any compensatory damages to which they are entitled,
thereby avoiding altogether the time, expense, or need for trial of the *Monell* claims. This would
be true even if any Defendant Officer has been found to have violated Plaintiffs' rights but

nevertheless is shielded from liability for that offending conduct based on qualified immunity. *See* Ex. 4, Consent at ¶5. In short, the City's Limited Consent eliminates any concern that bifurcation will affect Plaintiffs' recovery of compensatory damages from the City.

## III. BIFURCATION OF A *MONELL* TRIAL PROMOTES SIGNIFICANT JUDICIAL ECONOMY.

Bifurcation will also further judicial economy. *See* Fed. R. Civ. P. 42(b); *Chlopek*, 499 F.3d at 700 (bifurcation appropriate if it will "prevent prejudice to a party or promote judicial economy"). Here, the significant cost and burden of trial and the factual and legal complexity of the *Monell* case against the City—considerations relevant to judicial efficiency—militate against a single trial of all claims against all Defendants.

After eight years of litigating both the claims against Defendant Officers and the *Monell* claims against the City, the evidentiary record in this case is massive. Over five hundred thousand pages of documents have been made part of the record. Plaintiffs and the City attached nearly 500 hundred exhibits culled from this record to their summary judgment and *Daubert* filings related to Plaintiffs' *Monell* claims—an accurate predictor of the magnitude of documentary evidence that will be introduced at trial and the length of time required to present this evidence to the jury.

Furthermore, based upon the flaws that, in the City's view (and the Court's view), permeate Plaintiffs' *Monell* experts' reports and testimony, the cross-examination of Tiderington and Anthony Finnell, Plaintiffs' supervision and disciplinary practices experts, will be extensive. For example, the City mounted a challenge to the fact that Tiderington only billed 78 hours on this case, which is not nearly enough time to complete the analysis he claims to have completed in his report. In response to this argument, this Court noted,

> It is hard for me to see how Tiderington could have done this analysis in only 78 hours…, especially when Tiderington supposedly evaluated hundreds, many hundreds of case files. Tiderington's report is 66 pages long. It included over a

14

> hundred footnotes. It's chockfull of citations…. It makes me wonder who did the writing. It makes me wonder who did the analysis. It's hard for me to see how this expert could have reviewed 344 cases…. It's hard to see how this expert examined hundreds and hundreds of case files and came up with a 66-page report in only 78 magical hours…. He might get hung out to dry on cross-examination. Defense counsel might have some fun with him on the witness stand. But it's not a reason to keep him from taking the stand altogether. I've said it before. I'll say it again. Take it up on cross.

Ex. 3, 8/7/25 Transcript of Oral Ruling, at 19:22-24; 20:4-7, 9-12, 15-17; 21:2-7. Similarly, in response to Finnell's opinions about the alleged culture of impunity within CPD, this Court made an equally blistering critique, noting,

> I do not see this expert could testify so directly about a culture of impunity or a code of silence. I don't see any expert analysis. I do not see any methodology. He does not appear to reach that opinion through any methodology that could be tested. He just says so…. Frankly, it seemed like raw advocacy. He seems like a commentator on this point, not an expert. I don't see any expertise; I see gloss…. I am skeptical of experts who roll up in the witness stand and say, "I have a lot of experience, and here's what I think about the world." That's not what experts are supposed to be doing…. So I feel duty-bound to be on the lookout for advocacy disguised as expert testimony. I'm always on the lookout for experts who get over their skis…. I think a lot of the arguments had to do with the reports that really go to believability, credibility, those sorts of things. I think you can do it at cross.

*Id.* at 50:6-10, 23-25; 52:8-11; 54:1-3, 7-10. As the Court clearly acknowledges, Plaintiffs' experts' reports are so fundamentally flawed, cross-examination of Finnell and Tiderington on the *Monell* theories will add significant time to the trial, potentially days, that a joint trial on these matters is not in the interest of judicial efficiency.

