**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | Case No. 18 C 1028 |
| *Plaintiff,* | ) | |
| | ) | Hon. Steven C. Seeger, |
| *v.* | ) | District Judge |
| | ) | |
| REYNALDO GUEVARA, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |
| | | |
| GABRIEL SOLACHE, | ) | |
| | ) | Case No. 18 C 2312 |
| *Plaintiff,* | ) | |
| | ) | Hon. Steven C. Seeger, |
| *v.* | ) | District Judge |
| | ) | |
| CITY OF CHICAGO, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO BAR OR
LIMIT CERTAIN OPINIONS OF DEFENDANTS' EXPERT DR. LIOR GIDEON**

Defendants, by and through their undersigned counsel, and for their Response in Opposition to Plaintiffs' Motion to Bar or Limit Certain Opinions of Defendants' Expert Dr. Lior Gideon, state as follows:

**INTRODUCTION**

Plaintiffs disclosed Anthony Finnell to provide opinion testimony about the Chicago Police Department's ("CPD") supervision and disciplinary practices in support of their *Monell* claims, specifically, according to Plaintiffs, that (1) "CPD failed to properly discipline Defendant Guevara and other Defendants"; and (2) that "CPD's refusal to implement a functional disciplinary system allowed Defendant Guevara and other Defendant Officers to frame Plaintiffs for the Soto murders." Dkt. 859. Finnell's opinions rest nearly entirely on the statistical analysis of 349 CR

1

Complaint Register Files ("CR Files" or "CRs"), which was distilled by others into 20 different tables and several figures contained within his report. Each of those tables and/or figures were used to support certain statistical conclusions set forth in Finnell's report, which serve as the basis for Finnell's two overarching opinions.[1]

The City disclosed Lior Gideon, Ph.D., a Professor of Criminal Justice and Criminology at John Jay College of Criminal Justice and the CUNY Graduate Center, to "evaluate the Finnell Report to examine the methodology and statistical analysis that [was] utilized, and to examine the methodology, and analysis, and conclusion, that he reached." Gideon Dep. (attached as Ex. A) at 12:23-24. Plaintiffs now seek to bar Dr. Gideon from testifying about "certain portions of Finnell's report," which Plaintiffs' argue were not addressed by Dr. Gideon in his rebuttal report. Dkt. 859. Even a cursory review of Plaintiffs' Motion show that their arguments are disingenuous. For the reasons set forth below, Plaintiffs' motion should be denied.

## ARGUMENT

Plaintiffs do not challenge Dr. Gideon's qualifications, his methodology or the foundation for his opinions. Accordingly, any potential *Daubert* challenge on those issues is waived. *In re Cook Med., Inc.,* 2018 U.S. Dist. LEXIS 190176, *8 (Southern Dist. Ind. 2018) *citing, Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010). Rather, Plaintiffs contend that Dr. Gideon's rebuttal report "failed to address substantial portions of Finnell's analysis and opinions[]" and as such, argue his testimony should be limited in some way. But Plaintiffs' Motion ignores that Dr.

---

[1] Plaintiffs in passing lament that Dr. Gideon did not review any of the underlying CR Files, and that somehow, that impacts his ability to testify about the reliability of the dataset as a whole. But Dr. Gideon was not asked to evaluate the *data* within the CR Files, but rather, to evaluate Finnell's methodology and statistical analysis. Moreover, their expert, Finnell, admitted that he did not "go through every single" CR in the dataset to confirm they were accurately coded. Finnell's Deposition (attached as Ex. B) at 347:2-17. Finnell also conceded that he did not participate in any way in the coding of the files or even personally do the calculations that are set forth in his report, including all Tables and Figures. Ex. B at 468.

2

Gideon's report and testimony attack Finnell's methodology, rendering every conclusion in Finnell's report unreliable, including the analysis and conclusions set forth in every Table and Figure.

**I.     DR. GIDEON'S REPORT AND TESTIMONY IDENTIFY THE METHODICAL FLAWS THAT PERMEATE FINNELL'S ENTIRE REPORT.**

Plaintiffs seek to bar Dr. Gideon from testifying about Tables 5, 12, 13, and 15 and pages 11-30 (Finnell's opinions on the historical context); 669-69 (Finnell's qualitative analysis); and 71-78 (Finnell's opinions on the culture of impunity) contained within Finnell's report because Plaintiffs believe these Tables and pages were not "specifically addressed" in Dr. Gideon's report. Plaintiffs' argument is unsupported by any case law and ignores both Dr. Gideon's report and testimony in this case. Dr. Gideon was retained to "examine the methodology and statistical analyses utilized in Mr. Finnell's report." Gideon Rebuttal Report, Dkt. 859-2 at 3. His goal, as stated in his Report, was to "examine the methodology, analysis, and conclusions set out in Mr. Finnell's report, and evaluate the report's validity and reliability from a methodological standpoint." *Id.* Ultimately, Dr. Gideon concluded that Mr. Finnell's report suffered from "profound methodological flaws, including the unreliable manner in which variables were defined, and the data was compiled, categorized, described and analyzed." *Id.*

**A. Dr. Gideon's opinions address all of Finnell's Tables.**

Plaintiffs argue that Dr. Gideon should not be able to testify to the flaws in Tables 5, 12, 13, and 15, arguing that they were not specifically addressed by Dr. Gideon. Dkt. 859 at 4. Plaintiffs' argument ignores that Finnell's report specifically states that his "opinions and the tables in [this] report rely on the analysis of the dataset of 349 Complaint Register Files."