In the analogous case of *Johnson v. Guevara*, as part of pretrial preparation, plaintiff Johnson identified nearly 500 exhibits on his initial list, approximately 250 exhibits of this list (or half of his proposed trial record) are earmarked exclusively for plaintiff's *Monell* claim, including transcripts of trial and deposition testimony in other cases, and CCSAO files, homicide files, and certificates of innocence from cases that are wholly unrelated to that matter, as well as the present matter. (*Johnson v. Guevara, et al.*, 20-cv-4156, Dkt. 415-1, Plaintiff's Exhibit List). Plaintiff

Johnson's proposed Exhibit No. 354, labeled "documents related to Guevara victim Roberto Almodovar and William Negron," alone includes bates-stamps to multiple productions, including in cases other than *Johnson*, and amounts to **over 200,000 pages of documents**. (*Id.*). One such document that is cited for this Almodovar/Negron exhibit, Bates No. Bluhm 033535, is a letter from Senior law students, Tia Trout-Perez and Sarah Terman, at Bluhm Legal Clinic to Roberto Almodovar regarding a potential interview. Roberto Almodovar, Tia Trout-Perez, and Sarah Terman are not on plaintiff Johnson's witness list but the City might have to call them to defend itself. (*Id.*). Further, Defendants will have to respond and rebut this evidence with their own exhibits and witnesses. The Almodovar/Negron 200,000-page exhibit is exemplary of the magnitude of information plaintiff Johnson, as well as Plaintiffs in the present matter, intend to interject in trial and demonstrates both the breadth and complexity of a *Monell* trial. There are approximately 64 other exhibits on plaintiff Johnson's exhibit list similarly labeled "documents relating to Guevara victim…," all with comparable bates ranges, referencing 79 purported Guevara "victims." (*See Johnson v. Guevara, et al.*, 20-cv-4156, Dkt. 415-1, Plaintiff's Exhibit List, Nos. 353-417). The majority of the individuals are plaintiffs themselves with currently pending or recently resolved cases. To the extent Plaintiffs may be permitted to introduce this evidence in the present matter, despite Defendants' multiple objections, Defendants will need to rebut that evidence with their own evidence, adding weeks to what is already a lengthy trial.

In addition, a single trial of all claims against all Defendants will require the parties to simultaneously put on separate cases centered on the Sotos' murders and kidnapping of their children but based on categorically different facts and legal theories. The claims against Defendant Officers focus on their investigation of the March 28, 1998, double homicide of Mariano and Jacinta Soto and kidnapping of their children, and Plaintiffs' ensuing prosecutions that led to their

convictions for crimes in connection with that incident. As previously stated, the City's liability is entirely predicated upon Plaintiffs proving the claims against Defendant Officers. However, in addition to that proof, Plaintiffs' *Monell* claims include and necessarily implicate countless non-party police officers, supervisors, and command personnel, as well as civilian employees, spanning a quarter-century, and involving multitudinous police-related activities. Municipal liability will require the jury to first weigh the evidence and find that Defendant Officers violated Plaintiffs' rights, and then sort through the massive amount of *Monell* evidence to determine if: 1) certain systemic practices exist, 2) the City's final policymakers were deliberately indifferent to them, and 3) those practices caused Defendant Officers to violate Plaintiffs' constitutional rights.[4]  Based upon the number of exhibits Plaintiffs are likely to seek to introduce and the number of unrelated events Plaintiffs believe are relevant to their *Monell* claims, the jury's task will be overwhelming and will undoubtedly prejudice Defendant Officers.

Facing similar circumstances, courts have granted bifurcation to serve the interests of judicial economy. In *Horton v. City of Chicago*, 2016 WL 316878 (N.D. Ill. 2016), the court found that the trial of the plaintiff's individual claims against the defendant officer "would be longer and more legally and factually complex if the *Monell* claim [was] not bifurcated." *Id.* at *4. The *Horton* court further noted that "[a]lthough the parties have not estimated the number of additional trial days that would be needed for the *Monell* claim, it undoubtedly would take a significant amount of time to present evidence concerning the City policies and practices that allegedly led to

---

[4] As explained above, these tasks will definitely blur the boundary between the conduct of Defendant Officers and that of other non-party City employees, to the detriment of the former, *see* discussion *supra* Section I, and as a matter of law they are unnecessary given that the threshold issue is whether or not a constitutional violation occurred in the first place. *See* discussion *supra* Section II.

[defendant officers] violating [plaintiff's] constitutional rights." *Id.*[5] As a result, the court concluded that "[o]n balance … bifurcation of the *Monell* claim for discovery and trial would 'promote judicial economy.'" *Id.* (citing *Chlopek*, 499 F.3d at 700).