At his deposition, Dr. Gideon testified that while he did not individually address Tables 5, 12, 13, and 15, he reviewed each of them and that his opinions, which he described as "the whole

3

sum of the report," regarding the data in those Tables, as well as the others (and the Figures) referred to "a lot of calculation errors in the tables and confusing presentation of data." Gideon Dep. (Ex. A) at 33:1-3. And, with respect to Table 5, which purports to provide and compare sustained rates for CR files before and after "full internal review," *see* Dkt. 859-1 at Ex. 3, at Table 5, Dr. Gideon testified that, in fact, he did note errors in the total. Gideon Dep. (Ex. A) at 32:18-25.

With respect to Table 12, which purports to illustrate the number of police officers within CPD who were considered "outliers," *i.e.,* officers with nine or more "allegations" of misconduct, was disavowed by Finnell himself in the rebuttal report he prepared in response to Dr. Gideon's report. *See,* Finnell's Rebuttal Report, attached as Ex. C, at 33. Finnell's rebuttal report concedes that he miscalculated the outlier calculation by comparing the career CRs for Defendant Officers to CRs against Area 5 detectives for only the 1995-1998 time period, and that when done correctly, none of the Defendant Officers were outliers. *Id.* at 33. Finally, with respect to Table 13, which purports to compare the percentage of non-outlier officers who requested review of their discipline to the percentage of outlier officers who requested review of their discipline, suffers from the same miscalculation that Finnell conceded he made to the outlier analysis generally and discussed in his rebuttal report.

Accordingly, any argument that Plaintiffs are attempting to make that they had no chance to review and rebut Dr. Gideon's overarching opinion related to the methodological flaws in Finnell's report are belied by Finnell's own concessions and his rebuttal report. Finally, with respect to Table 15, which purports to calculate the length of time it takes for a CR investigation to advance through the disciplinary process, while Dr. Gideon agreed that he did not specifically discuss that Table in his report, his methodological criticisms apply with equal force to all of the

4

calculations, including those in Table 15.  Gideon Rebuttal Report (Dkt. 859-2) at 3 (Mr. Finnell's report suffered from "profound methodological flaws, including the unreliable manner in which variables were defined, and the data was compiled, categorized, described and analyzed.").

### B. Dr. Gideon addressed the historical context when he opined that Finnell used bias sampling and materials as well as qualitative analysis.

Next, Plaintiffs argue that Dr. Gideon should not be able to testify about the flawed methodology related to the "historical context" section of Finnell's report, because Dr. Gideon did not address whether it was "accurate or inaccurate."  Dkt. 859 at 4.  Plaintiffs also seek to bar Dr. Gideon from testifying regarding the flaws in Finnell's qualitative analysis.  *Id.*

Again, Plaintiffs' position ignores that Dr. Gideon's report analyzed the methodology Finnell used to arrive at every opinion in his report, specifically ignoring that Dr. Gideon spent several pages of his report addressing the inherently biased sampling done by Finnell as well as the self-serving materials that Finnell relied upon for his qualitative analysis.  Dkt.859-2 at 7. Specifically, Dr. Gideon concluded that Finnell's report,

> presents a systemic and biased review of the material and analysis. From the opinion presented in the introduction, **through the historical context**, analysis, conclusions ad final testimony, his report presents subjective opinions based on biased documents received from plaintiffs' attorneys, lack of accountability for the sampling on which the data analyses are based, and multiple errors in definitions, categories, labeling in presented tables, and reliance on self-serving materials.

*Id.* at 7 (emphasis added).  In fact, Dr. Gideon opined that Finnell and his associates used "confirming cases" to systematically add support to his historical background section, setting a one-dimensional tone for the report.  *Id.*  Dr. Gideon went on to opine that the use of these materials was a "direct violation of the principles of scientific inquiry, and specifically the principle of objectivity, that requires researches to present confirming and disconfirming cases, as well as

ethical neutrality, which requires the researcher to refrain from any moral or ethical belief that may influence the data collection, its analysis, and interpretation." *Id.*

Finally, in denying the City's motion to bar Finnell's historical context opinions, this Court found that Finnell's potential bias goes to the issue of credibility, and concluded if "the City wants to make Finnell look like a biased expert in front of the jury by relying on something prepared by plaintiffs' counsel, the City is free to go to town." *See* Aug. 7, 2025, Hr'g Tr. (attached as Ex. D) at 43:18-22. Finnell's opinions are based upon on both the statistical data and the qualitative analysis, and as such, are the methodology he utilized to render his opinions, and therefore Dr. Gideon's rebuttal.