And in *Taylor v. Kachiroubas*, 2013 WL 6050492 (N.D. Ill. Nov. 15, 2013), the court employed the following reasoning in its grant of bifurcation:

> In this case, the facts relevant to the claims against the individual defendants are much narrower than those relevant to the claims against [the municipality. Plaintiffs'] claims against the individual defendants hinge on facts related to the investigation of [the murder in question], the alleged coercion of their confessions, and the fabrication and withholding of evidence concerning their involvement in the murder. In contrast, the *Monell* claims will turn on facts including—but not limited to—how the [municipality] trained its police officers, whether [it] was alerted to problems in obtaining confessions or handling juvenile offenders, and how [it] responded to complaints against police officer.

*Id.* at *3. *See also Swanigan v. City of Chicago*, 775 F.3d 953, 963 (7th Cir. 2015) ("District courts, municipal defendants, and even plaintiffs have incentives to minimize duplication of effort in § 1983 cases that combine claims against individual public officials and a municipal defendant. The stipulation and stay of the *Monell* suit in this case achieved the goal of avoiding unnecessary complexity and effort."); *Williams*, 315 F.Supp.3d at 1083 ("instead of focusing on street files from decades ago or broad questions about the City's training or disciplinary policy, the parties can focus on establishing what happened to Williams and whether it violated his constitutional rights."); *Castillo v. City of Chicago*, 2012 WL 1658350, at *6 (N.D. Ill. May 11, 2012) ("There is no doubt that including the § 1983 claims against the City would add greater length and complexity to trial than if the suit were to proceed against the individual officers alone."); *Savory v. Cannon*, 2022 WL 767169, at *5 (N.D. Ill. March 14, 2022) (bifurcation "will allow the parties

---

[5] Based on defense counsel's experience, trial of the *Monell* claims will add at least a full week to the trial. Based upon Plaintiffs' likely proposed trial exhibits, it is likely that trial of the *Monell* claims could take more than a full week.

to more quickly resolve the officer defendants' liability and likely will make the overall litigation far more efficient."); *Moore v. City of Chicago*, 2007 WL 3037121, at *9 (N.D. Ill. Oct. 15, 2007) ("claims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them.").

Moreover, in the interest of judicial economy, by way of one example, in *Rivera*, the *Monell* evidence added approximately 5 days to the trial, including the testimony of 6 experts and 2 30(b)(6) witnesses. Likewise, this case includes 4 experts and multiple 30(b)(6) witnesses, adding an expected 5 days to the trial.

## CONCLUSION

In considering the "specific evidence the parties intend to present on the individual and municipal liability claims," prudential concerns—the avoidance of unfair prejudice, deference to the relationship between individual and municipal liability, and promotion of judicial economy— are paramount. As explained above, bifurcation is the proper procedural mechanism to address these concerns. Accordingly, Defendants ask this Court to bifurcate for trial Plaintiffs' claims against Defendant Officers from their *Monell* claims against the City, and for any further relief this Court deems just.

Dated: November 21, 2025

Respectfully submitted,

/s/ Eileen E. Rosen
Eileen E. Rosen
*One of the Attorneys for City of Chicago*
Eileen E. Rosen
Theresa B. Carney
Catherine M. Barber
Austin G. Rahe
Lauren M. Ferrise

/s/ Josh M. Engquist
Josh M. Engquist
*One of the Attorneys for Defendants*
*Joanne Halvorsen, as Special Representative*
*of Ernest Halvorsen (deceased), Dickinson,*
*Trevino, and Rutherford*

Josh M. Engquist

Sabrina A. Scardamaglia
Rock Fusco & Connelly, LLC
333 W. Wacker Drive, 19th Floor
Chicago, IL 60606
312-474-1000
erosen@rfclaw.com


_/s/_ Timothy P. Scahill
Timothy P. Scahill
*One of the Attorneys for Defendant Guevara*

Timothy P. Scahill
Steven B. Borkan
Borkan & Scahill, Ltd.
20 S. Clark St., Suite 1700
Chicago, IL 60603
312-580-1030
tscahill@borkanscahill.com

James G. Sotos
Caroline P. Golden
Allison L. Romelfanger
The Sotos Law Firm, P.C.
141 W. Jackson, Suite 1240A
Chicago, IL 606064
630-735-3300
jengquist@jsotoslaw.com