### C. Finnell's "sense of impunity" opinions were barred by this Court.

Finally, Plaintiffs seek to bar Dr. Gideon from testifying regarding Finnell's opinion that the City of Chicago's failure to discipline and supervise Defendants created a sense of impunity and facilitated, encouraged, and allowed abuses, because Dr. Gideon's report does not specifically address this opinion. Dkt. 859 at 5. While Dr. Gideon's report did, in fact, address the methodological flaws that resulted in these opinions, this Court has already held that Finnell himself did not employ any principles or methods in coming to these opinions. Ex. D at 50:6-17. Rather, this Court found these opinions to be "raw advocacy," and that Finnell was acting as a commentator rather than an expert. *Id*. at 23-25. Dr. Gideon's opinion that Finnell's analysis was methodologically impaired covered every part of Finnell's report including the "sense of impunity conclusion."

### II. Dr. Gideon properly opined on the flaws with the dataset.

In seeking to bar Dr. Gideon from opining on the limitations of the dataset, Plaintiffs argue that Dr. Gideon's opinions were based on his "false and misleading assumption that Finnell

6

handpicked cases to be part of the dataset." Dkt. 859 at 6. Unsurprisingly, Plaintiffs fail to cite any testimony or portion of Dr. Gideon's report where he purportedly makes this assumption, and instead, misquote Dr. Gideon's report and argue that since the CRs were produced by the City, the dataset cannot be criticized.

Plaintiffs' attempts to support the flawed data by arguing the City produced the CRs is a nonstarter. Simply because the CRs were produced via a court order does not relieve Plaintiffs or their expert from their obligation to use the proper methodology to analyze the CRs. The City produced what the Plaintiffs legal team asked for and what was ultimately ordered by the court. The City did not decide what data Plaintiffs or their expert needed, Plaintiffs (presumably in conjunction with Finnell) did. It was within Finnell's discretion to decide how to use the data that was provided to him by the Plaintiffs' legal team. Moreover, Finnell chose not to independently verify that the data he was using for the analysis fell within the parameters set forth in the Report, which leaves his methodology open to criticism. *See generally,* Ex. D at 35-50 (finding challenges to Finnell's report were a weight of the evidence problem and for cross examination).

Next, Plaintiffs misquote Dr. Gideon's report by stating that he "attacks Finnell for 'select[ing] a small sample of cases' in order to 'increase the sample's perceived relevant and usefulness by selecting politically important cases.'" Dkt. 859 at 6. Rather, Dr. Gideon was specifically rebutting Finnell's own stated methodology which was: "The method I used in reaching my conclusions included a review of materials provided by *Plaintiff's counsel* and vetted against what I have come to know through my years of specialized education, training, and experience as generally accepted practices in the field of law enforcement." Finnell's Report (Dkt. 859-1) at 8 (emphasis added). Directly rebutting Finnell's stated methodology, Dr. Gideon opined, "This method is problematic in terms of generalization/projecting the study outcomes to the larger

population *because 'if an investigator has the resources to select a small sample of cases, he or she may increase the sample's perceived relevance and usefulness by selecting politically important cases.' (Eyrich-Garg, 2019: p. 140)."* Giden Report (Dkt. 859-2) at 7 (emphasis added to show full quote).

Dr. Gideon's opinions are based upon his review of Finnell's report, the methodology (or lack thereof) used by Finnell, and his analysis of that methodology against accepted research methods in statistics, criminal justice and criminology, specifically, how to evaluate research, how to evaluate datasets and how to evaluate reports. Ex. A at 15:6-11.

**III.    Dr. Gideon's opinion that Finnell's deposition illustrates his lack of proficiency in the sources of data, how the data was defined and how it was analyzed are proper.**

Again, Plaintiffs' attempt to limit Dr. Gideon's testimony based upon a disingenuous recitation of his report. Dr. Gideon's opinion is that Finnell's "unconvincing, incoherent and confusing deposition… *illustrates his lack of proficiency in the sources of data, how the data was defined, and how it was analyzed."* Dkt. 859-2 at 19. Finnell did not conduct the statistical analysis that is contained in his report, rather, relying on the statistical work performed by someone else. And, while the Court has held that this reliance is permissible, it further held that Finnell cannot portray the work as his own, and that he has to bring some value to the table. Ex. D at 40:17-22. Accordingly, whether Finnell understands the data he is citing or how it impacts his analysis goes to the weight of his testimony, and Defendants are entitled to elicit rebuttal testimony in support of Finnell's shortcomings.

**CONCLUSION**

Dr. Gideon appropriately reviewed the opined on the flaws in Finnell's methodology as it was applied to the entirety of Finnell's report and opinion. Plaintiffs have not articulated a basis to limit Dr. Gideon's testimony in any way, and their motion should be denied.

8

Dated: April 3, 2026

Respectfully Submitted,

By: */s/   Theresa Berousek Carney*
*One of the attorneys for the City of Chicago*

Eileen E. Rosen
Theresa Berousek Carney
Catherine M. Barber
Sabrina A. Scardamaglia
Lauren Ferrise
Special Assistant Corporation Counsel for the
City of Chicago
ROCK FUSCO & CONNELLY, LLC
333 W. Wacker, 19th Floor
Chicago, IL 60606
(312) 494-1000
tcarney@rfclaw.com